# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: 2005 UNITED STATES GRAND PRIX | ) | Master Docket No. |
| PRODUCTS LIABILITY LITIGATION | ) | 1:05-00914-SEB-VSS |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT FERRARI S.p.A.'s
## MOTION TO DISMISS SECOND AMENDED CONSOLIDATED
## CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6) OF
## THE FEDERAL RULES OF CIVIL PROCEDURE

### PRELIMINARY STATEMENT

Defendant Ferrari S.p.A., sued herein as Scuderia Ferrari Marlboro ("Ferrari"), respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Consolidated Class Action Complaint (the "Complaint" or "Compl.") for failure to state a claim upon which relief may be granted and failure to meet the minimal pleading requirements of Federal Rule of Civil Procedure 8(a) against Ferrari.

### STATEMENT OF FACTS

**1) Introduction**

This action arises out of events surrounding the 2005 United States Grand Prix Formula One automobile race (the "2005 USGP" or "Race"), which was run on June 19, 2005. Due to circumstances beyond the control of Ferrari, the racing teams utilizing tires manufactured by Michelin Tire Corporation ("Michelin") decided to withdraw minutes before the Race due to deficiencies perceived in the tires supplied by Michelin. Ferrari,

which was using tires manufactured and supplied by Bridgestone, did not withdraw from the Race and, in fact, completed and won the Race. <u>See</u> Compl. ¶¶ 43, 47-48.

The named plaintiffs allege they purchased tickets and attended the 2005 USGP. They seek to recover all the expenses they incurred in connection with attending the event because they were disappointed that fewer than anticipated race teams competed in the event. Plaintiffs claim their disappointment in the quality of the Race is actionable under Indiana law and entitles them to recover from virtually every party associated with the Race their ticket costs, travel expenses, and even the food they consumed. <u>See</u> Compl. ¶¶ 3-4, 37-38, 62, Prayer for Relief. In particular, plaintiffs seek to recover both compensatory and punitive damages in unspecified amounts from Ferrari due to Ferrari's alleged refusal "to agree to any solutions acceptable to the other teams." Compl. ¶ 44.

**2) <u>Michelin Tire Situation</u>**

In practice sessions held in the days prior to the Race, two teams experienced tire failures. <u>See</u> Compl. ¶ 32. On the day prior to the Race, Michelin advised the Fédération Internationale de l'Automobile ("FIA") in writing that "Michelin has, in the sole interest of safety informed its partner teams that we do not have total assurance that all tyres that qualified the cars can be used unless the vehicle speed in turn 13 can be reduced." Compl. ¶ 39. As a result the Michelin-shod racing teams chose not to participate in the Race to its conclusion. Compl. ¶¶ 47-48.

### 3) Ferrari's Participation in and Completion of the Race

Unlike the other teams named as defendants in this action, Ferrari participated in the Race to its completion, and Michael Schumacher, a Ferrari driver, won the race.  See Compl. ¶¶ 43, 47-48.

### 4) **The Current Action**

Plaintiffs are asserting four causes of action against Ferrari: (1) in Count II plaintiffs allege that Ferrari breached an unidentified contract to which Plaintiffs claim to have been third party beneficiaries; (2) in Count III plaintiffs allege promissory estoppel based on unspecified promises allegedly made by several defendants concerning the Race; (3) in Count IV plaintiffs allege common law negligence arising from Ferrari's "failure to exercise reasonable care to carry out this race as promised"; and (4) in Count V plaintiffs allege Ferrari tortiously interfered in the contractual relationship between the Plaintiffs and Indianapolis Motor Speedway ("IMS") "by arranging for the drivers with Michelin tires not to race in the Race."   The complaint seeks both compensatory and punitive damages, as well as attorneys fees and costs.

### **STANDARD OF REVIEW**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move for dismissal of a complaint if the plaintiff fails to state a claim upon which relief may be granted in the complaint.  A party moving for dismissal pursuant to Rule 12(b)(6) must show that the pleadings themselves fail to provide a basis for any claim for relief under any set of facts.  Ed Miniat, Inc. v. Globe Life Ins. Group Inc., 805 F.2d 732, 733 (7th Cir. 1986).

When a complaint is challenged by a motion to dismiss, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the plaintiff's favor, and construes allegations in the complaint in the light most favorable to the plaintiff. See Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 981 (7th Cir. 2004); Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). A court, however, should dismiss the allegations in a complaint when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "[W]ell pleaded allegations of the complaint are to be taken as admitted, but mere unsupported conclusions of fact or mixed fact and law are not admitted." Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 8, a pleading must set forth a concise and direct statement of the claim, providing sufficient information so that the defendant is able to frame a response to the action. Fed. R. Civ. P. 8(a); see Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997). For fair notice to be given, "a complaint must at least include the operative facts upon which a plaintiff bases his claim." Kyle v. Morton High Sch., 144 F.3d 448, 455 (7th Cir. 1998) (quotations omitted). A plaintiff may only plead conclusions if they are sufficient to understand the gravamen of the complaint. See Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir. 1996); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995).

<u>**ARGUMENT**</u>

**THIS ACTION SHOULD BE DISMISSED UNDER
F.R.C.P. 12(b)(6) FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF
MAY BE GRANTED AND FOR FAILING TO MEET THE
MINIMAL PLEADING REQUIREMENTS OF F.R.C.P. 8(a)**

The Complaint, which alleges that Ferrari somehow acted to prevent the 2005 USGP from taking place as advertised, should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief may be granted and for failing to meet even the liberal pleading requirements of Federal Rule of Civil Procedure 8(a).

**I.     All Counts of Plaintiffs' Second Amended Complaint Should Be Dismissed
       Because Ferrari Ran and Completed the Race**

Plaintiffs' case is based on the fact that certain racing teams did not run the Race and, as a result, Plaintiffs were disappointed and suffered damages.  <u>See</u>, <u>e.g.</u>, Compl. ¶¶ 36, 47.  The fundamental claim against the racing team defendants is that they were obligated to race and that they failed to do so in violation of various duties to the plaintiffs.  This premise, however, is false as to Ferrari.  Unlike the other defendant teams, it is alleged and undisputed that Ferrari actually ran the Race.  <u>See</u> Compl. ¶¶ 43, 47-48.  Indeed, Ferrari completed all 73 laps of the Race, and one of its drivers, Michael Schumacher, won the Race,.  <u>See id.</u>  Plaintiff has not alleged that Ferrari's win at the 2005 USGP was not deemed an official result or that the points earned both by Ferrari and by Michael Schumacher in that race were not tabulated by the FIA and counted towards the 2005 constructors' and drivers' championships.

Assuming the facts alleged as true, as required by Rule 12(b)(6), plaintiffs' claims against Ferrari must fail.  Because Ferrari ran the Race, plaintiffs' alleged theory of

liability against the racing team defendants has no application to Ferrari. Even the plaintiffs recognize that Ferrari was not a part of a purported agreement among other defendants to exit the race track between the formation lap and the start of the Race. Compl. ¶ 44. In a hollow attempt to hold Ferrari liable in this case, plaintiffs allege, in a vague and conclusory fashion, that Ferrari failed to "agree to any solutions acceptable to the other teams." Id. The Complaint thus implies (but does not allege) that Ferrari had a duty to the plaintiffs and/or the other racing teams to agree to a solution that would have encouraged the Michelin teams to race. This claim must fail as it defies common sense. The USGP is a race after all. The Formula One racing teams vigorously compete week in and week out. Ferrari arrived at the Race prepared to race and the other teams apparently did not. The suggestion that Ferrari was compelled to forfeit that advantage makes no sense. Taking plaintiffs' allegation that Ferrari did not agree to any solutions acceptable to the other teams as true, the Complaint still fails to state a claim for relief because there is no specific allegation in the Complaint that there was a duty for Ferrari to reach an agreement with other racing teams that would benefit them and no facts alleged from which a such a duty to the plaintiffs and/or the Michelin-shod racing teams can fairly be inferred. All the plaintiffs' claims must, therefore, be dismissed as to Ferrari.

II. **All Counts of Plaintiffs' Second Amended Complaint Should Be Dismissed Because Disappointed Expectations Regarding a Sporting Event Do Not Support Any Cause of Action Under Any Legal Theory**

The essence of plaintiffs' claims in this lawsuit is that as spectators of the 2005 USGP they did not get what they expected — apparently a race involving some unspecified minimum number of cars through its conclusion. Plaintiffs advance a variety of legal theories against the defendants to support their claims. None of those claims, however, supports a cause of action under applicable law because a spectator's subjective

opinion that the quality of the event was less than hoped or expected simply is not actionable.

This case is about a sporting event. The very nature of a sporting event is that its outcome is unpredictable. Indeed, a sporting event of any kind depends upon a number of factors, all of which contribute to its excitement, and the outcome and quality of which are not determinable in advance. Disappointment is a routine part of spectator sports: for example, cars in an automobile race may experience technical difficulties; a racing boat may break its main sail; or players in a game may be injured. The circumstances surrounding a sporting event may alter what fans hope to see, but fans' expectations are not actionable under the law, nor do those expectations require a competitor to lower its own performance in order to put up a nicer show. Spectators of a sporting event are not entitled to see any particular performance, nor is there any way to measure to what degree the event they saw was "less" than it should have been. Sporting events are exciting because by their very nature they are unpredictable.

Cases from various jurisdictions illustrate this important point. For example, a New York appellate court recently characterized spectators' rights with respect to an event for which they purchased tickets as "the right to view whatever event transpired." Castillo v. Tyson, 268 A.D.2d 336, 337, 701 N.Y.S.2d 423, 425 (N.Y. App. Div. 2000). In Castillo, fans brought a class action lawsuit against boxer Mike Tyson, fight promoters and fight telecasters, seeking a refund of money they paid to see a fight in which Tyson was disqualified for biting Evander Holyfield's ear. 268 A.D.2d at 336-37. Plaintiffs there claimed they were entitled to see a "legitimate heavyweight title fight" fought in accordance with boxing rules and that should have ended in a knockout or by decision of

the judges after 12 rounds. <u>Id.</u> at 336-37. The court briefly summarized the "many legal theories" advanced (including breach of contract, unjust enrichment, and tortious interference with contract) and affirmed their dismissal as meritless. In so doing the court noted there was no contractual privity between the fans and the defendants, and noted that plaintiffs' claim they were third-party beneficiaries of "one or more of the contracts that defendants entered into among themselves" were "aptly rejected by the motion court as 'contrived.'" <u>Id.</u> at 337. Both the trial court and the appellate court concluded that spectators who purchase tickets to an event simply have no cause of action for their disappointment in its quality. <u>Castillo</u> is nearly identical to the present case on the facts and even the causes of action alleged, and its common sense analysis is fully applicable here.

Other courts have similarly disposed of cases where fans sought to recover for their disappointed expectations. In <u>Stern v. Cleveland Browns Football Club</u>, No. 95-L-196, 1996 WL 761163, at *6 (Ohio Ct. App. Dec. 20, 1996), an Ohio appellate court refused to recognize a cause of action based on a fan's disappointment in a team's performance, holding that "the poor performance of the Browns, following the news that the team was moving to Baltimore, did not entitle ticket holders, such as Stern, to receive a refund on their tickets." In a subsequent action arising out of the same facts, a different Ohio court relied on the court's decision in <u>Stern</u> to find that the plaintiffs' breach of contract claim "based on the diminished value of their season tickets" had no merit. <u>Beder v. Cleveland Browns, Inc.</u>, 129 Ohio App. 3d 188, 195, 717 N.E.2d 716, 720-721 (Ohio Ct. App. 1998). The court in <u>Beder</u> affirmed summary judgment for the Browns and explained: "That the Browns performed poorly after the announced move to

Baltimore cannot serve as a basis from which to find that the Browns breached their contract with season ticket holders. . .  To allow recovery under such a theory would enable any ticket holder not satisfied with the performance of whatever entertainment the ticket procured to seek a refund for such a subjective and unreasonable response."  Id. Similarly, in a case arising out of the Buffalo Bills' cancellation of games during a football strike, a New York court held the plaintiffs did not have a cause of action. Bickett v. Buffalo Bills, Inc., 122 Misc. 2d 880, 472 N.Y.S.2d 245 (N.Y. Sup. 1983). That court criticized plaintiffs' suggestion they were entitled to damages for "diminished quality" of the team's play after the strike by quoting a newspaper editorial warning of the consequences of permitting such a theory of recovery: "If the fan (plaintiff) wins against the Bills, every lawyer in Western New York could use the precedent to finance a vacation on the Riviera."  122 Misc. 2d at 883.  The Bickett court further noted: "'diminished quality' lies in the eye of the beholder."  Id. at 884.  The court also pointed out that a spectator only has a right to "witness a performance to be given at a certain time."  Id. at 882.  Another lawsuit was brought in a New York court by a "disgruntled New York Nets season ticket holder" seeking recovery for his disappointment that a basketball team's advertised star, Julius Erving, was traded at the beginning of the season.  Strauss v. Long Island Sports, Inc. d/b/a New York Nets, 60 A.D.2d 501, 504, 401 N.Y.S.2d 233 (N.Y. App. Div. 1978).  The Strauss court held that "any expectation [by the plaintiff] that Dr. J would play for the Nets" was "unreasonable as a matter of law" and that "the risk that Dr. J might not be playing for the Nets might 'fairly be regarded as within the risks . . . assumed under the contract.'"  60 A.D.2d at 510-11 (internal quotations omitted).  While the Seventh Circuit has not yet directly addressed

the issue, some insight into its analysis might be discerned from Judge Easterbrook's observations in connection with a different issue: "[t]hat the Chicago Cubs turn out to be the doormat of the National League would not entitle the ticket holder to a refund for the remaining games, any more than the star tenor's laryngitis entitles the opera goer to a refund when the understudy takes over the role."  Seko Air Freight, Inc. v. Transworld Sys., Inc., 22 F.3d 773, 774 (7th Cir. 1994)

Each of these decisions addresses the problems inherent in any attempt by sporting event spectators to recover for their disappointed expectations under any theory, and is evidence that plaintiffs' claims are not supported by precedent.  The allegations on which plaintiffs' causes of action are based (akin to an allegation that a plaintiff's favorite player did not play) would apply to many sporting events in many analogous circumstances.  The reasons why a player or, as here, a race car driver, did not play or participate are not material.  Plaintiffs do not have standing to challenge the reasons or determine blame for circumstances that affected the sporting event they attended.  As spectators, they simply had the right to watch whatever quality of play or competition ensued.  In fact, in almost any Formula One automobile race several drivers are forced to abandon the race before its completion for a variety of reasons — technical failure, accident, driver's actions.  It is, therefore, a reasonable expectation by any Formula One spectator that fewer cars than expected will reach the finish line.

This case merits no more rigorous analysis of the individual legal claims asserted here than the courts conducted in the above cases.  The plaintiffs' claims arise from facts that simply do not give rise to any cognizable cause of action.  A fan who purchases a ticket purchases a license to witness whatever event occurs and may not plead around a

motion to dismiss by alleging that the related parties have contracts that once discovered could support a cause of action. No facts support plaintiffs' claims against Ferrari, and dismissal is required.

**III. The Individual Causes of Action Alleged Against Ferrari Fail to State a Claim Upon Which Relief May Be Granted and Must Be Dismissed**

**A. Count II Must Be Dismissed Because Plaintiffs Have Not Properly Pled Their Status as Third-Party Beneficiaries**

Plaintiffs allege in Count II that they are third-party beneficiaries to unspecified "contractual arrangements" between and among all defendants regarding the Race. Compl. ¶ 78. Plaintiffs attempt to plead causes of action for breach of contract and breach of warranty against Ferrari (and other defendants) based on this purported third-party beneficiary theory. Compl. ¶ 80. In support of their claim, plaintiffs only refer generally to "contractual arrangements" and "contracts" without identifying them or providing any information that would permit their identification. Compl. ¶¶ 78-81. The "contracts" relied upon by plaintiffs for their claim may not even exist.

It is clear from the Complaint that, even if plaintiffs had a good faith basis for alleging the existence of contracts between Ferrari and any other party with respect to the 2005 USGP, they do not satisfy the minimum pleading requirements to qualify as third-party beneficiaries under Indiana law or federal pleading requirements. "While the Federal Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted." Demick v. City of Joliet, 108 F. Supp. 2d 1022, 1025 (N.D. Ill. 2000) (citing Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991)). No claim for breach of contract under any theory may proceed without allegations of the

terms of the contracts allegedly breached.  See Credit Gen. Ins. Co. v. Midwest Indem. Corp., 916 F. Supp. 766, 772 (N.D. Ill. 1996) (dismissing third-party beneficiary claim because claimants (i) failed to allege the terms of the alleged contract or provide a copy of the alleged contract, and (ii) failed to allege any circumstances in which the contracts were executed nor any relationship between the contracting parties which would support a finding that they were intended beneficiaries of the contract);  see also Kasada, Inc. v. Access Capital, Inc., No. 01 Civ. 8893, 2004 WL 2903776, at *20 (S.D.N.Y. Dec. 14, 2004) (dismissing claims for tortious interference with contractual relations and tortious interference with business relationships because the plaintiffs did not allege with any specificity the contracts that were allegedly breached or the business relations they claimed were prevented from going forward); Dorian v. Harich Tahoe Dev., Nos. C-94-3387 DLJ, C-95-2112 DLJ, 1996 WL 925859, at *6 (N.D. Cal. 1996) ("Without alleging the actual existence of a contract between each defendant and each plaintiff, plaintiffs have not properly pled a breach of contract claim.").

Here, plaintiffs fail not only to identify any of the terms of the alleged contracts among the defendants, but they also fail to identify the contracts themselves.  In fact, plaintiffs even acknowledge that they are not in possession of any such contracts. Compl. ¶ 79.  Plaintiffs' bare allegations concerning contracts they neither have (and presumably have not seen or reviewed) nor identify, and that may not even exist, are wholly insufficient to support a claim under a theory of third party beneficiary.

In addition, even assuming the existence of contracts that allegedly form the basis of plaintiffs' claim, plaintiffs still fail to meet the requirements for a third-party beneficiary cause of action.  "Generally, only parties to a contract or those in privity with

the parties have rights under the contract." OEC Diasonics, Inc. v. Major, 674 N.E.2d 1312, 1314-15 (Ind. 1996). It is well settled that "[a] third party does not have the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor." Luhnow v. Horn, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001) (citing Harvey v. Lowry, 183 N.E. 309, 311 (Ind. 1932)); see OEC Diasonics, 674 N.E.2d at 1314. Under Indiana law, third-party beneficiaries must show: "'(1) a clear intent by the actual parties to the contract to benefit the third party; (2) a duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.'" NN Investors Life Ins. Co. Inc. v. Crossley, 580 N.E.2d 307, 309 (Ind. Ct. App. 1991); see Luhnow, 760 N.E.2d at 628; Mogensen v. Martz, 441 N.E.2d 34, 35 (Ind. Ct. App. 1982) (same). The intent to benefit a third party is the controlling factor and may be shown by specifically naming the third party (or a class of third parties) in the contract or by "other evidence." Garco Indus. Equip. Co. v. Mallory, 485 N.E.2d 652, 654 (Ind. Ct. App. 1986). See Mogensen, 441 N.E.2d at 35 (rejecting in part third-party beneficiary status where contract did not name property owners as a class). In deciding whether "other evidence" exists to support an intent by the parties to a contract to benefit a third party, courts must look to see whether the contract itself contained any provisions demonstrating such an intent. Id. It is insufficient to establish a third-party status if the contract only addresses the rights and obligations of the two contracting parties, and not those of the third-party. Id.

Plaintiffs have failed to allege even one of the requisite criteria for third-party beneficiary status under Indiana law. They do not allege the existence of any provision

in any contract involving Ferrari that names the 2005 USGP spectators. They do not plead that Ferrari entered into a contract intended to benefit 2005 USGP spectators. Nor do they plead that Ferrari's performance was necessary to render that intended benefit to 2005 USGP spectators. Plaintiffs, like other spectators to sporting events, obtained at most only an incidental benefit from any contracts involving Ferrari and are not third-party beneficiaries of those contracts as a matter of law.

In another putative class action, the Michigan Court of Appeals addressed a third-party beneficiary theory in a case to recover "service fees" allegedly improperly included in the price of tickets to Lions' football games. Percha v. Detroit Lions, Inc., No. 240675, 2003 WL 23018757, at *2 (Mich. Ct. App. Dec. 23, 2003). The Percha court analyzed the relationship among the parties and held that plaintiffs were not entitled to challenge the imposition of the service fee simply because they had purchased tickets to the event. Id. at *1. The court affirmed summary judgment for the defendants as to all the claims brought by plaintiffs (breach of contract under third-party beneficiary theory, breach of fiduciary duty, unjust enrichment, violation of consumer protection laws), holding that the plaintiffs "got what they paid for — admission into the Silverdome to watch the football games for which they had purchased tickets." Id. The court further held that plaintiffs were not third-party beneficiaries because "any benefit derived by plaintiffs from the contract between the City and the Lions — such as the maintenance of the stadium — was incidental and does not give rise to any rights to contest or enforce the contract." Id. at *2. Third-party beneficiary claims based on arguments similar to those of plaintiffs' have been flatly rejected elsewhere and provide no legal footing for plaintiffs' claims here. See Castillo, 268 A.D.2d at 337 ("Plaintiffs are not in contractual

privity with any of the defendants, and their claim that they are third-party beneficiaries of one or more of the contracts that defendants entered into among themselves was aptly rejected by the motion court as 'contrived.'").

Plaintiffs also claim that they are third-party beneficiaries of certain unidentified warranties. Their pleading of this cause of action is also improperly vague and wholly deficient. <u>See</u> Compl. ¶ 80 ("[p]laintiffs are third-party beneficiaries to such contracts and to all warranties associated with such contracts"). Plaintiffs fail to allege the existence of any warranty provided by Ferrari. Even under the liberal pleading requirements of Federal Rule of Civil Procedure 8(a), the existence of a warranty is a fundamental prerequisite to any claim based on a breach of warranty. <u>Peltz Constr. Co. v. Dunham</u>, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982) (under Indiana law, the elements of breach of warranty are the existence of a warranty, the breach of that warranty, causation, and resulting damage). Moreover, express or implied warranties only apply to goods, not services. Here, Ferrari provided only a service. Thus, there can be no warranty, whether express or implied. <u>See</u> <u>Castillo</u>, 268 A.D.2d at 337; <u>Bickett</u>, 122 Misc. 2d at 883 ("A sporting event constitutes a service . . . and, accordingly, no warranties could be made or implied as a matter of law.").

No third-party beneficiary theory may proceed against Ferrari under plaintiffs' Complaint or under the facts that give rise to it. Count II should, therefore, be dismissed with prejudice as to Ferrari.

### B. Count III Must Be Dismissed Because Plaintiffs Fail to State a Legally Cognizable Claim for Promissory Estoppel Against Ferrari

Plaintiffs in Count III ask the Court to find Ferrari liable under a theory of promissory estoppel for alleged breaches of "promises" that were purportedly made in

unidentified advertisements for the 2005 USGP. Plaintiffs have failed to state a claim for promissory estoppel against Ferrari because they have not alleged that Ferrari made any specific promise to plaintiffs or that any such promise met any of the other requirements of a cause of action under this theory.

In order to state a claim for promissory estoppel, plaintiffs must allege facts that establish: (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. Brown v. Branch, 758 N.E.2d 48, 52 (Ind. 2001); First Nat'l Bank of Logansport v. Logan Mfg. Co., 577 N.E.2d 949, 954 (Ind. 1994). A promise is a "voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future." Woodall v. Citizens Banking Co., 507 N.E.2d 999, 1000 (Ind. Ct. App. 1987) (citing Murray on Contracts, 2-3 (2d Ed. 1974)).

Plaintiffs fail to plead any specific advertisement or promise made by Ferrari. Because there are no allegations of a specific promise made by Ferrari to the plaintiffs, there can be no cause of action for promissory estoppel against Ferrari. Branch, 758 N.E.2d at 52. Furthermore, plaintiffs' allegation that Ferrari provided advertisements and promotions is unsupported. The Court is not required to accept as true plaintiffs' allegations that Ferrari advertised the 2005 USGP. See Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995) ("unsupported conclusions of fact or mixed fact and law are not admitted" as true). Moreover, even if Ferrari or one of the other defendants had advertised the event with the usual statements surrounding a race, such

advertisements or race promotions are statements of prediction, opinion or mere puffery, rather than promises. Plaintiffs cannot reasonably have relied on such statements. See Castillo, where the court pointed out that plaintiffs could not reasonably rule out the possibility of disqualification in a boxing match simply because defendants made public statements predicting a "sensational victory" and the "biggest fight of all time." 268 A.D.2d at 337. The law is well settled that the mere expression of an intention or a prediction, opinion or prophecy is not a promise. See Medtech Corp. v. Indiana Ins. Co., 555 N.E.2d 844, 847 (Ind. Ct. App. 1990); Security Bank & Trust Co. v. Bogard, 494 N.E.2d 965, 968-69 (Ind. Ct. App. 1986). Advertisements regarding the 2005 USGP are in the same category as statements of opinion or intention, and they are not actionable as specific promises. Plaintiffs' reliance on such statements could not be deemed to be reasonable under any circumstances, and plaintiffs have not met that requirement of a promissory estoppel claim.

Plaintiffs' failure to allege any specific promise made by Ferrari on which they reasonably relied is fatal to their claim for promissory estoppel. Count III must also be dismissed with prejudice as to Ferrari pursuant to Federal Rule of Civil Procedure 12(b)(6).

**C.** **Count IV Must Be Dismissed Because Ferrari Did Not Breach Any Duty to Plaintiffs**

Count IV alleges Ferrari (and other defendants) negligently failed to carry out the Race as allegedly promised. Compl. ¶ 86. To state a cause of action for negligence, a plaintiff must allege facts that show the defendant owed a legal duty, breached that duty, and that the breach was the proximate cause of injury to the plaintiff. See Estate of

Cullop v. State of Indiana, 821 N.E.2d 403, 407 (Ind. Ct. App. 2005); Sizemore v. Templeton, 724 N.E.2d 647, 650 (Ind. Ct. App. 2000). Here, plaintiffs fail to allege facts to impose upon Ferrari a legal duty to spectators at any particular race. "Before a defendant can be held liable for negligence, it must first be shown that the defendant owes a duty to the plaintiff. In the absence of a duty, there can be no breach of a duty and no negligence or liability based upon the breach of duty. The existence of such a duty is a question of law." Wilson v. Haimbaugh, 482 N.E.2d 486, 487 (Ind. Ct. App. 1985) (internal citations omitted); see Nance v. Holy Cross Counseling Group, 804 N.E.2d 768, 772 (Ind. Ct. App. 2004). Indiana courts balance three competing factors to determine whether a duty is owed to third parties: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." Nance, 804 N.E.2d at 772; accord Wickey v. Sparks, 642 N.E.2d 262, 266 (Ind. Ct. App. 1994). Indiana courts adhere to Justice Cardozo's musing on whether a defendant has assumed a duty: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Ember v. B.F.D., Inc., 490 N.E.2d 764, 769 (Ind. Ct. App.1986), modified on other grounds, 521 N.E.2d 981 (Ind. Ct. App.1988) (internal quotations omitted). In essence, then, "a duty may be imposed upon one who by affirmative conduct . . . assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken." Lather v. Berg, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988) (internal quotations omitted). The defendant "must have specifically and deliberately undertaken the duty which he is charged with having done negligently." Medtech, 555 N.E.2d at 849.

It is clear here that plaintiffs fail to sufficiently plead a duty owed by Ferrari to plaintiffs. Plaintiffs' conclusory allegation that Ferrari (and other defendants) voluntarily assumed a duty to Plaintiffs is wholly unsupported and fails to meet the requirements of a duty as a matter of law. Nowhere in the Complaint do plaintiffs plead properly a specific duty owed by Ferrari or that Ferrari deliberately undertook such a duty. Ferrari's alleged failure to reach an agreement with other teams that might have allowed them to participate in the Race does not properly allege a breach of a duty to plaintiffs. The racing teams are competitive. It strains common sense to allege Ferrari was obligated to help teams it is seeking to defeat in the Race. Not only does the premise make no sense but plaintiffs fail to allege any facts from which a duty to accommodate the other teams can be inferred.

The premise on which plaintiffs' negligence claim is asserted against the other racing teams is their failure to run in the Race. Even assuming *arguendo* that Ferrari owed a duty to plaintiffs to run in the 2005 USGP, Ferrari did not breach any such duty. Ferrari undisputedly ran the Race, and even won it. <u>See</u> Compl. ¶ 48. If Ferrari owed any duty to plaintiffs, at most it owed a duty to deliver a race; it clearly did not owe a duty to deliver a <u>specific</u> race with a specific number of cars or teams reaching the finish line. Thus, there was no breach of duty. Plaintiffs received what they paid for, i.e., admission into the IMS to watch a Formula One automobile race. <u>See</u> <u>Percha</u>, 2003 WL 23018757, at *1. By running and winning the Race, Ferrari amply satisfied any duty it may have owed plaintiffs.

Because Ferrari owes no legal duty to the plaintiffs and, even assuming it did owe such a duty, it did not breach it, Count IV must be dismissed with prejudice as to Ferrari.

### D. Count V Must Be Dismissed Because Ferrari Did Not Interfere With Any Contract

Plaintiffs allege that Ferrari tortiously interfered with a purported contract between them and the Indianapolis Motor Speedway by "arranging for the drivers with Michelin tires not to race in the Race." Compl. ¶ 92. Again, plaintiffs' allegations do not support a cause of action for tortious interference with contract. The five elements necessary to state a claim for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1235 (Ind. 1994); Bilimoria Computer Sys., LLC v. America Online, Inc., 829 N.E.2d 150, 156 (Ind. Ct. App. 2005). Count V fails as a matter of law for at least the following reasons.

Plaintiffs do not plead with sufficiency the existence of a valid, enforceable contract between them and IMS. The existence of a valid and enforceable contract is an essential element of a tortious interference claim. Sanderson v. Brugman, No. IP 00-0459-C H/K, 2002 WL 31255470, at *5 (S.D. Ind. Sept. 20, 2002); see Winkler, 638 N.E.2d at 1234; Bilimoria, 829 N.E.2d at 156. Plaintiffs' conclusory allegation that they had a contractual relationship with IMS is deficient and does not give Ferrari any notice of what contract(s) plaintiffs are referring to. Significantly, plaintiffs do not even identify the contract(s) they rely upon for their tortious interference claim. See Compl. ¶¶ 92, 93 (using vague and undefined language such as "said contract" and "the contract" when no such contract was previously identified).

Even assuming, however, a valid contract between plaintiffs and IMS, plaintiffs' claim of tortious interference with contract must still fail for several reasons. First, plaintiffs have alleged no specific term of the purported contract that was supposedly breached, as is their obligation. Absent a term of the contract that was allegedly breached, no claim may be stated against Ferrari or any other party for intentionally inducing a breach. Further, as discussed in Point II, <u>supra</u>, plaintiffs cannot allege proximately resulting damages because a fan's disappointment with the performance or outcome of a sporting event does not constitute a loss in fact and cannot be recovered at law. <u>See</u> <u>Castillo</u>, 268 A.D.2d at 337; <u>Stern</u>, 1996 WL 761163, at *6; <u>Strauss</u>, 60 A.D.2d at 510-11; <u>Bickett</u>, 472 N.Y.S.2d at 248. If there was a contract between plaintiffs and IMS, all that was contracted for was the right to view whatever race occurred, and there was no express obligation to deliver a specific race. <u>See</u> <u>Bickett</u>, 472 N.Y.S.2d at 247 ("A theatre ticket, for example, is simply a license to the party presenting the same to witness a performance to be given at a certain time . . ."). As a race clearly occurred, which Ferrari ran and won, there can be no damages suffered as a result of a breach. Count V is, therefore, deficient as a matter of law and should be dismissed with prejudice as to Ferrari.

## **CONCLUSION**

For the foregoing reasons, Ferrari respectfully requests that the Court grant its motion to dismiss the Second Amended Complaint in its entirety for failure to state a claim upon which relief may be granted and that the Court grant such other relief as the Court may deem just and proper.

Dated: September 21, 2005

By    /s/Stephen E. Arthur
    Stephen E. Arthur, #4055-49
    HARRISON & MOBERLY, LLP
    135 N. Pennsylvania St., Ste. 2100
    Indianapolis, IN  46204
    317-639-4511

    Lawrence F. Carnevale
    CARTER LEDYARD &
    MILBURN LLP
    2 Wall Street
    New York, New York 10005

    *Attorneys for Defendant*
    *Ferrari S.p.A.*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2005, a copy of the foregoing *Memorandum of Law in Support of Defendant Ferrari S.p.A.'s Motion to Dismiss Second Amended Consolidated Class Action Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* was filed via the Court's electronic filing system.  Notice of this filing will be sent to the following parties by operation of the Court's electronic system and via first class mail for those without access to the Court's electronic system.

| | |
|---|---|
| William Bock, III<br>wb@kgrlaw.com | Curtis W. McCauley<br>mccauley@icemiller.com |
| Deborah J. Caruso<br>dcaruso@daleeke.com | John K. McDavid<br>jmcdavid@locke.com |
| KC Cohen<br>kc@esoft-legal.com | Henry J. Price<br>hprice@price-law.com |
| Robert L. Gauss<br>gauss@icemiller.com | Hugh E. Reynolds, Jr<br>hreynolds@locke.com |
| Jeff S. Gibson<br>jgibson@cohenandmalad.com | James W. Riley, Jr.<br>jriley@rbelaw.com |

| | |
|---|---|
| Scott D. Gilchrist<br>sgilchrist@cohenandmalad.com | William N. Riley<br>wriley@price-law.com |
| James A. Knauer<br>jak@kgrlaw.com | Robert J. Schuckit<br>rschuckit@schuckitlaw.com |
| Offer Korin<br>okorin@katzkorin.com | Richard E. Shevitz<br>rshevitz@cohenandmalad.com |
| Irwin B. Levin<br>ilevin@cohenandmalad.com | Dylan A. Vigh<br>dvighlaw@gmail.com |
| David M. Mattingly<br>david.mattingly@icemiller.com | Sally F. Zweig<br>szweig@katzkorin.com |
| Peter E. Borkon<br>pborkon@schubert-reed.com | Peter W. Herzog, III<br>pwherzog@bryancave.com |
| Shon Morgan<br>shonmorgan@wuinnemanuel.com | Bettina J. Strauss<br>bjstrauss@bryancave.com |
| Robert C. Schubert<br>rschubert@schubert-reed.com | Michael Hyman<br>mbhyman@muchshelist.com |
| Thomas A. Doyle<br>Thomas.a.doyle@bakernet.com | Keith S. Shindler<br>keith@shindlerlaw.com |
| Matthew Gordon Allison<br>Matthew.g.allison@bakernet.com | William P. Wooden<br>wwooden@woodmaclaw.com |
| Larry D. Drury<br>ldrurylaw@aol.com | |

By:  /s/Stephen E. Arthur
Stephen E. Arthur

HARRISON & MOBERLY, LLP
135 North Pennsylvania Street, Suite 2100
Indianapolis, Indiana  46204