UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In re: 2005 United States Grand Prix    )     Master Docket No.1:05-cv-00914-SEB-VSS
    )

**MEMORANDUM IN SUPPORT OF
MICHELIN NORTH AMERICA, INC.'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CONSOLIDATED COMPLAINT**

**Introduction**

This action is a consolidation of 10 putative class action lawsuits seeking to recover alleged "damages" in connection with the 2005 United States Grand Prix ("USGP"), which took place in Indianapolis on June 19, 2005. All defendants have moved to dismiss plaintiffs' Second Amended Consolidated Complaint ("Complaint" or "Cmpl.") for failure to state a claim for relief. Defendants' motions do not address the fatal deficiencies of plaintiffs' class allegations, for they are not at issue on this motion and will be moot if the Court dismisses the Complaint.

The named plaintiffs allege they purchased tickets and attended the 2005 USGP. They seek to recover all their expenditures made in connection with attending the event because they were disappointed that fewer than anticipated race teams competed in the event. Plaintiffs claim their disappointment in the quality of the race is actionable under Indiana law and entitles them to recover from virtually every party associated with the race their ticket cost, travel expenses, and even the food they consumed. See Cmpl. ¶¶ 3-4, 37-38, 62, Prayer for Relief.

**Factual Background**

A summary of relevant background facts provides some context. Each of the tickets for the event, including the tickets purchased by plaintiffs, clearly states "NO REFUND." See 2005

USGP Ticket, attached as Exhibit A.[1]  Each ticket also expressly and unequivocally disclaims

liability on the part of the Indianapolis Motor Speedway and any "affiliates or participants" in

the race.  The disclaimer states:

> "The holder of this ticket expressly assumes all risk incident to the
> event, whether occurring prior to, during or subsequent to the
> actual conduct of the event, and agrees that all event participants,
> sanctioning bodies, IMS, FOA, Formula One Management
> Limited, Allsopp Parker & Marsh Limited, Allsport Management,
> FIA, ACCUS, USAC and all directors, officers, members,
> shareholders, owners, affiliates, employees and agents of each of
> the foregoing are hereby released from any and all claims arising
> from the events, including claims of negligence.
>
> "... The holder of this ticket agrees not to take any action, or cause
> others to take any action, which would infringe on IMS' or FOA's
> rights.  Use of this ticket constitutes acceptance of these terms.
> IMS reserves the right to revoke this ticket by refunding the
> printed purchase price."  Id.

In practice sessions held in the days prior to the race, two teams experienced tire failures.

See Cmpl. ¶ 32.  Fortunately, no serious injuries were sustained.  On the day prior to the race,

Michelin advised the Fédération Internationale de l'Automobile ("FIA") in writing that

"Michelin has, in the sole interest of safety informed its partner teams that we do not have total

assurance that all tyres that qualified the cars can be used unless the vehicle speed in turn 13 can

be reduced."  Cmpl. ¶ 39.  Some of the racing teams did not participate in the race to its

conclusion.  Cmpl. ¶¶ 47-48.  The race was held with the remaining teams.  Cmpl. ¶¶ 48.

Michael Schumacher won the race, which was his fourth USGP victory.

---

[1] The Court may consider the ticket — which plaintiffs describe as a "contract" — without converting this motion to dismiss to one for summary judgment.  The Seventh Circuit has held that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's Complaint and are central to his claim.  Such documents may be considered by a district court in ruling on [a] motion to dismiss."  Wright v. Associated Insurance Companies, Incorporated, 29 F.3d 1244, 1248 (7th Cir. 1994).  Plaintiffs' claims clearly depend upon the ticket, which they refer to several times in each count of the Complaint.

## Summary of Argument

This putative class action seeks to profit from the fact that some of the would-be competitors in the 2005 U.S. Grand Prix who could not be assured they could safely participate in the event chose not to participate to the race's conclusion. However, there is no legal basis for the action under any theory no matter what factual circumstances led to the smaller field of competitors. The spectators who attended the race were not promised a particular number of race participants, nor were they promised a particular quality of competition. In fact, each fan who purchased a ticket did so expressly at the risk that myriad events might cause the race not to meet their own subjective expectations. An early catastrophic accident in turn 13 that reduced the field to six cars, for example, would produce the same result that has spawned these class actions; it would not, however, be actionable even under plaintiffs' novel theories of recovery. That such a potential catastrophe was entirely avoided apparently disappointed these nine plaintiffs enough to file a lawsuit seeking punitive damages. Disappointment in the quality of the race is not actionable, however, any more than if the race spectators experienced "disappointment" because they witnessed the event in pouring rain or because the vendors had run out of beer or hamburgers. Plaintiffs simply have no cause of action for their alleged damages and no legal theory under which to recover them. This action is frivolous and should be dismissed in its entirety as to all defendants.

The individual causes of action alleged against Michelin (Counts II-V) as well as against other defendants are equally meritless for different reasons that likewise require their dismissal with prejudice.

**Legal Standard for Motion to Dismiss**

The Court must dismiss a complaint if, when viewed in the light most favorable to the pleader, the allegations fail to state a claim upon which relief can be granted. <u>Pugel v. Board of Trustees of the Univ. of Ill.</u>, 378 F.3d 659, 662 (7th Cir. 2004.); <u>see also</u> <u>Implement Service, Inc. v. Tecumseh Products Co.</u>, 726 F. Supp 1171, 1175 (S.D.Ind. 1989) ("If a plaintiff ... pleads facts and the facts show that he is entitled to no relief, the complaint should be dismissed. There would be no point in allowing such a lawsuit to go any further; its doom is foretold")(citing <u>American Nurses' Ass'n v. Illinois</u>, 783 F.2d 716, 727 (7th Cir. 1986)). Moreover, "the court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim." <u>Decatur Ventures, LLC v. Stapleton Ventures, Inc.</u>, 373 F.Supp.2d 829, 835 (S.D. Ind. 2005). In order to withstand a motion to dismiss, a party's claims must allege facts sufficiently setting forth each and every element of the cause of action. <u>Looper Maintenance Service, Inc. v. City of Indianapolis</u>, 197 F.3d 908, 911 (7th Cir. 1999). Even the liberal pleading allowed by the Federal Rules requires more than bald assertions. <u>Lucien v. Preiner</u>, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff cannot satisfy federal pleading requirements merely by attaching bare legal conclusions to narrated facts which fail to outline the basis of his claims. <u>Perkins v. Silverstein</u>, 939 F.2d 463, 466 (7th Cir. 1991); <u>see also</u> <u>Implement Service</u>, 726 F. Supp at 1175 ("Court is not required to accept as true any legal conclusions or conclusory allegations that are unwarranted by the pleaded facts. The mere assertion of a right to recovery by the plaintiff is not enough to avoid a motion to dismiss if the facts pleaded are legally insufficient")(internal citations omitted). Applying these standards to plaintiffs' Complaint mandates its dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## Argument

I.    **All Counts of Plaintiffs' Second Amended Complaint Should Be Dismissed Based Upon the Nature of the Claims and the Terms of the Ticket**

    A.    **Disappointed Expectations Regarding a Sporting Event Do Not Support Any Cause of Action Under Any Legal Theory.**

The essence of plaintiffs' claims in this consolidated litigation is that as spectators of the 2005 United States Grand Prix they did not get what they expected — apparently a race involving some unspecified minimum number of cars through its conclusion. Plaintiffs advance a variety of legal theories against the many defendants to support this basic claim. However, none of them supports a cause of action under the law because a spectator's subjective opinion that the quality of the event was less than hoped or expected simply is not actionable.

This case is about a sporting event. The very nature of a sporting event is that its characteristics are never certain and not capable of being defined or promised. That is the essence of competition. Indeed, a sporting event of any kind depends upon innumerable variables, all of which contribute to its excitement. Who will play well; who will play poorly; who will play at all? No one can reasonably expect to see a particular quality of competition and certainly not an event whose quality could be predetermined or measured. Disappointment is a routine part of spectator sports: a player may play poorly, be injured or be traded; inclement weather may diminish the quality of play or even end the event prematurely; horses are disqualified. Even intentional acts may diminish the quality of the event: for instance, a player may challenge an umpire's ruling and be ejected; a fight may break out disqualifying any number of team players. All of these circumstances may diminish the quality of the event fans hope to see, but none is actionable under the law. Fans are not entitled to see any particular performance, could one actually be described; nor is there any way to measure to what degree

the event they saw was "less" than it should have been.  Sporting events are exciting because what will transpire is unknowable.  Common sense requires we not forget what we know about sports simply because we have entered a courtroom.

Cases from around the country illustrate this important point.  A New York appellate court recently characterized a fan's (or plaintiff's) rights with respect to an event for which he purchased a ticket as "the right to view whatever event transpired."  <u>Castillo v. Tyson</u>, 268 A.D.2d 336, 337, 701 N.Y.S.2d 423, 425 (N.Y. App. Div. 2000).  In <u>Castillo</u>, fans brought a class action against boxer Mike Tyson, fight promoters and fight telecasters, seeking a refund of money they paid to see a fight in which Tyson was disqualified for biting Evander Holyfield's ear.  <u>Id.</u> at 336.  Plaintiffs there claimed they were entitled to see a "legitimate heavyweight title fight" fought in accordance with the rules and which should have ended in an actual or technical knockout or by decision after 12 rounds.  <u>Id.</u> at 336-37.  The court briefly summarized the "many legal theories" advanced and affirmed their dismissal as meritless.  In so doing the court noted there was no contractual privity between fans and the defendants and noted that plaintiffs' claim they were third-party beneficiaries of "one or more of the contracts that defendants entered into among themselves" were "aptly rejected by the motion court as 'contrived.'"  <u>Id.</u> at 337.  Both the motion court and the reviewing court took a common sense approach to the case (which included legal theories such as fraud, unjust enrichment, breach of contract, third-party beneficiary, and tortious interference with contract) and determined that fans who purchase tickets to an event simply have no cause of action for their disappointment in its quality.  Fans are entitled to witness whatever event transpires.  <u>Castillo</u> is nearly identical on the facts and even the causes of action alleged, and its common sense analysis is fully applicable here.

Other courts have similarly disposed of cases that sought to recover for disappointed fan expectations. In Stern v. Cleveland Browns Football Club, No. 95-L-196, 1996 WL 761163, *6 (Ohio Ct. App. Dec. 20, 1996), an Ohio appellate court held that "the poor performance of the Browns, following the news that the team was moving to Baltimore, did not entitle ticket holders, such as Stern, to receive a refund on their tickets." A second Ohio court noted "insofar as their breach-of-contract claim is based on the diminished value of their season tickets, we agree with the Stern court and find that claim without merit." Beder v. Cleveland Browns, Inc. 129 Ohio App.3d 188, 195, 717 N.E.2d 716, 720-721 (Ohio Ct. App. 1998). "That the Browns performed poorly after the announced move to Baltimore cannot serve as a basis from which to find that the Browns breached their contract with season ticket holders ... To allow recovery under such a theory would enable any ticket holder not satisfied with the performance of whatever entertainment the ticket procured to seek a refund for such a subjective and unreasonable response." Id. Another New York court held there was no cause of action and hence no class action for the Buffalo Bills' cancellation of games during a football strike. Bickett v. Buffalo Bills, Inc., 122 Misc.2d 880, 472 N.Y.S.2d 245 (N.Y. Sup. 1983). That court criticized plaintiffs' suggestion they were entitled to damages for "diminished quality" of the team's play after the strike by quoting a newspaper editorial warning of the consequences of permitting such a theory of recovery: "If the fan (plaintiff) wins against the Bills, every lawyer in Western New York could use the precedent to finance a vacation on the Riveria." As that court further correctly noted: "'diminished quality' lies in the eye of the beholder." Id. at 883-84. Still another court was faced with a putative class action (accompanied by six other actions pending in neighboring courts) based upon fans' disappointment that the team's advertised basketball star, Julius Erving, was traded in the middle of the season. Strauss v. Long Island

Sports, Inc. d/b/a New York Nets, 60 A.D2d 501, 504, 401 N.Y.S.2d 233 (N.Y. App. Div. 1978).

The Strauss Court held any expectation that Dr. J would play for the Nets was unreasonable as a matter of law. Id. at 510.

Each of these decisions addresses the problems inherent in any attempt to recover for disappointed expectations under any theory. No reported decision in any jurisdiction (located by this defendant) provides precedent for plaintiffs' Complaint. The allegations on which their causes of action are based ("my favorite players did not play") might be said of many sporting events in many analogous circumstances. The reasons they did not play are not material. Plaintiffs do not have standing to challenge the reasons or determine blame for circumstances that affect the sport. As spectators, they simply purchased — or in many circumstances were given — the right to watch whatever quality of play or competition ensued. And while the Seventh Circuit has not yet directly addressed such facts as these, some insight into its analysis might be discerned from Judge Easterbrook's observations in connection with a different issue: "[t]hat the Chicago Cubs turn out to be the doormat of the National League would not entitle the ticket holder to a refund for the remaining games, any more than the star tenor's laryngitis entitles the opera goer to a refund when the understudy takes over the role." Seko Air Freight, Inc. v. Transworld Systems, Inc., 22 F.3d 773, 774 (7th Cir. 1994).

This case merits no more rigorous analysis of the individual legal claims asserted here than the court conducted in Castillo. All claims arise from a few facts and all may be disposed of by a simple analysis of these known facts. No legal theory and no discovery will alter those basic facts, which simply do not give rise to a cognizable cause of action. A fan who purchases a ticket purchases a license to witness whatever event occurs and may not plead around a motion to dismiss by alleging that the related parties have contracts that once discovered could support a

cause of action. No facts support plaintiffs' claims against any defendant, and dismissal is required.

### B. The Express Terms of the Ticket Preclude Any Claim for Relief.

The face of every 2005 USGP ticket clearly states "NO REFUND" with no exceptions, conditions or other terms. The back of the ticket provides a further disclaimer that reads:

> "The holder of this ticket expressly assumes all risk incident to the event, whether occurring prior to, during, or subsequent to the actual conduct of the event, and agrees that all event participants, sanctioning bodies, IMS … are hereby released from any and all claims arising from the events, including claims of negligence."

The express and unambiguous words of the ticket establish the conditions which govern plaintiffs' attendance at the event. Under those terms, plaintiffs released any claims of any kind they may have had against any defendant under any legal theory with respect to the 2005 USGP.

Liability disclaimers on tickets have been held to negate all types of legal theories. In Romeo v. Pittsburgh Associates, 787 A.2d 1027, 1032 (Pa. Super. Ct. 2001), the court dismissed all claims made by a spectator injured by a foul ball. The court dismissed the negligence claims under the well-established "no duty" rule between the operators of a place of amusement and its patrons. Plaintiff's causes of action for breach of contract, breach of warranty and violations of the consumer protection laws were barred by "the disclaimer printed on the back of the ticket." In Honeycutt v. Tour Carriage, Inc., 997 F. Supp. 694, 700 (W.D.N.C. 1996), the court upheld a disclaimer of liability on a cruise tour ticket, stating that "[c]ourts have long held contractual disclaimers to be binding." See also Soderholm v. Chicago Nat. League Ball Club, Inc., 225 Ill.App.3d 119, 125, 587 N.E.2d 517, 520 (Ill. Ct. App. 1992)("Neither an individual ticket holder nor a season ticket holder is entitled to enter the ball park except upon the terms and conditions specified on the individual tickets and by defendant's policies").

Because spectators may only enter the stadium or race track upon the terms and conditions of their ticket license, the terms of that license control. If physical injuries may properly be disclaimed, surely a fan's subjective disappointment cannot survive. The tickets for the 2005 USGP expressly stated that fans assumed "all risks incident to the event" and specifically released "any and all claims arising from the event." Under the terms which governed their admission to the race, the plaintiffs' disappointment was a risk they assumed and must bear. All causes of action against all defendants should be dismissed on this additional ground.

## II. The Individual Causes of Action Alleged Against Michelin Fail to State a Claim for Relief and Must Be Dismissed.

### A. Count II Must Be Dismissed Because Plaintiffs Have Not and Cannot Properly Plead Their Status as Third-Party Beneficiaries and Cannot Establish a Contract or a Warranty.

Plaintiffs allege in Count II that they are third-party beneficiaries to unspecified "contractual arrangements" between and among all defendants regarding the race. Cmpl. ¶ 78. Plaintiffs attempt to plead causes of action for breach of contract and breach of warranty against Michelin (and other defendants) based on this purported third-party beneficiary theory. Cmpl. ¶ 80.

Even if plaintiffs had a good faith basis for alleging the existence of contracts between Michelin and any other party with respect to the 2005 USGP, they do not plead the minimum requirements to qualify as third-party beneficiaries under Indiana law or federal pleading requirements. "While the Federal Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted." Demick v. City of Joliet, 108 F.Supp.2d 1022, 1025 (N.D.Ill. 2000)(citing Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991)). No claim for

breach of contract under any theory may proceed without allegations of the terms of the contracts allegedly breached.  E.g., Credit General Ins. Co. v. Midwest Indem. Corp., 916 F. Supp. 766, 772 (N.D.Ill. 1996)(dismissing third-party beneficiary claim because of the absence of allegations concerning either the terms of the contract or the circumstances that would indicate the contracting parties intended their agreements to benefit others); see also Kasada, Inc. v. Access Capital, Inc., No. 01 Civ. 8893(GBD), 2004 WL 2903776, *20 (S.D.N.Y. Dec. 14, 2004)(dismissing breach of contract claim because "plaintiffs do not allege with any specificity the contracts it claims were breached or the business relations it claims were prevented from going forward"); Dorian v. Harich Tahoe Development, Nos. C-94-3387 DLJ, C-95-2112 DLJ, 1996 WL 925859, *6 (N.D.Cal. 1996)("Without alleging the actual existence of a contract between each defendant and each plaintiff, plaintiffs have not properly pled a breach of contract claim").

    "Generally, only parties to a contract or those in privity with the parties have rights under the contract."  OEC Diasonics, Inc. v. Major, 674 N.E.2d 1312, 1314-15 (Ind. 1996).  It is well settled that "[a] third party does not have the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor."  Luhnow v. Horn, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001)(citing Harvey v. Lowry, 183 N.E. 309, 311 (Ind. 1932)); see also OEC Diasonics, 674 N.E.2d at 1314.  Under Indiana law, third-party beneficiaries must show: "'(1) a clear intent by the actual parties to the contract to benefit the third party; (2) a duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.'"  Luhnow v. Horn, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001)(quoting NN Investors

Life Insurance Co. Inc. v. Crossley, 580 N.E.2d 307, 309 (Ind. Ct. App. 1991)); see also

Mogensen v. Martz, 441 N.E.2d 34, 35 (Ind. Ct. App. 1982)(same).

Plaintiffs have failed to allege even one of the requisite criteria for third-party beneficiary status under Indiana law. They do not allege the existence of any provision in any contract involving Michelin that names the 2005 USGP spectators. They do not plead that Michelin or the Michelin-shod teams intended to benefit 2005 USGP spectators. Nor do they plead that Michelin's performance was necessary to render that intended benefit to 2005 USGP spectators. Plaintiffs, like other spectators to sporting events, obtained at most only an incidental benefit from any contracts involving Michelin and are not third-party beneficiaries of those contracts as a matter of law.

In another putative class action, the Michigan Court of Appeals addressed a third-party beneficiary theory in a case to recover "service fees" allegedly improperly included in the price of tickets to Lions' football games. See Percha v. Detroit Lions, Inc., No. 240675, 2003 WL 23018757, *2 (Mich.Ct.App. Dec. 23, 2003). The court undertook an analysis of the relationship of the parties and determined that plaintiffs had no right to pursue any of their claims (breach of contract, third-party beneficiaries, unjust enrichment, violation of consumer protection laws) against either defendant simply because they had purchased tickets to the event. The court held that the plaintiffs "got what they paid for — admission into the Silverdome to watch the football games for which they had purchased tickets." Id. at *1. The court further held that plaintiffs were not third-party beneficiaries because "any benefit derived by plaintiffs from the contract between the City and the Lions — such as the maintenance of the stadium — was incidental and does not give rise to any rights to contest or enforce the contract." Id. at *2. Third-party

beneficiary claims based on plaintiffs' arguments have been flatly rejected elsewhere and provide no legal footing for plaintiffs' claims here. See Castillo, 268 A.D.2d at 337.

Plaintiffs' theory that they are third-party beneficiaries of unidentifiable warranties is specious. Their pleading on this front too is improperly vague. See Cmpl. ¶ 80 ("plaintiffs are third-party beneficiaries to such contracts and to all warranties associated with such contracts"). Plaintiffs fail to allege the existence of any express warranty provided by Michelin. Even under notice pleading, the existence of an express warranty is a fundamental prerequisite to any claim based on a breach of express warranty. Peltz Construction Co. v. Dunham, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982)(under Indiana law, the elements of breach of warranty are the existence of a warranty, the breach of that warranty, causation, and resulting damage). Plaintiffs similarly have failed to allege the existence or the terms of any implied warranty made by Michelin to any party.

Moreover, without regard to pleading deficiencies, Indiana law simply does not recognize the cause of action plaintiffs have attempted to allege. Under Indiana law, an implied warranty may arise under Indiana's version of the Uniform Commercial Code or by operation of common law. Insul-Mark Midwest, Inc. v. Modern Materials, Inc., 594 N.E.2d 459, 466 (Ind. Ct. App. 1992), adopted in part, 612 N.E.2d 550 (Ind. 1993). If plaintiffs are purporting to allege they are third-party beneficiaries of implied warranties that accompanied the tires supplied to the Michelin-shod teams, Indiana law clearly bars the claim. The Indiana Commercial Code limits third-party beneficiaries of any express or implied warranty to those who have suffered personal injuries and does not permit recovery of economic losses such as those sought here. Hyundai Motor America, Inc. v. Goodin, 822 N.E.2d 947, 954-55 (Ind. 2005). If plaintiffs are purporting to allege there are implied warranties incorporated into their race-day tickets, there is no Indiana

precedent to support such a theory. Implying any warranty into plaintiffs' USGP race-day tickets, moreover, would violate settled Indiana law because the implied warranty would contradict the express terms of the ticket licenses. Peoples Bank & Trust Co. v. Price, 714 N.E.2d 712, 717 (Ind. Ct. App.), transfer denied, (Ind. 1999); see also Wills v. Gaff, 191 N.E.2d 41, 44 (Ind. Ct. App. 1963)("there can be no implication against the express terms of a contract, nor a substitution of an implied term for an express one").

No third-party beneficiary theory may proceed against Michelin under plaintiffs' Complaint or under the facts that give rise to it. Count II should be dismissed with prejudice.

**B.      Count III Must Be Dismissed Because Plaintiffs Fail to State a Legally Cognizable Claim for Promissory Estoppel Against Michelin.**

Plaintiffs in Count III ask the Court to find Michelin liable for alleged breaches of "promises" that were purportedly made in unidentified advertisements for the USGP under a theory of promissory estoppel. Plaintiffs have failed to state a claim for promissory estoppel against Michelin because they have not alleged that Michelin made any specific promise to plaintiffs or that any such promise met any of the other requirements of a cause of action under this theory.

In order to state a claim for promissory estoppel, plaintiffs must allege facts which establish:  (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. Brown v. Branch, 758 N.E.2d 48, 52 (Ind. 2001); First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc., 577 N.E.2d 949, 954 (Ind. 1994). A promise is a "voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future." Woodall v. Citizens

Banking Co., 507 N.E.2d 999, 1000 (Ind. Ct. App. 1987)(citing Murray on Contracts, 2-3 (2nd Ed. 1974)); Medtech Corp. v. Indiana Insurance Co., 555 N.E.2d 844, 847 (Ind. Ct. App. 1990). The promise must be definite in the sense of being clearly a promise and not merely a statement of intentions or expressions of optimism and determination. Garwood Packaging, Inc. v. Allen & Co., 378 F.3d 698, 705 (7th Cir. 2004)("[T]he essence of the doctrine of promissory estoppel is not that the plaintiff have reasonably relied on the defendant's promise, but that he have reasonably relied on its being a promise in the sense of a legal commitment, and not a mere prediction or aspiration or bit of puffery"); see also Wood v. Mid-Valley, 942 F.2d 425, 428 (7th Cir. 1991)(plaintiff cannot prevail on a claim of promissory estoppel unless "there was a real promise and not merely a statement of hope or intention, and that it was sufficiently definite").

Plaintiffs fail to plead any specific advertisement or promise made by Michelin. Because there are no allegations of a specific promise made by Michelin to the plaintiffs, there can be no cause of action for promissory estoppel against it. Branch, 758 N.E.2d at 52. Furthermore, plaintiffs' allegation that Michelin provided advertisements and promotions is unsupported. The Court is not required to accept plaintiffs' allegations that Michelin advertised the 2005 USGP. Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995)("unsupported conclusions of fact or mixed fact and law are not admitted" as true). Moreover, even if Michelin or one of the other defendants had advertised the event with the usual statements surrounding a race, such advertisements or race promotions are statements of prediction, opinion or mere puffery, rather than promises. The court in Castillo dismissed similar arguments based on "promoters' public statements predicting a sensational victory" and the "biggest fight of all time." Castillo, 268 A.D.2d at 337. It has long been the law that the expression of an intention or a prediction, opinion or prophesy is not a promise. See Medtech Corp., 555 N.E.2d at 847; Security Bank &

Trust Co. v. Bogard, 494 N.E.2d 965, 968-69 (Ind. Ct. App. 1986). Advertisements regarding the USGP are in the same category as statements of opinion or intention, and they are not actionable as specific promises.

Plaintiffs' failure to allege any specific promise made by Michelin on which they relied is fatal to their claim for promissory estoppel. Even if, contrary to fact, there were a specific promise made by Michelin, the race-day ticket disclaimer described in detail that applies against a breach of contract claim is also effective against a promissory estoppel claim. Workman v. UPS, 234 F.3d 998, 1001-02 (7th Cir. 2000). Count III must also be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**C. Count IV Must Be Dismissed Because of the Absence of Duty and the Bar of the Economic Loss Doctrine.**

Count IV alleges Michelin negligently failed to carry out the race as allegedly promised. Cmpl. ¶ 86. To state a cause of action for negligence, plaintiff must allege facts that show the defendant owed a legal duty, breached that duty, and that the breach was the proximate cause of injury to the plaintiff. See Estate of Cullop v. State of Indiana, 821 N.E.2d 403, 407 (Ind. Ct. App. 2005); Sizemore v. Templeton, 724 N.E.2d 647, 650 (Ind. Ct. App. 2000). Plaintiffs fail to allege facts to impose upon Michelin, as a supplier of tires to certain race participants, a legal duty to spectators at any particular race. "Absent a duty, there can be no breach and, therefore, no recovery in negligence. Whether a defendant owes a duty to a plaintiff is a question of law." Sheley v. Cross, 680 N.E.2d 10, 12 (Ind. Ct. App. 1997); accord Wilson v. Haimbaugh, 482 N.E.2d 486, 487 (Ind. Ct. App. 1985). Indiana balances three factors to determine if a duty is owed to a party: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." Nance v. Holy Cross Counseling

16

Group, 804 N.E.2d 768, 772 (Ind. Ct. App. 2004); Wickey v. Sparks, 642 N.E.2d 262, 266 (Ind. Ct. App. 1994).

Plaintiffs meet none of the legal requirements to establish a duty. There is simply no relationship between Michelin as a supplier of tires to race teams and plaintiffs as attendees of the race that could give rise to a duty. See, e.g., Holt v. Quality Motor Sales, Inc., 776 N.E.2d 361, 366 (Ind. Ct. App. 2002); Wickey v. Sparks, 642 N.E.2d 262, 266 (Ind. Ct. App. 1994). See Romeo, 787 A.2d at 1030 (no duty between operators of a baseball stadium and spectators with respect to expected risks of the activity). Plaintiffs and Michelin are legal strangers. There is no relationship between them and, thus, no duty as a matter of law.

Even if a duty could be established (which Michelin disputes), and even if the duty could survive the ticket disclaimer (which Michelin also disputes), the economic loss doctrine bars plaintiffs' negligence claim against all defendants. Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152, 155 (Ind. 2005)(economic loss doctrine bars recovery in tort for services that were less than expected).

Plaintiffs seek only economic damages — the cost of their tickets, travel expenses and other consequential monetary damages. For this reason, and because Michelin owes no legal duty to USGP spectators, Count IV must be dismissed.

**D.      Count V Must Be Dismissed Because Plaintiffs' Tickets Are Not Contracts.**

Plaintiffs allege that Michelin tortiously interfered with an alleged ticket contract between them and the Indianapolis Motor Speedway by "arranging for the drivers with Michelin tires not to drive in the race." Cmpl. ¶ 92. Again, plaintiffs' allegations do not support a cause of action under this theory. The five elements necessary to state a claim for tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) defendant's

knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. <u>Winkler v. V.G. Reed & Sons, Inc.</u>, 638 N.E.2d 1228, 1234 (Ind. 1994); <u>Bilimoria Computer Systems, LLC v. America Online, Inc.</u>, 829 N.E.2d 150, 156 (Ind. Ct. App. 2005). Count V fails as a matter of law for several unassailable reasons.

The ticket is not a valid, enforceable contract. The existence of a valid and enforceable contract is an essential element of a tortious interference claim. <u>Sanderson v. Brugman</u>, No. IP 00-0459-C H/K, 2002 WL 31255470, *5 (S.D.Ind. Sept. 20, 2002); <u>see also</u> <u>Winkler</u>, 638 N.E.2d at 1234; <u>Bilimoria Computer Systems</u>, 829 N.E.2d at 156. The law is settled that plaintiffs' USGP tickets do not constitute a valid and enforceable contract. <u>See</u> <u>Stern</u>, 1996 WL 761163, *5 (a ticket to a football game is a license that creates no contract or property rights); <u>Buffalo Bills</u>, 472 N.Y.S.2d at 247 ("a ticket is but a license"); <u>Sweeney v. United Artists Theater Circuit, Inc.</u>, ---- P.3d ----, 2005 WL 550344, *2-3 (Colo. Ct. App. 2005)(movie ticket does not constitute a contract"); <u>Detroit Lions</u>, 2003 WL 23018757, at *1 ("When plaintiffs voluntarily purchased tickets to the football games for the price printed on the ticket, they purchased a revocable license to attend the event").

Even if the ticket were a contract, no language on the ticket guarantees a minimum number of cars. Plaintiffs have alleged no specific term of the "ticket contract" that was supposedly breached, as is their obligation. Absent a term of the contract that was allegedly breached, no claim may be stated against Michelin or any other party for intentionally inducing a breach. <u>Beanstalk Group, Inc. v. AM Gen. Corp.</u>, 143 F.Supp.2d 1020, 1032 (N.D. Ind. 2001)(claim for tortious interference with contract cannot survive a motion to dismiss in the absence of an actual breach). Further, as discussed above, plaintiffs cannot allege proximately

resulting damages because a fan's disappointment with the performance or outcome of a sporting event does not constitute a loss in fact and cannot be recovered at law. See Castillo, 268 A.D.2d at 337; Stern, 1996 WL 761163, *6; Strauss, 60 A.D.2d at 510-511; Buffalo Bills, 472 N.Y.S.2d at 248.

Finally, plaintiffs have done no more than baldly assert that defendants' actions were unjustified. This is insufficient. Morgan Asset Holding Corp. v. CoBank, ACB, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000)(plaintiff must state more than a mere assertion that the defendant's conduct was unjustified; rather, plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified). To satisfy their obligation to plead lack of justification, furthermore, plaintiffs must set forth facts indicating that the breach allegedly induced was malicious and exclusively directed to the injury and damage of another. Winkler v. V. G. Reed & Sons, Inc., 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993), aff'd 638 N.E.2d 1228 (1994); see also Flintridge Station Ass'n v. American Fletcher Mortgage Co., 761 F.2d 434, 441 (7th Cir. 1985)(unjustified conduct is that which is malicious and unmixed with any other and exclusively directed to injury and damage of another). The existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. Winkler, 619 N.E.2d at 600-01; Morgan Asset Holding Corp., 736 N.E.2d at 1272. As the Indiana Appellate Court ruled in Morgan Asset, plaintiffs conclusion that "[t]here was not justification for Defendants' actions" (Compl. ¶ 92) is insufficient to state a claim. Plaintiffs have alleged no facts that would satisfy their burden of proving lack of justification. Count V is deficient as a matter of law and should be dismissed.

**Conclusion**

For these reasons, Michelin respectfully requests the Court dismiss with prejudice Counts II through V of plaintiffs' Second Amended Complaint against Michelin and enter judgment in favor of Michelin and against plaintiffs on all such counts.

Respectfully submitted,

By:    */s/ James W. Riley, Jr.*
        Peter W. Herzog III
        Bettina J. Strauss
        Bryan Cave LLP
        211 N. Broadway, Suite 3300
        St. Louis, MO 63102
        (314) 259-2000

        James W. Riley, Jr., Esq.
        Riley Bennett & Egloff, LLP
        141 East Washington Street
        Suite 400
        Indianapolis, IN 46204
        (317) 636-8000

        Attorneys for Michelin North America, Inc.

<u>Certificate of Service</u>

I hereby certify that on September 21, 2005, a copy of Michelin North America, Inc.'s Memorandum in Support of Its Motion to Dismiss Plaintiffs' Second Amended Consolidated Complaint was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Henry J. Price
William N. Riley
Gabriel A. Hawkins
PRICE WAICUKAUSKI RILEY & DEBROTA, LLC
hprice@price-law.com
mdabio@price-law.com
sbissonnette@price-law.com
jmiller@price-law.com
ghawkins@price-law.com
wriley@price-law.com
eamos@price-law.com

Irwin B. Levin
Richard E. Shevitz
Scott D. Gilchrist
Eric S. Pavlack
Jeff S. Gibson
COHEN & MALAD, LLP
ilevin@cohenandmalad.com
ccox@cohenandmalad.com
rshevitz@cohenandmalad.com
cmeadows@cohenandmalad.com
epavlack@cohenandmalad.com
sgilchrist@cohenandmalad.com
jgibson@cohenandmalad.com

William Bock, III
James A. Knauer
Reynolds B. Brissenden
Kurtis A. Marshall
KROGER GARDIS & REGAS, LLP
wb@kgrlaw.com
jak@kgrlaw.com
hns@kgrlaw.com

rbb@kgrlaw.com
tjb@kgrlaw.com
kam@kgrlaw.com

Michael B. Hyman
MUCH SHELIST
mbhyman@muchshelist.com

Deborah J. Caruso
DALE & EKE
dcaruso@daleeke.com
lharves@daleeke.com

Peter E. Borkon
Robert C. Schubert
SCHUBERT & REED, LLP
pborkon@schubert-reed.com
rschubert@schubert-reed.com

KC Cohen
KC COHEN LAWYER, PC
kc@esoft-legal.com

Dylan A. Vigh
DULIK & VIGH
dvighlaw@gmail.com

Robert J. Schuckit
SCHUCKIT & ASSOCIATES,P.C.
rschuckit@schuckitlaw.com
asmith@schuckitlaw.com
lvecera@schuckitlaw.com
asmith@schuckitlaw.com

Larry D. Drury
ldrurylaw@aol.com

David M. Mattingly
Curtis W. McCauley
Robert L. Gauss
Mark J. Richards
ICE MILLER
david.mattingly@icemiller.com
jeni.keene@icemiller.com
mccauley@icemiller.com
lantz@icemiller.com

gauss@icemiller.com
worth@icemiller.com
mark.richards@icemiller.com

A. William Urquhart
Shon Morgan
Scott L. Watson
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
billurquhart@quinnemanuel.com
shonmorgan@quinnemanuel.com
scottwatson@quinnemanuel.com

Sally Franklin Zweig
Offer Korin
Bernard Pylitt
KATZ & KORIN
szweig@katzkorin.com
jleguellec@katzkorin.com
bburows@katzkorin.com
vellis@katzkorin.com
okorin@katzkorin.com
cwright@katzkorin.com
bpylitt@katzkorin.com
ckeith@katzkorin.com

Stephen P. Handler, P.C.
Derek J. Meyer
Stephanie A. Petersmarck
MCDERMOTT WILL & EMERY LLP
shandler@mwe.com
spetersmarck@mwe.com

Hugh E. Reynolds, Jr.
John K. McDavid
LOCKE REYNOLDS LLP
hreynolds@locke.com
sdunn@locke.com
meaton@locke.com
jmcdavid@locke.com
sreynolds@locke.com

Lawrence F. Carnevale
CARTER LEDYARD & MILBURN, LLP
carnevale@clm.com

Stephen E. Arthur
Raymond A. Basile
HARRISON & MOBERLY
sarthur@h-mlaw.com
basile@h-mlaw.com

Thomas A. Doyle
James J. Dries
Matthew Gordon Allison
BAKER & MCKENZIE LLP
thomas.a.doyle@bakernet.com
james.j.dries@bakernet.com
matthew.g.allison@bakernet.com

James McGinnis Boyers
William P. Wooden
WOODEN & MCLAUGHLIN LLP
jboyers@woodmaclaw.com
wwooden@woodmaclaw.com


I hereby certify that on September 21, 2005, a copy of the foregoing was mailed, by first-

class U.S. Mail, postage prepaid and properly addressed to the following:

Keith S. Shindler
1040 S. Milwaukee Ave.
Wheeling, IL 60090

James L. Welsh, III
Payne, Welsh & Klingensmith
Penn Plaza, Suite 208
Turtle Creek, PA 15145

*/s/ James W. Riley, Jr.*
James W. Riley, Jr.
