UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: 2005 UNITED STATES GRAND PRIX  ) Master Docket No. 1:05-cv-00914-SEB-VSS
                                       )

## MEMORANDUM IN SUPPORT OF IMS'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

### PRELIMINARY STATEMENT

Indianapolis Motor Speedway, LLC ("IMS"), joins with all the other defendants in this action in moving to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint ("Complaint"). In support of its motion, IMS incorporates by reference the Memorandum in Support of Michelin North America, Inc.'s Motion to Dismiss Plaintiff's Second Amended Consolidated Complaint ("Michelin's Brief") as to Counts II, III, and IV of the Complaint. In addition to Michelin's well taken arguments, IMS will briefly discuss why all of the Counts asserted against IMS, *i.e.*, Counts I (Breach of Contract), II (Third-Party Beneficiary), III (Promissory Estoppel), Count IV (Common Law Negligence), and Count VI (Unjust Enrichment), should be dismissed.

IMS also, in the alternative, moves pursuant to Rule 12(b)(6) for the dismissal of Plaintiffs' claim for damages to the extent that such damages include expenses that Plaintiffs would have occurred even if the race had been of the character and quality they allegedly expected. These expenses include such things as plane tickets, meals, phone calls, parking, *etc*. Plaintiffs cannot recover these expenses as damages because they were not incurred as a consequence of any alleged breach of contract, third-party contract, or promise.

**ARGUMENT**

I.   COUNT I OF PLAINTIFFS' COMPLAINT (BREACH OF CONTRACT) SHOULD BE DISMISSED.

      A.   COUNT I OF PLAINTIFFS' COMPLAINT FAILS AS A MATTER OF LAW BECAUSE DISAPPOINTED EXPECTATIONS REGARDING A SPORTING EVENT DO NOT SUPPORT A CLAIM FOR BREACH OF CONTRACT.

With respect to Count I of the Complaint, IMS incorporates by reference Section I of Michelin's Brief. As Michelin rightly points out, disappointment of one kind or another is inherent in the very nature of a sporting event. Numerous cases have held that ticket holders cannot sue under any legal theory for disappointment in the quality of the event that they witness.

IMS would add that disappointment as to the quality of a sport event is inherently a subjective matter. However, contract law does not deal with the subjective intent of the parties to a contract. "The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it." *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 277 (Ind. Ct. App. 2001). "Although Indiana law allows contractual terms to be implied from the intent and action of the parties, the 'intent relevant in contract matters is not the parties' subjective intent but their outward manifestation of it.'" *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 777 (7th Cir. 1996) (citing *Real Estate Support Servs., Inc. v. Nauman*, 644 N.E.2d 907, 910 (Ind. Ct. App. 1994)). The individual Plaintiffs may in fact be disappointed with the event they witnessed. Others who attended the race may not. That the race as it unfolded may not have lived up to Plaintiffs' subjective intent as to what kind of race would satisfy them cannot support a claim for breach of contract. Count I therefore fails to state a claim as a matter of law, and it should be dismissed.

**B.** COUNT I OF PLAINTIFFS' COMPLAINT FAILS AS A MATTER OF LAW BECAUSE THE EXPRESS TERMS OF THE TICKET PRECLUDE ANY CLAIM FOR RELIEF.

As Michelin points out in Section I of Michelin's Brief, every ticket for the USGP states in bold on its face: "NO REFUND." That language plainly contradicts and defeats Plaintiffs' claim for damages as a result of the race allegedly failing to satisfy their subjective opinions as to what kind of race they wanted to see. Furthermore, the back of the ticket states in pertinent part: "The holder of this ticket expressly assumes all risk incident to the event, ... and agrees that... IMS... [is] hereby released from any and all claims arising from the events, including claims of negligence."[1] (Ex. A.) Because the express language of the ticket precludes any claim for disappointed expectations and because all ticket holders, including Plaintiffs, expressly released IMS from all claims, Count I has no legal merit and should be dismissed.

**II.** COUNT II OF PLAINTIFFS' COMPLAINT (THIRD-PARTY BENEFICIARY) SHOULD BE DISMISSED.

**A.** PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR THIRD-PARTY BENEFICIARY STATUS.

As to Count II of the Complaint, IMS incorporates by reference Michelin's Brief. Michelin correctly notes that Plaintiffs have not stated a claim for recovery under a theory of third-party beneficiary, even under the liberal requirements of notice pleading. Count II therefore should be dismissed for Plaintiffs' failure to allege all the necessary elements of their claim for third-party beneficiary status.

---

[1] Although Plaintiffs failed to attach a ticket or the third party contracts to their Complaint, IMS has attached hereto and made a part hereof as Exhibit A a true and accurate copy of a ticket used for the 2005 U.S. Grand Prix. IMS' attachment and use of the ticket does not convert this Motion to Dismiss into a motion for summary judgment. Documents attached to a motion to dismiss are considered part of the pleadings and may be considered by the Court in a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Rosenblum v. Travelbyus.com Limited*, 299 F.3d 657, 661 (7th Cir. 2002).

B.    PLAINTIFFS DO NOT AND COULD NOT ALLEGE THAT IMS BREACHED ANY
      AGREEMENT WITH ANY OTHER DEFENDANT IN THIS ACTION.

In addition to the arguments made by Michelin in Michelin's Brief, IMS would note

that the only contract between it and any of the other defendants is the contract ("IMS-

FOA Agreement") between IMS and Formula One Administration, Ltd. ("FOA"), and the

Complaint makes no factual allegations showing a breach of that contract. The Court may

properly consider the terms of the IMS-FOA Agreement in ruling on the Motion to

Dismiss. "[I]t is well established that material which is attached to, or incorporated by

reference in, the plaintiff's complaint may be considered by the Court on a motion to

dismiss under Rule 12(b)(6)." *Dryden v. Sun Life Assur. Co. of Canada*, 737 F. Supp.

1058, 1066 (S.D. Ind. 1989). This rule applies not only where the plaintiff is suing as a

party to an alleged contract, but it also applies where the plaintiff is suing as an alleged

third-party beneficiary. *Barnum v. Millbrook Care Limited Partnership*, 850 F. Supp.

1227, 1232-33 (S.D.N.Y. 1994), *affirmed without opinion* 43 F.3d 1458 (2nd Cir. 1994).

The parties are in the process of agreeing upon a protective order. Upon entry of the

protective order, IMS will submit a copy of the FOA-IMS Agreement to the Court under

seal and produce a copy of it to opposing counsel as well as to other defense counsel.[2] A

review of that contract will show that the only obligations assumed by IMS that might be

applicable to Plaintiffs' third-party beneficiary theory pertain to providing a venue for the

event. It is not alleged, nor could it be alleged, that IMS breached any such provision. To

the contrary, as alleged in the Complaint, IMS did in fact provide a venue for the race.

Furthermore, a review of the IMS-FOA Agreement will also reveal that Plaintiffs were not

---

[2] The FOA-IMS Agreement contains a confidentiality provision.

intended third-party beneficiaries. Thus, Count II fails to state a claim against IMS as a matter of law, and the Court should dismiss Count II of the Complaint.

III.    COUNT III OF PLAINTIFFS' COMPLAINT (PROMISSORY ESTOPPEL) SHOULD BE DISMISSED.

    A.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL.

        As to Count III of the Complaint, IMS incorporates by reference Michelin's Brief in Support of its Motion to Dismiss. As Michelin points out, Plaintiffs have not stated a claim for recovery under a theory of promissory estoppel. Plaintiffs do not allege any specific promise made by IMS (or any other defendant) to Plaintiffs, nor do they allege that any such promise met the requirements applicable to claims for promissory estoppel. Count III therefore should be dismissed for Plaintiffs' failure to allege all the necessary elements of their claim for promissory estoppel.

    B.    PLAINTIFFS CAN HAVE NO CLAIM FOR PROMISSORY ESTOPPEL BECAUSE THEY HAVE ENTERED INTO EXPRESS AGREEMENTS WITH IMS.

        As to IMS, Count III of the Complaint fails to state a claim because as alleged in the Complaint Plaintiffs have an express agreement with IMS, *i.e.*, their tickets. If there is an express agreement between the parties, promissory estoppel does not apply. "Promissory estoppel is not a doctrine designed to give a party ... a second bite at the apple in the event it fails to prove a breach of contract." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 870 (7th Cir. 1999) (quoting *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir.1984)). The Seventh Circuit has explained the reasoning behind the limitation of promissory estoppel to cases where no express agreement exists:

            Promissory estoppel is meant for cases in which a promise, not being supported by consideration, would be unenforceable under conventional principles of contract law. When there is an express contract governing the

relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill. *Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 128 Wis.2d 279, 381 N.W.2d 601, 607 n. 8 (1985); *Frost Construction Co. v. Lobo, Inc.*, 951 P.2d 390, 397 (Wyo.1998); *Tuomala v. Regent University*, 252 Va. 368, 477 S.E.2d 501, 506 (1996); *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1333 (7th Cir.1995); *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir.1990); *compare Kramer v. Alpine Valley Resort, Inc.*, 108 Wis.2d 417, 321 N.W.2d 293 (1982). To allow it to be invoked becomes in those circumstances gratuitous duplication or, worse, circumvention of carefully designed rules of contract law. In our case the parties had a contract covering the relationship in the course and within the scope of which the alleged warranty of thorough research was made. This either was one of the warranties of the contract or it was not (by virtue of disclaimer, the puffing exemption, or the parol evidence rule). If it was not (and it was not), we cannot think of any reason for using the doctrine of promissory estoppel to resuscitate it.

*All-Tech*, 174 F.3d at 870.[3]

Here, as in *All-Tech*, an express agreement existed with the IMS embodied in the ticket. That agreement contained no promises or warranties that the race would be of any particular quality. To the contrary, it expressly provided "NO REFUND" on its face. Just as the Seventh Circuit refused to allow the plaintiff in *All-Tech* to use promissory estoppel to make a claim for a warranty not included in the parties' express agreement the Court here should refuse to allow Plaintiffs to make a claim for alleged promises as to the character or quality of the race not included in the express agreements between Plaintiffs and IMS. Plaintiffs' claim for promissory estoppel as against IMS fails as a matter of law, and Count III should therefore be dismissed.

---

[3] Although *All-Tech* was decided under Wisconsin law, it is plain by the Seventh Circuit's citations to the law of other jurisdictions that the holding was not based exclusively on Wisconsin law. There is no reason to think that Indiana courts would not follow the same rule. As discussed below with respect to Plaintiffs' claim for unjust enrichment, Indiana courts have refused to allow claims for constructive contracts where an express contract exists.

IV. COUNT IV OF PLAINTIFFS' COMPLAINT (COMMON LAW NEGLIGENCE) SHOULD BE DISMISSED.

A. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR COMMON LAW NEGLIGENCE.

IMS incorporates by reference Michelin's Brief as to Count IV of the Complaint. As Michelin points out, the damages sought by Plaintiffs constitute mere economic loss. There are no allegations of personal injury. The economic loss rule bars claims in tort for services that do not live up to expectations. *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005). Thus, Plaintiffs' claim for common law negligence fails as a matter of law, and Count IV should be dismissed.

B. PLAINTIFFS' CLAIMS FOR NEGLIGENCE ARE BARRED BY THE EXPRESS TERMS OF THE TICKET.

In addition, as to IMS, Count IV should be dismissed because Plaintiffs, and all other ticket holders, have expressly released IMS from any claims for negligence. "The holder of this ticket expressly assumes all risk incident to the event, whether occurring prior to, during or subsequent to the actual conduct of the event, and agrees that... IMS [is] hereby released from any and all claims arising from the events, including any claims for negligence." (Ex. A.) That release is enforceable under Indiana law, and it bars any claim for negligence. *See LaFrenz v. Lake County Fair Bd.*, 360 N.E.2d 605 (Ind. Ct. App. 1977). As a matter of law, Count IV should therefore be dismissed as against IMS.[4]

---

[4] As noted by Michelin in Michelin's brief, liability disclaimers on tickets are enforceable and have been held to preclude claims under various theories, including negligence. IMS will not repeat that discussion here, but will instead incorporate by reference those arguments in this section of its own brief.

In Count VI[5] Plaintiffs assert a claim for unjust enrichment. As to IMS, Plaintiffs allege that "IMS received benefits, including, but not necessarily limited to, the retention of all or part of the amount paid for tickets, suites and other special seating, parking and associated costs, including concessions." Count VI fails as a matter of law because the transactions to which it applies, such as tickets, parking, and concessions, are all transactions that involve express or implied agreements. Where there is an express or implied agreement, there is no claim for unjust enrichment:

> Finally, the trial court, as part of its conclusions, determined that "plaintiffs would be unjustly enriched to receive a commission forever." We find no support for such a conclusion given the facts of the case at hand. There are three general types of contracts -- express, implied and constructive. Express and implied contracts are very similar. They differ only in that an express contract is evidenced by spoken or written words while an implied contract is evidenced by the conduct of the parties. The final type of contract, a constructive contract, is also known as a quasi-contract or a contract implied at law. It is a legal fiction used to refer to a situation where no contract actually exists "but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." The issues of unjust enrichment and conferring a benefit arise in the context of a constructive contract. * * * Unjust enrichment operates when there is no governing contract.

*DiMizio v. Romo*, 756 N.E.2d 1018, (Ind. Ct. App. 2001).

Plaintiffs can have no claim for unjust enrichment relating to the tickets because the ticket constitutes an express agreement giving the ticket holder a license to be on IMS's premises and to observe the event. The same is true with respect to suite holders and all other persons who were entitled to special seating pursuant to agreements with IMS. Parking arrangements for the race and food and beverages purchased at concession stands

would all be subject to express or at least implied contracts. Plaintiffs do not allege that these transactions were anything out of the ordinary for the race. Presumably, Plaintiffs parked their cars at various locations around the track which advertised parking for a fee to which Plaintiffs expressly agreed, and Plaintiffs purchased food and beverages from concession stands which offered to sell those concessions for a price and Plaintiffs agreed to purchase those concessions at the price offered. Because these are transactions involving express contracts, Plaintiffs can have no claim for unjust enrichment as held in *DiMizio*. Count VI of Plaintiff's Complaint is without merit, and should therefore be dismissed.

VI.     IN THE ALTERNATIVE, PLAINTIFFS' CLAIM FOR DAMAGES SHOULD BE DISMISSED TO THE EXTENT THAT PLAINTIFFS SEEK TO RECOVER EXPENSES THAT THEY WOULD HAVE INCURRED ABSENT ANY ALLEGED BREACH OF CONTRACT.

In the alternative, IMS has moved for dismissal of plaintiffs' claim for damages to the extent that plaintiffs seek to recover expenses that they would have incurred absent any alleged breach of contract. Even if any of the theories asserted in the Complaint were to survive the motions to dismiss filed by all Defendants, the only damages that can be recovered by Plaintiffs are damages that were actually <u>caused</u> by the breach of contract, third-party contract, or promise. However, aside from the ticket price (which Plaintiffs claim should be refunded because the race was not what they would have liked it to be), the other items of Plaintiffs' purported damages, such as travel, parking, and meals, are all expenses that Plaintiffs would have incurred even if the race had lived up to their subjective expectations, and thus are not damages caused by the alleged breach. Because (as discussed below) Plaintiffs' damages cannot include such items, this lawsuit will ultimately become moot once refunds have been paid to the ticket holders.

---

[5] Because Count V does not apply to IMS, IMS does not address it in this brief, nor does IMS incorporate by reference Michelin's brief on this point as those arguments are not applicable to IMS.

In their Initial Disclosures, Plaintiffs indicate that they will seek damages that include literally all of the money they spent in the course of visiting Indianapolis on the weekend that they attended the race:

> As set forth in their Complaint, Plaintiffs seek a judgment against the Defendants sufficient to compensate the Plaintiffs and Plaintiff Class for Defendants' failure to conduct the 2005 USGP as promoted and as Defendants were legally obligated to provide, <u>including without limitation reimbursement of the costs of tickets, travel, lodging, food, parking, and all other expenses incurred to travel to and attend the "race."</u>

(Plaintiffs' Initial Disclosures at 7 [emphasis added].)[6] Plaintiffs' claims amount to a request that this Court award each of them, and each of the absent class members in the event that a class is ultimately certified in the action, an "all expenses paid" trip to the Speedway in Indianapolis, including airfare, lodging, meals, phone calls, and apparently anything else that they purchased along the way.

---

[6] The damage estimates submitted in their Initial Disclosures illustrates the stunning breadth of Plaintiffs' claim for damages:

| Robert L. Dunn | | | Carey Johnson | | |
|---|---|---|---|---|---|
| Ticket | $ | 107.00 | Ticket | $ | 112.00 |
| Airfare | $ | 700.00 | Airfare | $ | 214.20 |
| Car Rental | $ | 65.66 | Hotel | $ | 216.40 |
| Food | $ | 71.49 | Car Rental | $ | 323.45 |
| Parking | $ | 45.00 | Fuel | $ | 26.51 |
| | | | Parking | $ | 36.00 |
| Total | $ | 989.15 | Total | $ | 928.56 |

| Susan Little | | | Alan G. Symons | | |
|---|---|---|---|---|---|
| Ticket | $ | 112.00 | Ticket | $ | 75.00 |
| Airfare | $ | 639.80 | Parking | $ | 20.00 |
| Hotel | $ | 830.00 | Food/Drinks | $ | 50.00 |
| Telephone | $ | 3.00 | | | |
| Parking | $ | 18.00 | | | |
| Food | $ | 112.77 | | | |
| Total | $ | 1715.57 | Total | $ | 145.00 |

(Plaintiffs' Initial Disclosures at 8-9.) As shown above, Plaintiffs seek to recover damages that are approximately as much as 2 to 15 times the price paid for their tickets.

At this juncture, the Court should address the issue of the types of damages recoverable in this action under the various counts asserted in the Complaint. Specifically, as a matter of law, Plaintiffs are not entitled to recover the types of damages described in their Initial Disclosures as part of their claim for breach of contract (Count I), their claim for third party beneficiary (Count II), or their claim for promissory estoppel (Count III). All of these claims are limited to contract damages, and under Indiana law, contract damages do not include reimbursement of expenses if those expenses would have been incurred even if the contract had not been breached. *See infra.*

To award these damages would put Plaintiffs in a better position than if the alleged contract had been performed. Plaintiffs did not incur these expenses as a consequence of the alleged breach of contract, third-party contract, or promise. <u>Even if the race had been of the kind and quality Plaintiffs had privately hoped for, Plaintiffs would still be out of pocket for the same expenses that they now want to describe as "damages."</u> The only contract damages that Plaintiffs could have possibly suffered as a result of the alleged breach is the difference between the price they paid for their ticket and the "value" of the performance. Considering the race event as a whole transaction, including the travel, lodging, and meals, etc., the only difference in position between where Plaintiffs would be if the race had met their expectations and where they are now, is the difference directly attributable to not having seen the race they wanted to see. That difference in value cannot exceed the price of the ticket.

The purpose of contract damages is to put the plaintiff in the <u>same position</u> as if the contract had been performed. Contract damages should not put the plaintiff in a <u>better position</u>:

> The fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited in recovery to the loss actually suffered by the breach; and he is not entitled to be placed in a better condition than he would have been if the contract had not been performed.

*Irving v. Ort*, 146 N.E.2d 107, 110 (Ind. App. 1957), *reh'g den.* (Ind. App. 1957), *trans. den.* (Ind. 1958). The rule that a party injured by a breach of contract "may not be placed in a better position than he or she would have enjoyed if the breach had not occurred" has been reaffirmed numerous times in Indiana case law. *See*, .e.g., *Whitaker v. Brunner*, 814 N.E.2d 288, 296 (Ind. Ct. App. 2004), *trans. denied* (Ind. 2005); *Sheppard v. Stanich*, 749 N.E.2d 609, 611-12 (Ind. Ct. 2001); *Pierce v. Drees*, 607 N.E.2d 726, 729 n. 2 (Ind. Ct. App. 1993); *Ethyl Corp. v. Forcum-Lannom Assoc., Inc.*, 433 N.E.2d 1214, 1221 (Ind. Ct. App. 1982). The Seventh Circuit follows the same rule when it applies Indiana law. "[I]t is a fundamental principle of contract law that an injured party to a contract should receive adequate compensation so as to bring that party to where he or she would have been but for the breach." *Von Goten v. Research Systems Corp.*, 739 F.2d 1264, 1268 (7th Cir. 1984) (applying Indiana law).

These are not "consequential damages" as Plaintiffs' counsel have described them on various occasions. Consequential damages are awarded as compensation for a "loss [that] flows naturally and probably from the breach." *Johnson v. Scandia Associates, Inc.*, 717 N.E.2d 24, 31 (Ind. 1999). Plaintiffs demand reimbursement of expenses that they would have incurred had there been no breach. Absent a breach, if the race had met their expectations, Plaintiffs still would have traveled to Indianapolis, still would have dined, still would have lodged in hotels, and still would have parked near the track. Those expenses therefore are not consequential damages because they do not flow from the breach. As noted by Professor Corbin: "Of course damages may be awarded for such

'consequential' injuries as were foreseeable when the contract was made; but this means losses and injuries that are the 'consequence' of the *breach* and would not have occurred if there had been no breach." 11 Corbin on Contracts § 1036 at 188 (Interim Ed. 2002) (emphasis in original).

Recovery of the difference between the contract price of the ticket and the "value" of a ticket for a race like the one actually held will fully compensate Plaintiffs. That difference, of course, cannot exceed the ticket price. This is an important issue in light of the refund program already taking place. If Plaintiffs (and the absent class members) are refunded the price of their ticket, they are more than fully compensated for their allegedly disappointed expectations as to the quality of the race. Reimbursing all of their expenses in addition to compensating them for having, in their opinion, paid too much for the race they saw, would actually put Plaintiffs in a better position than if the alleged contract had been performed. Thus, the Court should dismiss any claim for damages under Count I, Count II, or Count III to the extent that it includes reimbursement of expenses that would have been incurred even if the contract, third-party contract, or promise had not been breached.

The law requires a causal relationship between an alleged breach of contract or promise and the damages sought to be recovered because otherwise the exposure of defendants in such actions would be unlimited. All sorts of troubling issues would be raised in this case if a causal relationship were not required. For example, how can anyone hope to determine whether and to what extent these expenses (such as meals) would have been incurred as part of everyday expenses regardless whether a plaintiff class member attended the race? (After all, the plaintiff class members would have to eat whether they attended the race or not.) Is the full price of a first class plane ticket reimbursable or should

the reimbursement be limited to coach fares? (None of the defendants required any plaintiff to fly first class.) Why should a plaintiff with extravagant tastes in dining be awarded more in damages than another plaintiff who patronized a less expensive restaurant? What if a plaintiff ordered an expensive bottle of wine for dinner the night before the race, should the cost of the wine be included as damages? If a plaintiff participated in other activities beside the race while in Indianapolis, such as visiting family members while here, should she still be reimbursed for all of her expenses or only part of them?

Fortunately, the Court should never need to decide how to resolve these issues. As a matter of law, Plaintiffs are not entitled to reimbursement of expenses that are not attributable to the breach, and to the extent that Plaintiffs seek to recover as damages amounts that they would have spent even if there had been no breach of contract, or third-party contract, or promise, their claims should be dismissed.

## CONCLUSION

For all of the above reasons, IMS respectfully requests the Court to dismiss Counts I, II, III, IV, and VI against IMS with prejudice, and to enter judgment in favor of IMS on those Counts. In the alternative, IMS respectfully requests the Court to dismiss Plaintiffs' claims against IMS to the extent that Plaintiffs seek to recover expenses that would have been incurred even if there had been no breach of contract, or third-party contract, or promise.

Respectfully submitted,

David M. Mattingly (#10630-49)
Curtis W. McCauley (#16456-49)

Attorneys for Defendant Indianapolis
Motor Speedway, LLC

ICE MILLER
One American Square Box 82001
Indianapolis, IN 46282-0002
317.236.2100

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of September 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Plaintiffs' Counsel**

William Bock, III
KROGER GARDIS & REGAS
wb@kgrlaw.com

Gabriel Adam Hawkins
PRICE WAICUKAUSKI RILEY & DEBROTA
ghawkins@price-law.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com

Kurtis Allen Marshall
KROGER, GARDIS & REGAS LLP
kam@kgrlaw.com

Reynolds B. Brissenden
KROGER GARDIS & REGAS
rbb@kgrlaw.com

KC Cohen
KC COHEN LAWYER, PC
kc@esoft-legal.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Michael B. Hyman
MUCH SHELIST
mbhyman@muchshelist.com

Eric S. Pavlack
COHEN & MALAD LLP
epavlack@cohenandmalad.com

Jeff S. Gibson
COHEN & MALAD LLP
jgibson@cohenandmalad.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

Henry J. Price
PRICE WAICUKAUSKI RILEY & DEBROTA
hprice@price-law.com

**Defendants' Counsel**

A. William Urquhart
QUINN EMANUEL URQUHART OLIVER & HEDGES
billurquhart@quinnemanuel.com

Bernard Lowell Pylitt
KATZ & KORIN
bpylitt@katzkorin.com

Offer Korin
KATZ & KORIN
okorin@katzkorin.com

Sally F. Zweig
KATZ & KORIN
szweig@katzkorin.com

Scott Watson
QUINN EMANUEL URQUHART OLIVER & HEDGES
scottwatson@quinnemanuel.com

Shon Morgan
QUINN EMANUEL URQUHART OLIVER & HEDGES
shonmorgan@quinnemanuel.com

Hugh E. Reynolds, Jr.
LOCKE REYNOLDS LLP
hreynolds@locke.com

John K. McDavid
LOCKE REYNOLDS LLP
jmcdavid@locke.com

Stephanie A. Petersmarck
MCDERMOTT WILL & EMERY LLP
spetersmarck@mwe.com

Steven P. Handler
MCDERMOTT WILL & EMERY LLP
shandler@mwe.com

Bettina J. Strauss
BRYAN CAVE LLP
bjstrauss@bryancave.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

Peter W. Herzog, III
BRYAN CAVE LLP
pwherzog@bryancave.com

William N. Riley
PRICE WAICUKAUSKI RILEY & DEBROTA
wriley@price-law.com

Peter E. Borkon
SCHUBERT & REED LLP
pborkon@schubert-reed.com

Robert C. Schubert
SCHUBERT & REED LLP
rschubert@schubert-reed.com

Robert J. Schuckit
SCHUCKIT & ASSOCIATES, P.C.
rschuckit@schuckitlaw.com

Larry D. Drury
ldrurylaw@aol.com

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
jboyers@woodmaclaw.com

James J. Dries
BAKER & MCKENZIE
james.j.dries@bakernet.com

Matthew Gordon Allison
BAKER & MCKENZIE LLP
matthew.g.allison@bakernet.com

Thomas Anthony Doyle
BAKER & MCKENZIE LLP
thomas.a.doyle@bakernet.com

William P. Wooden
WOODEN & MCLAUGHLIN LLP
wwooden@woodmaclaw.com

Stephen E. Arthur
HARRISON & MOBERLY
sarthur@h-mlaw.com

Lawrence F. Carnevale
CARTER LEDYARD & MILBURN LLP
carnevale@clm.com

Raymond A. Basile
HARRISON & MOBERLY
basile@h-mlaw.com

_____
Curtis W. McCauley

ICE MILLER
One American Square Box 82001
Indianapolis, IN 46282-0002
317.236.2100