UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: 2005 UNITED STATES GRAND PRIX | ) | Master Docket No. |
| PRODUCTS LIABILITY LITIGATION | ) | 1:05-cv-00914-SEB-VSS |

**CONSOLIDATED MEMORANDUM IN SUPPORT OF THE
MOTION TO DISMISS FILED BY THE SEVEN DEFENDANT
RACING TEAMS WHO USED MICHELIN TIRES IN THE JUNE 2005 RACE**

# TABLE OF CONTENTS

**Page**

I.     ALLEGATIONS OF THE SECOND AMENDED COMPLAINT ..................... 4

II.     COUNT II, IN WHICH PLAINTIFFS SEEK RECOVERY AS INTENDED THIRD PARTY BENEFICIARIES OF CONTRACTS THEY DO NOT EVEN IDENTIFY, FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .................................................. 5

      A.     As A Matter Of Law, The Alleged Failure To Perform An Entertainment Or Sporting Event Of A Particular Quality Or Character Does Not Constitute A Breach Of Contract Enforceable By Attending Fans ...................................................................................... 6

      B.     As A Matter Of Law, Plaintiffs Are Not Intended Third-Party Beneficiaries Of Contracts Between And Among Event Sponsors Or Hosts And The Event Performers ........................................................ 8

      C.     Under Federal Pleading Standards, Plaintiffs' Failure To Identify The Contracts, Or Even The Specific Parties And Alleged Promises, Requires Dismissal. ............................................................. 9

III.     COUNT III, SEEKING TO ENFORCE UNIDENTIFIED PROMOTIONAL "PROMISES" WITH THE DOCTRINE OF ESTOPPEL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................................................................................... 10

      A.     Plaintiffs Have Not Adequately Alleged The Existence Of Any Enforceable Promise Made By Any Of The Teams ................................. 10

      B.     As A Matter Of Law, Plaintiffs Cannot Invoke Estoppel to Convert Unspecified Advertising and Promotion Into An Enforceable Promise Which They Could Reasonably Rely Upon As A Commitment That Particular Cars Would Participate In The Race Or That the Race Would Be of A Particular Quality ............................... 11

      C.     The Factual Allegations Of The Complaint Preclude Any Finding Of Fan Reliance And Estoppel As A Matter Of Law ............................. 13

IV.     COUNT IV FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................................................................................... 13

      A.     The Negligence Claim Is Barred By The Economic Loss Doctrine ........ 13

      B.     The Complaint Fails to Plead Facts That Would Convert Any Overarching Concept of Negligence Into a Duty Compelling The Teams To Drive In Disregard of Safety Warnings ................................. 15

V.     COUNT V FAILS TO STATE A CLAIM AGAINST THE TEAMS FOR TORTIOUS INTERFERENCE WITH CONTRACT ......................................... 17

A.  Plaintiffs Do Not Allege The Teams Intentionally Induced A
    Breach By IMS ........................................................................................ 18

B.  The Complaint's Own Pleading of Justifying Facts Demonstrates
    Its Inability to Plead the Required Element That The Alleged
    Interference Lacked Justification. ............................................................ 20

C.  Plaintiffs Should Not Be Allowed To Manipulate The Interference
    Tort To Accomplish The Judicialization Of Fan Disappointment
    That The Courts Have So Carefully Avoided To Date. ............................. 22

VI.  LIKE OTHER COURTS FACED WITH ATTEMPTED FAN CLASS
     ACTIONS, THIS COURT SHOULD PURPOSEFULLY PREVENT THE
     CREATION OF DIRECT FAN CAUSES OF ACTION AGAINST
     PERFORMERS AND COMPETITORS, DUE TO CONSIDERATIONS
     OF JUSTICIABILITY ...................................................................................... 23

VII.  CONCLUSION.................................................................................................. 24

# I.  ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Proving the adage that no good deed goes unpunished, Plaintiffs have sued the seven Teams who used Michelin tires (the "Teams")[1] in the 2005 Grand Prix after having been warned by Michelin that the tires might be unsafe on the planned layout for the track. In a perverse twist of tort law, after appearing at the starting grid to allow even a last-minute resolution of the safety issue, the Teams are sued on the theory that fans can force their race – either by inviting a tort or by piggybacking on someone else's undefined contract.

After pleading that a driver using Michelin tires crashed two days before the Race (¶ 32)[2] and after attaching a copy of the Michelin letter warning the Teams of tire dangers in the planned configuration for the race (Complaint, Ex. A) , the fans seek recovery of their alleged economic losses, including ticket prices and travel (¶ 32, ¶ 39). After co-defendant Michelin warned co-defendant FIA (Complaint, Ex. A) about unsafety in the qualifying tires "unless the vehicle speed in turn 13 can be reduced" (¶ 39), the FIA responded on the day of the Race by rejecting "categorically any consideration of Michelin's proposed remedies" (¶ 40). The Teams left the track after participating in the formation lap (¶ 36), which by definition occurred after the fans had already bought their tickets and traveled to Indianapolis.

Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate when it is apparent from the face of the Complaint that no viable cause of action exists. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988). "[W]ell pleaded allegations of the complaint are to be taken as admitted, but mere unsupported conclusions of fact or mixed fact and law are not admitted." *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Allegations of the complaint that defeat recovery are not to be ignored. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th

---

[1] The seven Teams are Defendants BMW Williams F1 Team, Panasonic Toyota Racing, Lucky Strike BAR Honda, West McLaren Mercedes, Mile Seven Renault F1 Team, Red Bull Racing and Sauber Petronas.
[2] All paragraph references are to the Plaintiffs' Second Amended Complaint.

Cir. 1993) ("We are not required, however, to ignore any facts alleged in the complaint that undermine the plaintiff's claim").

**II.     COUNT II, IN WHICH PLAINTIFFS SEEK RECOVERY AS INTENDED THIRD PARTY BENEFICIARIES OF CONTRACTS THEY DO NOT EVEN IDENTIFY, FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Contract enforcement is generally limited to the parties to a contract, with a narrow exception for those who meet the burden of proving that they were intended third-party beneficiaries, meaning persons that the parties intended to have a right to enforce the contract. Such status is never established just by proving who "benefited" from a contract, as virtually all contracts shower benefits on nonparties. Being an incidentally benefited party is simply not the same as being an intended third party beneficiary. Beneficiaries benefit either incidentally—the usual situation in which no rights arise—or with some manifest proof that the contract parties intended them to benefit and to be able to enforce the contract. Virtually every construction project owner, for example, is an incidental "beneficiary" of its general contractor's subcontracts because those subcontracts create his building, but the owner is routinely denied the right to sue the subcontractors in Indiana (and other states) because the benefit simply does not establish the intent to allow third-party enforcement. *E.g., Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 912 (7th Cir. 1989). The burden of proving intended beneficiary status is on the claimant, and must be met with facts that establish such a cause of action. *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001); *OEC-Diasonics v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996).[3]

---

[3] Defendants cite Indiana legal propositions about third-party beneficiaries (under *Erie v. Tompkins*), but reserve the right to argue, if and when Plaintiffs ever specify the specific contract they were supposedly intended to be able to enforce, that such contract may be governed by the law of a different country, may specify a nonjudicial arbitration forum, and may have terms that are antithetical to an intent to allow fan enforcement. The potential impropriety of a judicial forum or the use of Indiana law for enforcing the unidentified contracts highlights the unfairness and inappropriateness of allowing the Plaintiffs to plead no more than a reference to unspecified contracts between unspecified subsets of the several Defendants.

Lacking contractual privity with any of the moving Teams, Plaintiffs overreach and claim

to be intended third-party beneficiaries of contracts they cannot even identify, have never seen,

and could only be "intended" to enforce, if the Court believes that the Formula One organization,

the Teams, and the tire suppliers intended any grand prix audience in any host city around the

world to be able to independently enforce each of those contracts. Plaintiffs' wholly implausible

unsupported suggestion that every unhappy fan was an intended beneficiary with a right to sue

lacks support in any judicial precedent.[4]

### A. As A Matter Of Law, The Alleged Failure To Perform An Entertainment Or Sporting Event Of A Particular Quality Or Character Does Not Constitute A Breach Of Contract Enforceable By Attending Fans.

Plaintiffs claim that the Teams breached unidentified contracts "by failing to present the

Race as promoted and promised" (¶ 81). This claim fails to state a cause of action because an

athlete, singer, or other performer cannot be sued by attendees for allegedly failing to present an

event or performance of a particular quality or nature, or even for failing to appear at all. The

special legal nature of sporting and entertainment events is not new, and the rules about fans not

having enforceable contract rights to be satisfied by a performance are well known.

> [N]o one would, we think, allow an action for breach of contract
> on the part of all the disappointed opera goers who did not hear
> Miss Wagner, even though the ultimate effect of performance by

---

[4] The terms of the tickets for the Race eliminate any conceivable claim that the Plaintiffs could assert. In addition to providing "NO REFUND," the ticket contains both assumption of risk language (providing that the ticket holder "assumes all risk incident" to the Race) and a liability disclaimer (releasing Race participants and others "from any and all claims arising from" the Race). Provisions such as those printed on the tickets have generally been upheld and warrant dismissal of all of Plaintiffs' claims in this action. *Ramage v. Forbes International*, 1997 U.S. Dist. LEXIS 18940, *5 (C.D. Cal.) ("Generally, contractual disclaimers and limitations of liability are binding even though they appear on pre-printed tickets and brochures." *Citing Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 113 L. Ed. 2d 622, 111 S. Ct. 1522 (1991) (standard form forum-selection clause which appeared on plaintiff's passenger ticket was found to be valid as a disclaimer); *Loeb v. United States, Dep't of Interior*, 793 F. Supp. 431, 439 (E.D. N.Y. 1992). More fundamentally for the Teams, regardless of whether the stadium adequately did the legal job of limiting its own contract liability to the fans, such language is absolutely inconsistent with the notion that in the other contracts among promoters, teams, and tire suppliers there was an intention that fans could and should be allowed direct rights of action as third-party beneficiaries.

> Miss Wagner would have been to send them home with the pleased
> feeling of having heard something beautiful.

*Isbrandtsen Co. v. Longshoremen's Assoc.*, 204 F.2d 495, 498 (3d Cir. 1953), affirming Rule 12 dismissal of a third-party beneficiary claim, citing the contracts textbook case of *Lumley v. Gye*, 2 E.&B. 216, 22 L.J.Q.B. 463 (1853) (Lumley was just "too far away" from the contract to be given third-party beneficiary status). The Third Circuit's recitation of *Lumley* comports with the Seventh Circuit's admonition to the same effect: "That the Chicago Cubs turn out to be the doormat of the National League would not entitle the ticket holder to a refund for the remaining games, any more than the star tenor's laryngitis entitles the opera goer to a refund when the understudy takes over the role." *Seko Air Freight v. Transworld Sys.*, 22 F.3d 773, 774 (7th Cir. 1994).

Despite such clear judicial admonitions, ticketholders have unsuccessfully tried to invoke third-party beneficiary theories to piggyback on ambiguously invoked contracts among promoters, stadiums, and performers with whom they are dissatisfied. *See Charpentier v. Los Angeles Rams Football Co.*, 89 Cal. Rptr. 2d 115, 120 (Cal. App. 1999) (ticketholders did not buy the right to watch a good team or to have enlightened management decisions made); *Beder v. Cleveland Browns*, 717 N.E.2d 716, 720-721 (Ohio Ct. App. 1998) (summary judgment properly granted on plaintiff's claim for breach of contract for a particular entertainment value); *Stern v. Cleveland Browns Football Club*, No. 95-L-196, 1996 Ohio App. LEXIS 5802, *16-18 (1996) (as a matter of law, team's poor performance did not establish a breach of contract); *Bickett v. Buffalo Bills, Inc.*, 472 N.Y.S.2d 245, 247-248 (Sup. Ct. 1983) (dismissing complaint for failure to state cause of action when it alleged contract damage from "diminished quality" of play).

Similarly, in dismissing a class claim by concert attendees against promoters, ticket sellers, and a poorly performing rock band whose lead singer passed out on stage from alleged intoxication, an Illinois trial court noted that "the case law establishes that the purchase of a ticket entitles the buyer to a seat, and perhaps to *some* performance—but not to a performance of a stated quality." *Berenz v. Diamond Road, Inc.*, No. 03 CH 7106, Mem. and Order at p. 6 (Cir. Ct. Cook County, Ill. July 13, 2004).[5]

Judge Easterbrook's warning to disappointed Cubs fans and opera attendees is no less applicable to the Formula One fans, who are simply not intended—by the alleged contract parties or by the courts—to have a judicial right to enforce their preferences about a race. The precedents are clear that no cause of action for breach of contract is available to convert fan unhappiness into compensatory damages. Accordingly, Count II should be dismissed with prejudice, at least as to the Teams, for failure to state a claim upon which relief can be granted.

**B.     As A Matter Of Law, Plaintiffs Are Not Intended Third-Party Beneficiaries Of Contracts Between And Among Event Sponsors Or Hosts And The Event Performers.**

Even if contract law recognized a cause of action for fans against the ticket seller to compensate for the alleged poor quality of a performance or event, Plaintiffs cannot state a claim as alleged third-party beneficiaries of unspecified contracts between and among various other involved parties, which undifferentiated collection in this case includes a collection of competitors, the referee of the sport, the promoter of the event, and a tire supplier. *Castillo v. Tyson*, 701 N.Y.S.2d 423, 424 (App. Div. 2000). *Castillo* arose from the notorious heavyweight boxing match in which Mike Tyson bit his opponent's ear early in the bout and was disqualified. The *Castillo* court rejected a similar attempt to claim that the fans were third-party beneficiaries

---

[5] As with the Creed concert, disappointed fans of the rock band Limp Bizkit filed a class action against the band to redress their dissatisfaction with a concert in October, 2003. The suit was dismissed a few months later. *Cairo v. Durst*, Circuit Court of Cook County Illinois, No. 03-CH-16762.

of unknown contract details in various arrangements that had set up the fight. As here, fans claimed they were entitled to a "legitimate" contest "in accordance with the applicable rules and regulations" and that because the performance was so far from that, they could state a claim by invoking all those rules, regulations, and alleged agreements to perform. *Castillo*, 701 N.Y.S.2d at 424.

As here, the plaintiffs in *Castillo* invoked many legal theories (breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of express and implied warranties, tortious interference with contractual relations, "wantonness," fraud, negligent representation), and the court dismissed them all. The *Castillo* court specifically *refused to declare the fans to be third-party beneficiaries*. In affirming that dismissal, the appellate court described the third-party beneficiary claim as "contrived" and appropriately rejected it. *Castillo*, 701 N.Y.S.2d at 424.

Count II in this action is similarly "contrived," invoking unknown contracts that are more likely to call for arbitration in France than to contemplate fan enforcement by any unhappy spectator in venues all over the world. The precedents do not support an interpretation of sporting events as performances promised to be of a certain quality, or as contracts that entitle fans to litigate their unhappiness. Count II should be dismissed with prejudice.

C.     **Under Federal Pleading Standards, Plaintiffs' Failure To Identify The Contracts, Or Even The Specific Parties And Alleged Promises, Requires Dismissal.**

Plaintiffs' non-descript allegations of "contractual arrangements among" the defendants fail to state a third-party beneficiary claim, even under liberal federal pleading standards. *Credit General Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996) (third-party beneficiary claim dismissed because complaint lacked allegations regarding the contract terms or circumstances indicating intended beneficiary status). A party seeking to recover under a

contract "must identify the contract that forms the basis for this claim." *Ohio Cas. Ins. Co. v. Bank One*, No. 95 C 6613, 1996 U.S. Dist. LEXIS 12933, *28 (N.D. Ill. September 4, 1996) (dismissing claim where contract was not identified); *see also, Modern Drop Forge Co. v. Rapid Techs.*, No. 95-3113, 1996 U.S. App. LEXIS 20097, *3 (7th Cir. 1996) (affirming dismissal and noting that the "complaint alleges a claim for breach of contract without identifying the contract allegedly breached"); *Behrman v. Allstate Life Ins. Co.*, No. 04-60926, 2005 U.S. Dist. LEXIS 7262, *13 (S.D. Fla. 2005) (dismissing contract claim where plaintiff "failed to attach or otherwise identify a valid contract at issue with any degree of specificity"). Count II of the Complaint suffers from the same infirmities here and should therefore be dismissed.

## III. COUNT III, SEEKING TO ENFORCE UNIDENTIFIED PROMOTIONAL "PROMISES" WITH THE DOCTRINE OF ESTOPPEL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The doctrine of promissory estoppel requires allegations of

> 1) a promise, 2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character, 3) which does, in fact, induce such action or forbearance, and 4) injustice that can only be avoided by enforcement of the promise.

*Security Bank & Trust Co. v. Bogard*, 494 N.E.2d 965, 968 (Ind. Ct. App. 1986). "A promise is a voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future." *Woodall v. Citizens Banking Company*, 507 N.E.2d 999, 1000 (Ind. Ct. App. 1987), *quoting* J. Murray, *Murray on Contracts*, 2-3 (2d Ed. 1974). Count III fails to allege the most basic prerequisites of this cause of action.

### A. Plaintiffs Have Not Adequately Alleged The Existence Of Any Enforceable Promise Made By Any Of The Teams.

Plaintiffs have failed to allege *any* enforceable promise made by any Team to any fan. The allegation that "[a]ll of the Defendants...provide[d] advertising and promotion" of the race

(¶ 82) attributes no voluntary commitment to any Team, and cannot constitute any allegation of an enforceable promise, as a matter of law. *Cf. Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1095 (C.D. Cal. 1999) (alleged public statements were not enforceable promises, and where the source of an alleged public promise is not identified, "this allegation of an enforceable promise does not have enforceable terms"). Advertisements, as a general rule, are generally not considered to be binding offers or promises (all the more so if plaintiffs choose not to identify any content or attribute anything specific to any one defendant). *Stern*, 1996 Ohio App. LEXIS 5802, at *11 (*citing* 1 Williston, *A Treatise on the Law of Contracts* (4 Ed. 1990) 286-287).

Count III contains no attribution to any specific Team of any specific statement, even as it invokes boilerplate language about reliance and tries to magically convert advertising and promotion into a reliable promise. The reliance does not create a promise. A promise must exist and induce reasonable reliance before any estoppel arises.

**B.** **As A Matter Of Law, Plaintiffs Cannot Invoke Estoppel To Convert Unspecified Advertising And Promotion Into An Enforceable Promise Which They Could Reasonably Rely Upon As A Commitment That Particular Cars Would Participate In The Race Or That The Race Would Be Of A Particular Quality.**

Rather, promissory estoppel "is really just a doctrine of contract law" that "merely allows reliance to be substituted for consideration as the basis for making a promise enforceable." *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 703 (7th Cir. 2004). Very few disappointed fan cases have been pursued on a promissory estoppel theory, but the courts that have considered such promissory estoppel claims have rejected them on the same legal grounds that they have rejected the plaintiffs' breach of contract claims. *See Charpentier*, 89 Cal. Rptr.2d at 122 (rejecting promissory estoppel claim under the same analysis applied to breach of contract

claim); *Beder*, 717 N.E.2d at 721 (summary judgment properly granted on plaintiffs' claims for breach of contract and for promissory estoppel, for the same reasons).

Fan claims that are based upon alleged advertising or promotion have been rejected because "the essence of the doctrine of promissory estoppel is not that the plaintiff [has] reasonably relied on the defendant's promise, but that he [has] reasonably relied on its *being a promise* in the sense of a legal commitment, and not a mere prediction or aspiration or bit of puffery." *Garwood*, 378 F.3d at 703 (emphasis added). A claim of reasonable reliance on alleged advertising material was rejected as a matter of law in *Strauss v. Long Island Sports, Inc.*, 401 N.Y.S. 2d 233 (App. Div. 1978). *Strauss* rejected a basketball fan's claim that he had bought tickets based on an advertising campaign featuring the team's star Julius Erving (a.k.a. "Dr. J."), and that the Team's trade of Erving deprived those ticketholders of the principal reason for their purchase. The court rejected the claim of an enforceable expectation that Erving would play for two reasons – first, because the risk that Erving would not be playing could fairly be regarded as an assumed risk, and, second, because the advertising of competitors is simply not a reasonable basis for reliance by the fan as if there is a specific promise for a specific player to play. In *Castillo*, the Mike Tyson "ear-biting" case, the court reached a similar conclusion that the plaintiffs could not reasonably rule out the possibility of disqualification or other premature termination of the fight, and then could not rely (as if they were enforceable promises) on promotion of a "sensational victory" and "the biggest fight of all time," and "other representations promising or implying a 'legitimate fight.'" *Castillo*, 701 N.Y.S.2d at 425.

The law does not imply a cause of action in favor of event attendees who are dissatisfied with the quality of the performance they attended, regardless of whether the claim is present in

contract or in reliance-based promissory estoppel. Plaintiffs' Count III should be dismissed with prejudice.

### C. The Factual Allegations Of The Complaint Preclude Any Finding Of Fan Reliance And Estoppel As A Matter Of Law.

Count III does not allege the utterance by any specified Team of any particular promise. The factual allegations that appear to be common to all counts, however, do appear to suggest that anything done by the Teams was either in the formation lap or otherwise just prior to the Race (¶¶ 33-35). Count III is the *only* count of the Complaint that (for whatever reason) does not incorporate the prior allegations into the substantive count. Plaintiffs' sole allegations of purported promises refer to supposed statements made *long after* the Plaintiffs purchased their race tickets, and *after* Plaintiffs made their travel arrangements and traveled to Indianapolis (¶¶ 33-35). Given that reliance is the *sina qua non* of recovery for promissory estoppel, Plaintiffs cannot plead reliance upon promises or representations made after the time Plaintiffs supposedly acted to their detriment. *Solow v. Northwest Airlines*, 180 B.R. 851, 945 (N.D. Ill. 1995).

## IV. COUNT IV FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. The Negligence Claim Is Barred By The Economic Loss Doctrine.

Without even attempting to identify the specific defendants, or the means by which they allegedly assumed any duty, the Complaint offers the naked legal conclusion that "Defendants voluntarily assumed a duty to Plaintiffs to present the Race as advertised and promoted." Plaintiffs then accuse all defendants (except IMS) of breaching this duty by failing to "exercise reasonable care to carry out this race *as promised.*" (¶ 86) (emphasis added). By so clearly exposing the claimed tort duty as no more than a re-labeling of alleged contract obligations to perform "as *promised,*" the pleading is a textbook example of what the economic loss doctrine

prevents. Under the economic loss doctrine, damages resulting from such allegedly failed, or unperformed, "promises" are exclusively the province of contract law, not tort law. *See Rardin v. T & D Machine Handling, Inc.*, 890 F.2d 24 (7th Cir. 1989) (no tort remedy for lost profits in commercial undertaking). The doctrine bars tort recovery for such contract concepts—no matter how many times the word negligence is added by the pleader. *See Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1090 (Ind. 1993) (cautioning that recovery for economic losses under a negligence theory could in effect circumvent contractual limitations); *Jordan v. Talaga*, 532 N.E.2d 1174, 1181 (Ind. Ct. App. 1989) *reh'g denied, trans. denied* (to "recover in negligence there must be a showing of harm above and beyond disappointed expectations").

Even if the pleading had not so obviously exposed the claim as one of failure to perform "as promised," the damages requested in Count IV independently compel application of the economic loss doctrine. Plaintiffs allege no physical injury to any person or tangible property, and describes their economic losses only as "monies spent for tickets, travel, parking, lodging, food and other expenses necessary to attend the Race" (¶¶ 87- 88).

> [W]here there is no accident, and no physical damage, and the only loss is a pecuniary one . . . the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied . . . recovery.

W. Prosser, *Handbook on the Law of Torts* (4th Ed. 1971), Sec 101 at 665.

The pecuniary losses alleged by Plaintiffs are not recoverable in common law negligence. *See Absher v. Clark County Rural Elec. Membership Corp.*, 629 N.E.2d 870, 871-872 (Ind. Ct. App. 1994) ("economic interests are not entitled to protection against mere negligence"); *Sanco, Inc. v. Ford Motor Co.*, 579 F. Supp. 893, 898 (Tort recovery not allowed for economic loss; "damage resulting merely from . . . failure to live up to expectation, and the like, will be

considered economic loss, as to which recovery may be had only on a contract theory"). Count IV should be dismissed with prejudice as barred by the economic loss doctrine.

**B.** **The Complaint Fails To Plead Facts That Would Convert Any Overarching Concept Of Negligence Into A Duty Compelling The Teams To Drive In Disregard Of Safety Warnings.**

Plaintiffs feel comfortable describing the act of *not racing* as malicious and reckless (*see* ¶ 88). This Court need only imagine the same pleader's approach, on the same *ex ante* facts, if the Michelin safety warning had been ignored and Schumacher's pre-race crash had been duplicated on race day with death to a fan. The *ex ante* situation would have been exactly the same, but the Teams' act of proceeding with the race would have been described as recklessly wrongful, instead of being described as required, as it is now. Indiana negligence law pointed in only one direction as to the appropriate response to a warning from Michelin that the equipment supplier could not stand behind the provided tires in the circumstances then presented by the course.

Much of the legal error and insufficiency in the Complaint flows from the continually expressed presumption that there is somewhere a duty imposed on these competitors--from tort law or from some promise they have made--to race regardless of safety. Whatever the duties or promises of the intermediary promoters or the ticket-selling track may have been, no contract agreement or concept of negligence law requires the Teams, who already drive the cars at death defying speeds, to race regardless of warnings from their tire supplier and regardless of their calculation of safety at any moment regarding the race conditions. All tort law precedent suggests the exact opposite. A pleading that invents an otherwise nonexistent duty to go forward with a contest *regardless of safety* does not become legitimate just because it uses a recognizable word like negligence to assert that tort duty in the wrong direction.

Plaintiffs plead no facts to support any negligence-based duty to race, and surely not to establish any duty to race *in derogation of a safety warning from the most relevant equipment supplier.* *Cf. Terre Haute, I. & E. Traction Co. v. Stevenson*, 189 Ind. 100, 109, 113 (Ind. 1919) (when defendant motorman was warned of plaintiff's railroad crossing, it "became the duty of the motorman to observe" such care as a "reasonably prudent person would use under like circumstances"); *Arnold v. State*, 148 N.Y.S. 479, 482 (App. Div. 1914) (noting the risk of exploding tires in auto racing almost a hundred years ago); *Lawton v. Goodyear Tire & Rubber Co.*, No. 76-775,1984 R.I. Super. LEXIS 94 (Super. Ct. 1984) (wrongful death tort action stemming from the tire induced death of Formula One driver Mark Donohue during practice for the 1975 Austrian Grand Prix).[6]

Facts offered by a plaintiff that contradict the very existence of its own theory of the cause of action must also be given effect on a motion to dismiss. *Jefferson v. Ambroz*, 90 F. 3d 1291, 1296 (7th Cir. 1996) ("If a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck - he has pleaded himself out of court.' ") (*quoting Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994)); *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993). Virtually the exact same complaint, including the attached Michelin warning and the overstated allegations regarding "reckless" and "malicious" conduct (¶ 88), could have and would have been filed if the Teams had made the decision plaintiff says they should have made, *on the same pre-race facts*, and someone had been injured or killed. Negligence is supposed to be about what

---

[6] *See also, e.g., Indianapolis Motor Speedway Co. v. Shoup*, 165 N.E. 246 (Ind. Ct. App. 1929) (negligence action brought by father of boy killed after race car went out of control); *U.S. Auto Club, Inc. v. Smith*, 717 N.E.2d 919 (Ind. App. 1999) (tort action against race promoter when driver lost control and killed a spectator); *Kellar v. Lloyd*, 509 N.W.2d 87 (Wis. Ct. App.1993) (unpaid volunteer's actions against race car driver, pit crew, track owner, and racing club); *Plant v. Wilbur*, 47 S.W.3d 889 (Ark. 2001) (spectator's negligence action for injuries from flying debris from auto race); *Schlessman v. Henson*, 413 N.E.2d 1252 (Ill. 1980) (noting "death or injury to drivers, mechanics and spectators..." from "mechanical failures, defective ...guardrails, driver error or weather conditions affecting driving surfaces."); *Ellingson v. World Amusement Service Ass'n* 222 N.W. 335 (Minn. 1928) (negligence action for death from car reaching a crowd of spectators).

someone should do in the face of what it knows *ex ante*, not after the fact. Negligence should not require defendants to face virtually the same allegation of negligence for exactly opposite decisions (to race or not race), on the same *ex ante* facts, based only on whether death or a refund results. Count IV should be dismissed for failure to state a claim.

## V.  COUNT V FAILS TO STATE A CLAIM AGAINST THE TEAMS FOR TORTIOUS INTERFERENCE WITH CONTRACT.

In Count V, Plaintiffs allege the Teams tortiously interfered with their 2005 USGP tickets by deciding not to race—in a complaint where the justification for that decision is prominently alleged and also displayed in its attached Michelin warning letter (¶ 32, ¶ 39, ¶ 40; Complaint Ex. A, Michelin Letter of June 18, 2005).

Defendants (excluding IMS) are alleged to have had "actual and constructive knowledge of the contractual relationship between IMS and the Plaintiffs" and to have "intentionally interfered with said contract by arranging for the drivers with Michelin tires not to race in the Race." Plaintiffs state there was no justification for the Defendants actions, while inconsistently pleading and noting exactly the opposite by attaching the Michelin letter that screams justification (¶¶ 91-93). Such allegations fail to state a claim for tortious interference with contract and ought be dismissed under Rule 12(b)(6): first, because they allege "interference" but do *not* allege that the Teams *intended and caused a breach of the IMS contract.* Moreover, no such breach of the IMS contract can be conjured up from the dissatisfaction of the fans with the quality of the performance or the number of teams they observed from their seats. Second, the justifying facts in the Complaint itself demonstrate Plaintiffs' inability to plead a required element of the tort: that the Teams' decision not to race lacked justification. Third, available precedent holds that interference claims fail (like the estoppel claims) because of their inaccurate

assumption that the fans may reasonably rely on enforcing any expectation about who will play in a sport.

### A.    Plaintiffs Do Not Allege The Teams Intentionally Induced A Breach By IMS.

In Indiana, the elements of the tort of intentional interference with a contractual relationship are:  1.) existence of a valid and enforceable contract; 2.) knowledge of the contract; 3.) intentional inducement of a breach of the contract; 4.) absence of justification; and 5.) damages as a result of defendant's wrongful inducement of a breach of the contract. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994).  A plaintiff must plead each of these five elements in its complaint, and Plaintiffs' failure to plead that the Teams intentionally induced a breach of contract by the Speedway is fatal to this cause of action.  *See ABN AMRO Mortg. Group, Inc. v. Maximum Mortg., Inc.*, No. 1:04cv492, 2005 U.S. Dist. LEXIS 17612, *50-51 (N.D. Ind. 2005).

Although Plaintiffs use words that sound like this tort, they actually plead only that defendants "intentionally interfered" without pleading that the defendants intentionally induced the Speedway to breach its contract with Plaintiffs.   Indiana law is clear that a tortious interference with contract claim must fail if a plaintiff is not able to demonstrate that defendant intentionally induced a third party to breach its contract with the plaintiff. *Monarch Industrial Towel & Uniform Rental, Inc. v. Model Coverall Service, Inc.*, 381 N.E.2d 1098, 1100 (Ind. Ct. App. 1978) ("element of intentional inducement to breach the contract" described as "essential"). Here, Plaintiffs *have not* even pled that the Teams intentionally induced IMS to breach its contract with the Plaintiffs (¶¶ 89-93) (*See Sound Move Autoplaza, Inc. v. Nissan Motor Co.*, 1989 U.S. Dist. LEXIS 5077, *18-19 (S.D. N.Y. 1989) (granting defendants' motion to dismiss under 12(b)(6); "[a]lthough the complaint is replete with innuendo concerning bad faith and maliciousness on the part of Nissan Japan, these suggestions are not sufficiently pleaded so as to

be understood as alleging the requisite element of intent")) and *cannot plead* breach by the Speedway of a contract for a specific caliber of quality of race.

The Complaint also contradicts and defeats itself in at least two ways. First, the Complaint disproves any alleged inducement by the Teams of breach by the Speedway by pleading that what happened was designed by unspecified "defendants" (presumably including the Teams) *to cause a race to happen* and to assist IMS in making a defense that it had not in fact failed to race. Whether the IMS did or did not fail, the pleading contradictorily alleges that the Teams were not trying to cause IMS to prevent a race and to breach its contract, but to instead live up to its contract. Second, by its allegation that the Teams' participated right up through the formation lap (¶ 36), the Complaint demonstrates that the Teams left open as long as possible the chance for any total solution to be implemented by the track or by the promoters-- including changing the track, or the speed, or some other solution, thereby clearly leaving open every chance for IMS not to breach. This, too, is the opposite of inducing the Speedway to breach its contracts. Plaintiffs' Complaint makes plain that the Teams cannot be described as the inducement to other parties to breach (assuming there was ever, in fact, any breach). The Teams do not control the track shape or the allowable speed. Even if the promoters and the IMS thought about but did not implement changes in those items, and even if that failure is to be considered a breach on their part toward their customers, there still remain no facts in this Complaint to support allegations that the Teams induced any such breach, as they stood waiting for a track change to solve the Michelin safety warning.

More fundamentally, Plaintiffs have failed to allege that the Teams intentionally induced IMS to breach a contract with Plaintiffs that promised any particular level or quality of race— because there was in fact no such contract and no such breach. Plaintiffs' legal errors in Count V

flow from its failure to realize in every count, that a contract right to a seat at the Speedway is entirely different from, and does not include, a supposed right to receive or observe any particular quality level of performance. To the extent the Teams did anything regarding the quality of the performance, any effect was not a breach of the Speedway's contract, and cannot support a claim for inducing a breach by the Speedway. If there was no right to a specific performance level between the fans and the Speedway, then nothing the Teams did could legitimately be described as an intentional inducement of a Speedway breach of *any contract about performance quality.*

### B. The Complaint's Own Pleading Of Justifying Facts Demonstrates Its Inability To Plead The Required Element That The Alleged Interference Lacked Justification.

Plaintiffs make no allegations that the Teams desired harm to come to Plaintiffs. Quite the contrary, the exhibit shows Michelin's warning to the Teams and their justified response. Complaint Ex. A, Michelin Letter of June 18, 2005. The Teams acted so as to ensure that no physical harm would come to them or the fans as a result of the acknowledged problems with the tires. On its face, that safety warning trumps Plaintiffs' conclusory suggestion that the Teams lacked justification. No party--not the stadium, not Formula One, not the Teams, and not anyone else--promised anyone, in any contract, that a safety warning from a tire supplier would be ignored or subordinated to any other consideration. The bald claim that there was no justification for the Teams not running is denied by the Complaint itself. *Jefferson v. Ambroz*, 90 F. 3d 1291, 1296 (7th Cir. 1996) ("If a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck - he has pleaded himself out of court.' ") (*quoting Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994)).

Liability for intentional tortious interference with contract can only be maintained if a plaintiff can show that there was no justification for the defendant's actions. *Winkler* 638 N.E.2d

at 1235; *Helvey v. O'Neill*, 288 N.E.2d 553, 559 (Ind. Ct. App. 1972); *Hi-Tek Consulting Services, Inc. v. Bar-Nahum*, 578 N.E.2d 993, 997 (Ill. App. Ct. 1991) ("Lack of legal justification for the conduct of the defendant is essential in establishing a claim for tortious interference with contractual relations").

In its practical application, the Indiana requirement of justification is no different from the privilege concept developed in other states. Regardless of whether the rule is cast in terms of justification or privilege, the law will not recognize an interference claim when the "defendant acts to protect an interest 'which the law deems to be of equal or greater value than the plaintiff's contractual rights.'" *Williams v. Shell Oil Co.*, 18 F.3d 396, 402-403 (7th Cir. 1994).

> To establish that the defendant's conduct was unjustified, the plaintiff must show conduct "which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." ... Shell has an interest in insuring the health and safety of those working on its premises.... Shell can act to keep an individual ... from exposure ... injurious to his health.

*Id*, citing *H.P.I. Healthcare v. Mt. Vernon Hospital*, 545 N.E.2d 672, 677 (Ill. 1989).

Count V does not articulate an absence of a justification for the Teams' decision not to race. (*See* ¶ 92) Simply put, Plaintiffs' Count V must fail because the Teams' decision not to race was justified, and the Complaint, with its acknowledgement of the safety issues confronting the Teams, provides that justification. *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1234-1235 (Ind. 1994) (finding the facts demonstrated that plaintiffs could not show an absence of justification for defendant's actions); *Blubaugh v. Am. Contract Bridge League*, No. IP 01-358-C, 2004 U.S. Dist. LEXIS 3178, *25-26 (S.D. Ind. 2004) (holding, as to a tortious interference count, that the actions taken by the American Contract Bridge League against a professional bridge player were justified).

The facts as pled by Plaintiffs themselves demonstrate as a matter of law that the Teams were justified in their decision not to race that day. Accordingly, Count V cannot withstand a Rule 12(b)(6) motion.

**C.    Plaintiffs Should Not Be Allowed To Manipulate The Interference Tort To Accomplish The Judicialization Of Fan Disappointment That The Courts Have So Carefully Avoided To Date.**

Courts have prevented fans from claiming direct contracts with players or performers, and from circumventing that rule by pretending that fans are third-party beneficiaries of the direct contracts that do exist between other parties and the competitors. *See, e.g., Castillo,* 701 N.Y.S.2d at 424 (affirming motion court's determination that fight fans' third-party beneficiary claims were "contrived"); *Isbrandtsen Co.* 204 F.2d at 498 (affirming trial court's Rule 12 dismissal of plaintiff's third-party beneficiary claim); *Beder,* 717 N.E.2d at 720-721 (summary judgment properly granted on plaintiff's claim for breach of contract for a particular entertainment value); *Stern,* 1996 Ohio App. LEXIS 5802 at *18 (as a matter of law, team's poor performance did not establish a breach of contract); *Bickett,* 472 N.Y.S.2d at 247-248 (dismissing complaint for failure to state cause of action when it alleged contract damage from fewer games and "diminished quality" of play).

Given the economic loss doctrine which precludes tort recovery for economic loss, and the complete hostility of the courts to finding any contract right for unhappy fans, the same policy reasons counsel against allowing a plaintiff to simply add a declaration that the matter is an intentional tortious interference, and open the floodgates that hold back fan litigation against performers. In multiple cases, the fans were not allowed to claim tortious interference any more than they were allowed to claim a direct contract right. *See Castillo,* 701 N.Y.S.2d at 424 (dismissing plaintiff's tortious interference claim as unpersuasive); *Potechin v. Yasin,* 186 D.L.R.4th 757 (Ont. Sup. Ct. 2000) (Canadian case dismissing season ticket holders' tortious

interference claims against professional hockey player and his agent). The ambiguity of tortious interference should not become a device for back-door creation of the very same tort and contract rights about competitive performance quality, for which the courts have concluded they should provide no redress.

**VI.    LIKE OTHER COURTS FACED WITH ATTEMPTED FAN CLASS ACTIONS, THIS COURT SHOULD PURPOSEFULLY PREVENT THE CREATION OF DIRECT FAN CAUSES OF ACTION AGAINST PERFORMERS AND COMPETITORS, DUE TO CONSIDERATIONS OF JUSTICIABILITY.**

A baseball pitcher owes the fans no duty to throw pitches after his rotator cuff begins to self-destruct. A football player owes the fans no duty to run after his doctor warns of impending knee damage. Holyfield owed boxing fans no duty to keep fighting after Tyson bit his ear. And drivers who are warned that tires may not grip at raceway speeds on a particular curve owe no duty to ignore that advice and jeopardize themselves and the fans. Fundamentally, these issues are not *justiciable*, and justiciability is an entirely appropriate basis for decision. *Baker v. Carr*, 369 U.S. 186, 198 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962); *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988); *Knutson v. Wisconsin Air National Guard*, 995 F.2d 765 (7th Cir. 1993); *STP Corp. v. USAC*, 286 F. Supp. 146, 151 (S.D. Ind. 1986) (declining to decide controversy between auto racing organization and prospective members). A case is justiciable only if it is "one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special filed of competence." *Greene v. McElroy*, 254 F.2d 944, 953 (D.C. Cir. 1958), *rev'd on other grounds*, 360 U.S. 474 (1959).

Deciding the extent to which sports managers, and, *a fortiori*, sporting *competitors* have suitably entertained the fans (or raced when they "should have") is simply not the highest and best use of courts, nor one for which they are well suited. The clear underlying tone of every one of the athletic and entertainer cases previously cited is against using the courts as a substitute for

delivering messages that are better delivered by fans at the box office (through withdrawal of patronage), or by sports writers (in Monday's columns). *See Gilligan v. Morgan*, 413 U.S. 1 (1973) (training, weaponry and orders of National Guard nonjusticiable); *American Federation of Gov't Employees, Local 2017 v. Brown*, 680 F.2d 722, 726 (11th Cir. 1982) (decision to contract out military services); *Thomas v. Review Board*, 450 U.S. 707, 716 (1981) ("courts are not arbiters of scriptural interpretation"); *K.H. v. Morgan*, 914 F.2d 846, 854 (7th Cir. 1990) (non-justiciability of the stability of foster-home environments).

"It is hardly a judicial function to decide whether shoe stores should sell single shoes to one-legged persons and if so at what price, or how many Braille books the Borders or Barnes and Noble bookstore chains should stock in each of their stores." *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999). So, too, it does not help the court system to send it every fan who thinks an auto race was really not a race, or a boxing match was illegitimate, or a baseball game was of diminished quality. Sports and courts have little in common, and the decision of sports promoters, competitors and self-regulatory bodies should rarely if ever be treated as matters for judicial resolution.

## VII. CONCLUSION

There is nothing unique about this case that should prompt the Court to alter the approach taken by Courts that have decided the many fan cases cited herein. Like the plaintiffs in those cases, Plaintiffs here have not, and cannot, allege either a duty or a breach (whether in tort or contract) to support a recognized claim by the fans against performers or competitors. Whether guided by Judge Easterbrook's admonition against litigating the quality of the Cubs, or by an analysis of how easily other entities such as promoters or stadiums could insure against surprise better than players or performers can, or by a uncomplicated economic analysis of whether it is better to encourage drivers to err on the side of avoiding death or to err on the side of avoiding

ticket refunds, the outcome is always the same. This court is not where the court system, or the tort system, should want fan unhappiness to be redressed.

Accordingly, the counts asserted against the Teams should be dismissed with prejudice.

Respectfully submitted,

By: /s/ James J. Dries
Thomas A. Doyle
Matthew G. Allison
BAKER & McKENZIE LLP
One Prudential Plaza
130 E. Randolph Drive
Suite 3500
Chicago, IL 60601
(312) 861-2630 phone
(312) 698-2037 fax
thomas.a.doyle@bakernet.com
james.j.dries@bakernet.com
matthew.g.allison@bakernet.com

James McGinnis Boyers, Esq.
William P. Wooden, Esq.
Wooden & McLaughlin LLP
One Indiana Square
Suite 1800
Indianapolis, IN 46204-2019
Telephone: (317) 639-6151 phone
Facsimile: (317) 639-6444 fax
jboyers@woodmaclaw.com
wwooden@woodmaclaw.com

Attorneys for BMW Williams F1 Team, Panasonic Toyota Racing, Lucky Strike BAR Honda, West McLaren Mercedes, Mile Seven Renault F1 Team, Red Bull Racing and Sauber Petronas

Dated: September 21, 2005

## Certificate of Service

I hereby certify that on this 21st day of September, 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Stephen E. Arthur | sarthur@h-mlaw.com |
| Raymond A. Basile | basile@h-mlaw.com |
| William Bock , III | wb@kgrlaw.com |
| Peter E. Borkon | pborkon@schubert-reed.com, |
| James McGinnis Boyers | jboyers@woodmaclaw.com, |
| Reynolds B. Brissenden | rbb@kgrlaw.com, tjb@kgrlaw.com |
| Lawrence F. Carnevale | carnevale@clm.com, |
| KC Cohen | kc@esoft-legal.com |
| Larry D. Drury | ldrurylaw@aol.com, |
| Robert L. Gauss | gauss@icemiller.com, worth@icemiller.com |
| Jeff S. Gibson | jgibson@cohenandmalad.com |
| Scott D. Gilchrist | sgilchrist@cohenandmalad.com, |
| Steven P. Handler | shandler@mwe.com, |
| Gabriel Adam Hawkins | ghawkins@price-law.com, |
| Peter W. Herzog , III | pwherzog@bryancave.com, |
| James A. Knauer | jak@kgrlaw.com, hns@kgrlaw.com |
| Offer Korin | okorin@katzkorin.com, cwright@katzkorin.com |

| | |
|---|---|
| Irwin B. Levin | ilevin@cohenandmalad.com, ccox@cohenandmalad.com |
| Kurtis Allen Marshall | kam@kgrlaw.com |
| David M. Mattingly | david.mattingly@icemiller.com, |
| | Jeni.Keene@IceMiller.com |
| Curtis W. McCauley | mccauley@icemiller.com, lantz@icemiller.com |
| John K. McDavid | jmcdavid@locke.com, sreynolds@locke.com |
| Shon Morgan | shonmorgan@quinnemanuel.com, |
| Eric S. Pavlack | epavlack@cohenandmalad.com, |
| Stephanie A. Petersmarck | spetersmarck@mwe.com, |
| Henry J. Price | hprice@price-law.com, mdabio@price-law.com; |
| | sbissonnette@price-law.com; jmiller@price-law.com |
| Bernard Lowell Pylitt | bpylitt@katzkorin.com, ckeith@katzkorin.com |
| Hugh E. Reynolds , Jr | hreynolds@locke.com, sdunn@locke.com; |
| | meaton@locke.com |
| Mark James Richards | mark.richards@icemiller.com, |
| James W. Riley , Jr | jriley@rbelaw.com, |
| William N. Riley | wriley@price-law.com, eamos@price-law.com |
| Robert C. Schubert | rschubert@schubert-reed.com, |
| Robert J. Schuckit | rschuckit@schuckitlaw.com, asmith@schuckitlaw.com |
| Richard E. Shevitz | rshevitz@cohenandmalad.com |
| | cmeadows@cohenandmalad.com |
| Bettina J. Strauss | bjstrauss@bryancave.com, |
| A. William Urquhart | billurquhart@quinnemanuel.com, |

| | |
|---|---|
| Dylan A. Vigh | dvighlaw@gmail.com; |
| Scott Watson | scottwatson@quinnemanuel.com, |
| William P. Wooden | wwooden@woodmaclaw.com |
| Sally F. Zweig | szweig@katzkorin.com, jleguellec@katzkorin.com; |
| | bburrows@katzkorin.com; vellis@katzkorin.com |

s/James J. Dries
James J. Dries
Thomas A. Doyle
Matthew G. Allison
BAKER & McKENZIE LLP
One Prudential Plaza
130 E. Randolph Drive
Suite 3500
Chicago, IL 60601
(312) 861-2630 phone
(312) 698-2037 fax
thomas.a.doyle@bakernet.com
james.j.dries@bakernet.com
matthew.g.allison@bakernet.com

James McGinnis Boyers, Esq.
William P. Wooden, Esq.
Wooden & McLaughlin LLP
One Indiana Square
Suite 1800
Indianapolis, IN 46204-2019
Telephone: (317) 639-6151 phone
Facsimile:   (317) 639-6444 fax
jboyers@woodmaclaw.com
wwooden@woodmaclaw.com

Attorneys for BMW Williams F1 Team,
Panasonic Toyota Racing, Lucky Strike
BAR Honda, West McLaren Mercedes,
Mile Seven Renault F1 Team, Red Bull
Racing and Sauber Petronas