# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: 2005 UNITED STATES GRAND PRIX | ) | Master Docket No. |
| PRODUCTS LIABILITY LITIGATION | ) | 1:05-00914-SEB-VSS |

---

## PLAINTIFFS' BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

### [REDACTED PURSUANT TO
### COURT'S PROTECTIVE ORDER DATED OCTOBER 11, 2005]

---

Henry J. Price (#5822-49)
William N. Riley (#14941-49)
Gabriel A. Hawkins (#23449-53)
**PRICE WAICUKAUSKI RILEY & DEBROTA, LLC**
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787
FAX: (317) 633-8797
Email: hprice@price-law.com
Email: wriley@price-law.com
Email: ghawkins@price-law.com

Irwin B. Levin (#8786-49)
Richard E. Shevitz (#12007-49)
Scott Gilchrist (#16729-53)
Jeff S. Gibson (#22362-49)
Eric S. Pavlack (#21773-49)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
sgilchrist@cohenandmalad.com
jgibson@cohenandmalad.com
epavlack@cohenandmalad.com

William Bock, III (#14777-49)
James A. Knauer (#5436-49)
Reynolds B. Brissenden (#19989-49)
Kurtis Allen Marshall (#23667-45)
**KROGER, GARDIS & REGAS, LLP**
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Telephone: (317) 692-9000
Facsimile: (317) 264-6824
wb@kgrlaw.com
jak@kgrlaw.com
rbb@kgrlaw.com
kam@kgrlaw.com

# TABLE OF CONTENTS

Page

Table of Authorities…………………………………………………………………………iii

Statement of the Issues……………………………………………………………………vii

Introduction………………………………………………………………………………..1

Allegations Contained in the Complaint…………………………………………………...1

A.    *Defendants' promotion of a twenty car race*…………………………………………2

B.    *The Michelin tire problem*………………………………………………………………2

C.    *The Defendants failed to provide the Plaintiffs with a race*……………………………4

D.    *Defendants' post-race statements*………………………………………………………4

I.    Standard of Review…………………………………………………………….......5

II.    Actionable Injury………………………………………………………………......7

    A.    *Question of Fact* …………………………………………………………......7
    B.    *The Defendants' Analogies*…………………………………………………11
    C.    *The Defendants' Cited Cases*………………………………………………12

III.    The Exculpatory Clause…………………………………………………………..14

    A.    *Knowingly and willingly*……………………………………………………15
    B.    *Fine Print*………………………………………………………………………16
    C.    *Tortious Interference with Contract*…………………………………………16
    D.    *Negligence*……………………………………………………………………16
    E.    *The Defendants' cited cases*…………………………………………….......17

IV.    Third-Party Beneficiary…………………………………………………......…...19

    A.    *The terms of the Defendants' contracts*…………………………...………..19
    B.    *Intent*…………………………………………………………..…………20
    C.    *The Purpose of the Defendants' Contracts*……………………………20
    D.    *Castillo and Percha*………………………………………………….......21
    E.    *Breach of Warranty*……………………………………………………23

# TABLE OF CONTENTS (cont.)

V.      Promissory Estoppel…………………………………………………..………24

      A.      *Remedy at law*…………………………………………….........24
      B.      *Specific Promise*………………………………………………25
      C.      *After the Fact*…………………………………………………26
      D.      *Puffing*………………………………………………………27

VI.     Negligence…………………………………………………………28

      A.      *The Economic Loss Doctrine*……………………………………28
      B.      *Assumption of Duty*……………………………………………30
      C.      *Sufficiency of the Complaint*……………………………....31

VII.    Tortious Interference with Contract…………………………………....31

      A.      *Existence of a Valid and Enforceable Contract*…………………31
      B.      *The Absence of Justification*……………………………………34
      C.      *The Specificity of Plaintiffs' Complaint*…………………………37
      D.      *Inducement*……………………………………………………38

VIII.   Unjust Enrichment………………………………………………………39

IX.     Damages…………………………………………………………40

      A.      *The self-contradictory nature of IMS' assertion*………………..…40
      B.      *IMS' position is contradicted by case law*………………………41

Conclusion………………………………………………………………..…44

# TABLE OF AUTHORITIES

Page

*Cases*

*A. I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 636 (7th Cir. 2001) ...................................... 32

*All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 870 (7th Cir. 1999). .............................. 28

*Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 704-05 (Ind. Ct. App. 2004) .................. 33

*Babson Bros. Co. v. Tipstar Corp.*, 446 N.E.2d 11, 15 (Ind. Ct. App. 1983) .............................. 49

*Bain v. Bd. of Tr. of Starke Mem'l Hosp.*, 550 N.E.2d 106, 110 (Ind. Ct. App. 1990) ................ 10

*Ballew v. Town of Clarksville*, 683 N.E.2d 636, 639 (Ind. Ct. App. 1997), *trans. denied* ............. 9

*Bamberger & Feibleman v. Indianapolis Power & Light Co.*,
   665 N.E.2d 933, 938 (Ind. Ct. App. 1996). .............................................................................. 33

*Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002). ........................ 7

*Beaver v. Grand Prix Karting Ass'n, Inc.*, 246 F.3d 905, 909-10 (7th Cir. 2001) ....................... 17

*Beder v. Cleveland Browns, Inc.*, 129 Ohio App.3d. 188, 717 N.E.2d 716, 721 (1998); ............. 14

*Bedford Recycling, Inc. v. U.S. Granules, Corp.*,
   634 N.E.2d 1361, 1365 n.8 (Ind. Ct. App. 1994) ..................................................................... 26

*Berkel & Co. Contractors, Inc. v. Palm & Assoc., Inc.*,
   814 N.E.2d 649, 659 (Ind. Ct. App. 2004) ............................................................................... 49

*Bickett v. Buffalo Bills, Inc.*, 122 Misc. 2d 880, 472 N.Y.S.2d 245 (N.Y. Sup. 1983). ............... 13

*Biddle v. BAA Indianapolis, LLC*, 830 N.E.2d 76, 86 (Ind. Ct. App. 2005)
   (citing *Kirtley v. McCelland*, 562 N.E.2d 27, 37 (Ind. Ct. App. 1990), *trans. denied*) ...... 21, 23

*Bilimoria Comp. Sys. LLC. v. Am. Online, Inc.*,
   829 N.E.2d 150 (Ind. Ct. App. 2005), *trans. pending* ............................................................. 41

*Bldg. Materials Mfg. Corp. v. T&B Structural Sys., Inc.*,
   804 N.E.2d 277, 282 (Ind. Ct. App. 2004) ............................................................................... 34

*Bosewell v. Barnum & Bailey* .......................................................................................................... 36

*Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001)
   (citing 31 C.J.S. Estoppel and Waiver § 2 (1996) .................................................................. 27

*Brumfield v. State ex rel. Wallance*, 206 Ind. 647, 190 N.E.2d 863, 868 (1934) ........................ 10

*Burns v. Odeon*, 1996 WL 501742 (N.D. Ill. 1996) ...................................................... 36

*Castillo v. Tyson*, 268 A.D.2d 336, 701 N.Y.S.2d 423 (N.Y. App. Div. 2000) .................... 14, 24

*Charpentier v. Los Angeles Rams Football Co., Inc.*,
    89 Cal.Rptr.2d 115, 188 (Cal. App. 2000) ................................................................ 14

*City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.*, 2005 WL 2278123 *1 (S.D. Ind ........... 44

*Coca-Cola Co. v. Babyback's Int'l., Inc*,
    806 N.E.2d 37, 50. (Ind. Ct. App. 2004), *trans. granted* ........................................... 42

*Coleman v. Vukovich*, 825 N.E.2d 397, 404 (Ind. Ct. App. 2005), *trans. pending* ..................... 41

*Collister v. Hayman*, 183 N.Y. 250, 76 N.E.2d 20 (1905) ............................................. 36

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ........................................................... 6

*Dawson v. Hummer*, 649 N.E.2d 653, 660 (Ind. Ct. App. 1995)
    (citing *Gen. Bargain Ctr. v. Am. Alarm Co.*, 430 N.E.2d 407, 411 (Ind. Ct. App. 1982)); ...... 17

*De La Ysla v. Publix Theatres Corp.*, 26 P.2d 818, 820 (Utah 1933)
    (citing C.J.S. 859, § 36 et. seq) ....................................................................... 38, 50

*De Riesux v. Five Smiths, Inc.*, 499 F.2d 1321, 1334 (Em. App. 1974 ................................. 37

*Depez v. Brewer*, 1995 WL 547094 *2 (Tex. App.)
    (citing *Pool v. Rodriquez*, 182 S.W.2d 824, 826 (Tex. Civ. App. 1944)); ........................ 37, 50

*Eckart v. Davis*, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994) ........................................... 8

*Feldt v. Marriott Corp.*, 322 A.2d 913, 916 n.13 (D.C. 1974)
    (citing *Garifine v. Manmouth Park Jockey Club*, 29 N.J. 47 (1959)) .............................. 37

*First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991)). ...... 27

*Fisherman's Wharf Bay Cruise Corp. v. Sup. Ct. of San Francisco*,
    114 Cal. App. 4th 209, 340 (2004) ...................................................................... 36

*Forsythe Racing, Inc. v. Player's Co., Inc.*, 2005 WL 2218365 *3 (S.D. Ind.)
    (citing *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.*,
    161 F. Supp.2d 948, 950-51 (S.D. Ind. 2001)). ....................................................... 6

*Griffin v. Southland Racing Corp.*, 236 Ark. 872, 370 S.W.2d 429 (1963) ............................ 37

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) .................................................... 7

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)............................................................ 6, 23, 29

*Holloway v. Bob Evans Farms, Inc.*,
   695 N.E.2d 991, 995-96 (Ind. Ct. App. 1998)
   (citing *Nat'l. Bd. of Examiners for Osteopathic Physicians & Surgeons, Inc.*
   *v. Am. Osteopathic Ass'n.*, 645 N.E.2d 608, 618 (Ind. Ct. App. 1994)).................................. 22

*Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 740 (7th Cir. 1999)
   (citing *Downs v. Panhandle E. Pipeline Co.*,
   694 N.E.2d 1198, 1202 (Ind. Ct. App. 1998), *trans. denied*................................................... 34

*Honeycutt v. Tour Carriage, Inc.*, 997 F. Supp. 694, 700 (W.D.N.C. 1996) .............................. 19

*Horney v. Nixon*, 213 Pa. 20 (1905); *W.V. Co. v. Black*, 113 Va. 728 (1911)............................. 36

*Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 954-55 (Ind. 2005)................................... 26

*INS Investigations Bureau v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003), *trans. denied*...... 28

*Irving v. Ort*, 146 N.E.2d 107, 110 (Ind. Ct. App. 1957), *trans denied*........................................ 48

*J.W.P. Zack, Inc. v. Hoosier Energy Rural Elec. Co-op*,
   709 N.E.2d 336, 341 (Ind. Ct. App. 1999)................................................................................ 8

*Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995)
   (citing Fed. R. Civ. Procedure 8(a)(2));..................................................................................... 6

*Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So.2d 626, 630 (Fla. Ct. App. 1988)
   (citing *Burnham v. Flynn*, 189 N.Y. 180, 82 N.E. 169 (1907))................................................ 37

*Jordan v. Concho Theatres*, 160 S.W.2d 275, 276 (Tex. Civ. App. 1941) ............................ 38, 50

*Kennedy Theatres Ticket Serv. v. Ticketron, Inc.*, 342 F.Supp. 922, 925 (D.C. Pa. 1972)........... 37

*Kinko's Graphics Corp. v. Townsend*, 803 F. Supp. 1450, 1456 (S.D. Ind. 1992)
   (citing *Holloway v. Giganti, Inc.*, 540 N.E.2d 97, 99 (Ind. Ct. App. 1989)) ............................. 8

*KK, LLC, & WR Kelso Co., Inc. v. U.S. Aviation Underwriters, Inc.*,
   2005 WL 1115864 *5 (S.D. Ind.)
   (citing *Clark v. Donahue*, 885 F. Supp. 1159, 1163 (S.D. Ind. 1995) ..................................... 18

*Luhnow v. Horn*, 760 N.E.2d 621, 627 (Ind. Ct. App. 2001) ..................................................... 24

*Marrone v. Washington Jockey Club of Dist. of Columbia*, 227 U.S. 636 (1913) ...................... 38

*Mee v. Hubbard*, 2003 WL 22571715 * 6 n.5 (D. Md); ............................................................ 37

*Messner v. Detroit, B.I.&W. Ferry Co.*, 154 Mich. 545, 118 N.W. 14 (1908); ........................... 36

*Miley v. Fleetwood Enter., Inc.*, 381 F. Supp.2d 839, 841 (S.D. Ind. 2005) ................................. 7

*Morgan Asset Holding Co. v. CoBank*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000)
    (citing *Flintridge v. Station Ass'n of Am. Fletcher Mortgage Co.*,
    761 F.2d 434, 441 (7th Cir. 1985 ......................................................................... 41

*Paniaguas v. Aldon Co., Inc.*, 2005 WL 1983859 *3 (N.D. Ind.)
    (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*,
    40 F.3d 247, 251 (7th Cir. 1994), *cert. denied*, 516 U.S. 1159). ................................. 6

*Paper Mfrs. Co. v. Rescuers Inc.,* 60 F. Supp.2d 869, 883 (N.D. Ind. 1999). ............................... 9

*Park State Bank v. Akers*, 659 N.E.2d 1031, 1034-35 (Ind. 1995). ............................................. 48

*Pelak v. Ind. Indus. Serv., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005)
    (citing *Kincaide v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002)). ......................... 31

*Percha v. Detroit Lions, Inc.*, 2003 WL 23018757 * 1 ......................................................... 39

*Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.*,
    694 N.E.2d 757, 761 (Ind. Ct. App. 1998) ............................................................... 18

*R.S. Bennett & Co., Inc. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182, 186 (7th Cir. 1979) ............. 30

*Romeo v. Pittsburg Assoc.*, 787 A.2d 1027, 1032 (Pa. Super. Ct. 2001) ..................................... 19

*Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572 (Ind. Ct. App. 1993 ............................................. 32

*Seko Air Freight, Inc. v. Transworld Sys., Inc.,* 22 F.3d 773, 774 (7th Cir. 1994), ..................... 15

*Shubert v. Nixon Amusement Co.*, 83 A. 369, 369 (N.J. 1912) ............................................. 38, 50

*Silky v. Inv. Diversified Serv., Inc.*, 690 N.E.2d 329, 334 n.5 (Ind. Ct. App. 1997) ..................... 9

*Solderholm v. Chi. Nat'l League Ball Club*, 225 Ill.
    App.3d 121, 125, 587 N.E.2d 517, 520 (1992) ....................................................... 19

*State v. Cobb*, 136 S.E.2d 674, 677 (N.C. 1964)
    (citing *Griffin v. Southland Racing Corp.*, 236 Ark. 872, 370 S.W.2d 429 (1963) ................ 38

*Stern v. Cleveland Browns, Inc.*, 1996 WL 761163 *6 (Ohio App. 11 Dist. 1996). ..................... 14

*Strauss v. Long Island Sports Inc. d/b/a New York Nets*,
    60 A.D.2d 501, 511, 401 N.Y.S.2d 233 (N.Y. App. Div. 1978) ....................................... 15

*Sweeney v. United Artist Theatre Circuit, Inc.*, 2005 WL 550344 *2, 3 (Col. App. 2005).......... 39

*Sys. Auto Parks & Garages, Inc.*, 411 N.E.2d 163, 165 (Ind. Ct. App. 1980) ............................ 17

*Terrell Wells Swimming Pool v. Rodriquez*, 182 S.W.2d 824, 826 (Tex. Civ. App. 1944) ........ 38

*Tippman v. Hensler*, 716 N.E.2d 372, 380 (Ind. 1999)................................................................ 18

*Town of New Ross v. Ferretti*, 815 N.E.2d 162, 168 (Ind. Ct. App. 2004)................................. 28

*Trail v. Boys & Girls Club of Northwest Ind.*,
   811 N.E.2d 830, 839 (Ind. Ct. App. 2004), *trans. granted*...................................................... 41

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 981 (7th Cir. 2004) ................ 12

*Vogel v. Saenger Theatres*, 22 So.2d 189, 190 (La. 1945)
   (citing *Russo v. Orpeum Theatres & Realty Co.*, 136 La. 24, 66 So. 385 (1914 ............... 37, 50

*Washington Nat. Arena v. Comptroller of Treasury*,
   1984 WL 2884 (Md. Tax. 1984); 30A *C.J.S.* Entm. & Amusement § 50 ............................... 39

*Weaver v. Am. Oil Co.*, 257 Ind. 458, 464, 276 N.E.2d 144, 148 (1971) ..................................... 17

*White v. Local Union No. 1111 UAW*, 2005 WL 280349 *12 (S.D. Ind.)
   (citing *Winkler*, 638 N.E.2d at 1235).................................................................................... 42

*Wiese-GMC, Inc. v. Wells*, 626 N.E.2d 595, 597 (Ind. Ct. App. 1993), *trans. denied* ................ 48

*Winkler v. V.G. & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994)
   (citing *Daily v. Nau*, 167 Ind. App. 541, 549 n.6, 339 N.E.2d 71, 76 n.6 (1975)). .................. 35

*Winkler v. V.G. & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993), *trans. granted* ...... 40

*Yates v. Chi. Nat'l League Ball Club*,
   230 Ill. App.3d 472, 487, 595 N.E.2d 570, 581 (Ill. Ct. App. 1992)................................. 18, 21

*Zemic Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 822 (7th Cir. 1999) ................ 42

*Ziskis v. Kowalski*, 726 F.Supp. 912, 908 (D. Conn. 1989)........................................................ 38

**Statement of the Issues**

I.      Whether the Plaintiffs have asserted as one theory of recovery objectively verifiable contractual rights rather than the deprivation of "subjective expectations?"

II.     Whether a contractual exculpatory clause may be invoked against a person who had no knowledge of the exculpatory clause at the time of the perfection of the contract and therefore has not consented to it?

III.    Whether a third-party beneficiary claim inherently involves questions of fact not properly resolved in a motion to dismiss?

IV.    Whether the Plaintiffs' alleged a proper basis for their promissory estoppel claim?

V.     Whether the economic loss doctrine bars tort recovery for economic damages deriving from negligent behavior or is limited in Indiana to products liability?

VI.    Whether there is a valid and enforceable contract based upon the ticket and oral representations made by the Defendants upon which the Plaintiffs may base their tortious interference with contract claim?

VII.   Whether the Plaintiffs may plead equitable and legal theories of recovery in the alternative?

VIII.  Whether the Plaintiffs' damages are legally limited to the purchase price of the 2005 USGP tickets or may include other foreseeable consequential damages?

**Introduction**

On August 18, 2005, the Plaintiffs submitted their Second Amended Class Action Complaint ("Complaint"). On September 19, 2005, the Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(B)(6) and submitted six memoranda of law totaling ninety-four pages in support thereof. The Plaintiffs now submit this Memorandum of Law in opposition to the Defendants' Motion to Dismiss.

The Defendants assert the Plaintiffs may not base their recovery upon "subjective expectations." However, the Complaint is founded upon the deprivation of objectively verifiable contractual rights—i.e. (1) "a race," (2) a race wherein the Defendants complied with their own rules and contractual provisions, and (3) a race wherein substantially more than six cars participated. As such, the Defendants do not address the objectively verifiable allegations set forth by the Plaintiffs much less present a reason for dismissing the Complaint. For this reason and the liberal pleading requirements of the Federal Rules of Civil Procedure, the Complaint alleges actionable injuries and the Defendants' Motions to Dismiss must be denied.

**Allegations Contained in the Complaint**[1]

Because the standard of review for a motion to dismiss accepts as true the allegations contained in a complaint and all inferences favoring the plaintiff that can be drawn therefrom, the Plaintiffs set forth the following allegations that are contained within the Complaint.

On June 19, 2005, some 100,000 people came from throughout the United States and the world to the Indianapolis Motor Speedway ("IMS") expecting to attend the 2005 United States Grand Prix ("USGP"), an open-wheel race among twenty professional drivers of the Formula One Racing League. Compl., ¶ 1. These patrons purchased or otherwise obtained tickets to the

---

[1] As additional background, should the Court find useful, the Plaintiffs have attached as Appendix I a more detailed statement of the factual circumstances surrounding the 2005 USGP as conveyed by the Defendants' own statements.

2005 USGP at an average price of approximately $100 per ticket, producing millions of dollars in revenue.  *Id.*  Compl., ¶ 37.  Many suites were also rented by the patrons at a cost of thousands of dollars per suite.  *Id.*  The 2005 USGP patrons expended large sums of money to attend an event that did not occur because of the Defendants' acts.  Compl., ¶ 38.

A.  *Defendants' promotion of a twenty car race*

The Defendants extensively promoted the 2005 USGP as a Regulation Formula One Championship Series Race among ten teams with twenty cars and drivers.  Compl., ¶ 30.  No prior USGP or other Formula One race had only three teams and six cars participating.  *Id.*  The Plaintiffs would not have come from throughout the United States and the world to attend the 2005 USGP if they had been told only three teams and six cars would be participating.  *Id.*  The Defendants actively and continuously promoted the 2005 USGP as the only Formula One Race within the United States.  Compl., ¶ 31.

B.  *The Michelin tire problem*

By the first day of practice for the 2005 USGP, on June 17, 2005, it became apparent that there were problems with Michelin tires used by the Formula One racing teams.  Compl., ¶¶ 2, 32.  The problems with these tires were highlighted and reported by racing media after a popular Formula One driver, Ralf Schumacher, experienced a crash during the Friday practice session.  Compl., ¶ 32.

As a result of its tire problem, Michelin representatives sent a June 18, 2005 letter to Charlie Whiting, FIA Race Director and Safety Delegate.   Compl., ¶ 39.  In this letter, Michelin's representatives notified Whiting that Michelin had "informed its partner teams that [it

does] not have total assurance that all tyres that qualified the cars can be used unless the vehicle speed in turn 13 can be reduced." *Id.*[2]

On June 19, 2005, an FIA-authorized representative responded in writing to Michelin's letter. Compl., ¶ 40. This response: (i) acknowledged the tire problem; (ii) rejected categorically any consideration of Michelin's proposed remedies to the problem; and (iii) attempted to deflect responsibility for the problem and any effect it may have on the 2005 USGP. *Id.*[3]

Despite the evident problem with the Michelin tires, Defendants continued right up until the running of the formation lap to state publicly that the tire problem would be resolved and a full compliment of twenty drivers would be racing on Sunday. Compl., ¶¶ 2, 33. For example, on the day before the 2005 USGP and after qualifications concluded, when asked whether he expected a full grid of twenty cars to start the race, Formula One Executive Bernie Ecclestone replied "Absolutely. I am 100% sure it will happen." Compl., ¶¶ 2, 34. On the day of the race itself, the Defendants repeated this representation by publishing a starting grid of twenty cars and issuing repeated statements on the IMS public address system. Compl., ¶¶ 2, 35.

Over the course of several hours prior to the race, negotiations took place among the Defendants to resolve the Michelin tire problem. Compl., ¶ 41. Several proposals were discussed as a means of permitting the 2005 USGP to go forward, but no agreement was reached because the FIA and Ferrari, which uses Bridgestone tires, refused to agree to any solutions acceptable to the other teams. Compl., ¶¶ 43, 44. As a result of these negotiations, an understanding was reached by the Defendants prior to commencement of the "race" that the Michelin Teams would participate in the formation lap and then exit the circuit prior to the start of the race. Compl., ¶ 44.

---

[2] A copy of this letter is attached hereto as Exhibit "A."
[3] A copy of this letter is attached hereto as Exhibit "B."

C. *The Defendants failed to provide the Plaintiffs with a race*

Although twenty drivers entered the circuit and participated in a "formation lap," fourteen of the drivers, immediately before the official start of the race and without notice to the fans, left the circuit and parked their cars in their respective garages. Compl., ¶¶ 3, 36, 46, 47. Only six cars appeared for the starting grid and participated in the 2005 USGP. *Id.*

Clearly, this was not the race the Defendants had promised. Indeed, it was not a Regulation Formula One Championship Series "race" at all under the Defendants' own applicable rules or contracts. Compl., ¶ 3.



In addition to these obligations, the International Sporting Regulations confirm that a race must include substantially more than six cars. These rules provide points to the first eight cars in a particular race and set forth potential sanctions that contemplate at least a twelve-car race.

D. *Defendants' post-race statements*

By the Defendants' own admissions, the approximately 100,000 patrons who attended the 2005 USGP were "cheated" and "victimized." *Id.* Many of the Defendants' statements

following the 2005 USGP, summarized as follows, demonstrate what is obvious—that the June 19, 2005 fiasco at IMS was not a race by any objective measure:

- On June 19, 2005, Bernie Ecclestone, representative of FOA, admitted the lack of a race was a travesty and the approximately 100,000 class members had been cheated by the failure to provide the race as promised. Compl., ¶ 52.

- On June 19, 2005, Paul Stoddard told ITV: "Nine teams agreed not to race today unless there was a chicane added to allow the Michelin teams to run." "The most important thing today is that a race should have gone ahead, but this in not a race, this is a farce." Compl., ¶ 53

- Following the 2005 USGP, Max Mosley ("Mosley"), President of FIA stated: "Michelin should offer to compensate the fans on a fair basis and ask [IMS] to coordinate this. What happened was bad, but it can be put right" and "[m]orally, there is no question in my mind, they deprived they fans of something. They owe the fans money and they owe the fans something for wasted time." Compl., ¶¶ 54, 55.

- On June 24, 2005, Ferrari president Luca de Montezemolo was quoted as saying, "the most damaged party was without a doubt the public, but Formula 1 had one of [its] darkest moments." Compl., ¶ 56.

- Bernie Ecclestone publicly apologized to the fans who attended the event. Ecclestone stated "I feel sorry for them," and, referring to the patrons, admitted: "Quite frankly … the fans got cheated." Compl., ¶ 59.

- IMS President Tony George stated, IMS "shares in the disappointment with the loyal fans of IMS and Formula One that we did not see the exciting race we all anticipated due to circumstances beyond our control." Compl., ¶ 60.

- Joie Chitwood, IMS's Chief Operating Officer admitted the Plaintiffs were victimized, stating "[w]e feel as victimized as the fans." Compl., ¶ 61.

Based upon these allegations, the Plaintiffs claim the Defendants are liable for direct breach of contract, and breach of contracts to which the Plaintiffs were third-party beneficiaries, promissory estoppel, negligence, tortious interference with contract, and unjust enrichment.

## I. Standard of Review

As stated by this Court, "a dismissal under Rule 12(B)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Forsythe Racing, Inc. v. Player's Co., Inc.*, 2005

WL 2218365 *3 (S.D. Ind.) (citing *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, 161 F. Supp 948, 950-51 (S.D. Ind. 2001)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

"After the Federal Rules of Civil Procedure were adopted in 1938, parties no longer [are required] to plead facts that, if true, would establish each element of a cause of action." *Paniaguas v. Aldon Co., Inc.*, 2005 WL 1983859 *3 (N.D. Ind.) (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), *cert. denied*, 516 U.S. 1159). Accordingly, a plaintiff bringing a suit in federal court may rely upon "conclusions" and need not plead facts. *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) (citing Fed. R. Civ. Procedure 8(a)(2)); *see also Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)).

Rather than requiring a plaintiff to plead specific facts, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Paniaguas*, 2005 WL 1983859 *3. "[I]f any set of facts, even hypothesized facts, could be proven consistent with the complaint, then the complaint must not be dismissed." *Miley v. Fleetwood Enter., Inc.*, 381 F. Supp.2d 839, 841 (S.D. Ind. 2005). "All that need be specified [in a complaint] is the bare minimum facts necessary to put the defendant on notice of the claim." *Higgs*, 286 F.3d at 439 (citing *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)).

## II. Actionable Injury

The Defendants assert the Plaintiffs are precluded from recovering under any cause of action because the failure to fulfill a patron's "subjective expectations" concerning a sporting event does not give rise to a viable claim.[5]

The Defendants are correct in their assertion that the Plaintiffs may not premise their recovery upon subjective expectations. As indicated by this Court, a party's subjective contractual expectation is irrelevant and the extent of contractual duty is determined by how a reasonable person would interpret the parties' physically-manifested representations. *Kinko's Graphics Corp. v. Townsend*, 803 F. Supp. 1450, 1456 (S.D. Ind. 1992) (citing *Holloway v. Giganti, Inc.*, 540 N.E.2d 97, 99 (Ind. Ct. App. 1989)).

However, the Defendants' argument is misplaced as the Plaintiffs are not basing their recovery upon "subjective expectations." Rather, the Plaintiffs assert they expected the Defendants to abide by their own rules, contracts, and representations concerning the presentation of a regulation race with substantially more than six cars participating. Such expectations are objectively verifiable and reasonable. Accordingly, the Defendants' arguments relying upon subjectivity have no application to the case at bar.

### A. Question of Fact

When contractual representations are contained in an unambiguous writing, the determination of rights conferred thereunder constitutes a question of law. *Eckart v. Davis*, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). However, in the presence of conflicting inferences, the

---

[5] *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 5 ("spectator's subjective opinion that the quality of the event was less than hoped or expected simply is not actionable."); *Federation Internationale De L' Automobile Mem. in Supp. of Mot. to Dismiss* at 3 (adopting Michelin's argument); *Ferrari S.p.A. Mem. in Supp. of Mot. to Dismiss* at 6-7 ("a spectator's subjective opinion that the quality of the event was less than hoped or expected simply is not actionable."); *Formula One Admin. and Formula One Mgmt. Mem. in Supp. of Mot. to Dismiss* at 4 (adopting Michelin's argument); *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 2 ("Plaintiffs' subjective intent as to what kind of race would satisfy them cannot support a claim for breach of contract.")

determination of rights arising under a contract constitutes a question of fact. *J.W.P. Zack, Inc. v. Hoosier Energy Rural Elec. Co-op*, 709 N.E.2d 336, 341 (Ind. Ct. App. 1999).

In *J.W.P.*, the Indiana Court of Appeals was confronted with a dispute over the duties arising under a limitation of liability contract. *Id.* at 338-40. Although the four-corners of the agreement at issue were in the record, the court denied summary judgment because "where there remain conflicting inferences which may be drawn from the facts, it is for the trier of fact to resolve any doubts, even though they may be slight." *Id.*

A fact finding is also required when the terms of a contact are not reduced to a writing. *Ballew v. Town of Clarksville*, 683 N.E.2d 636, 639 (Ind. Ct. App. 1997), *trans. denied.* In *Ballew*, the Indiana Court of Appeals was confronted with the question of whether a contractual agreement allowed for tax abatement. *Id.* at 640. *Ballew* concluded that, because there was conflicting evidence as to the terms of the oral contract, this issue presented a question of fact. *Id.* at 639-40. In so holding, *Ballew* stated, "the terms of a contract not reduced to a writing are a matter to be interpreted by the trier of fact." *Id; see also Silky v. Inv. Diversified Serv., Inc.*, 690 N.E.2d 329, 334 n.5 (Ind. Ct. App. 1997); *Paper Mfrs. Co. v. Rescuers Inc.,* 60 F. Supp.2d 869, 883 (N.D. Ind. 1999).

The Plaintiffs assert the terms of their contract (1) were partially derived from oral representations and (2) provided for a race with substantially more than six cars. *See Sec. Am. Compl.* ¶¶ 1, 30, 72 ("[Defendants had aggressively promoted as a race comprised of twenty world-class drivers"), ("The Race . . . was extensively promoted as a Regulation Formula One Championship Series Race among ten teams with twenty cars and drivers.") ("The verbal commitments as to the presentation of a regulation Formula One Race formed a contract with the Class."). Accordingly, even if the Defendants assert the contract arising from the 2005 USGP

did not provide for a race with more than six cars, the Plaintiffs' assertion to the contrary raises conflicting inferences and renders dismissal improper as a matter of law.

The Plaintiffs also reference the Defendants' past dealings and partial performance. *Sec. Am. Compl.* ¶¶ 30, 36. These allegations may be used by the Plaintiffs to demonstrate the Plaintiffs contracted for a race with substantially more than six cars. *See Bain v. Bd. of Tr. of Starke Mem'l Hosp.*, 550 N.E.2d 106, 110 (Ind. Ct. App. 1990) (the cardinal rule of contractual interpretation is to determine intent from the parties' past performance); *see also Brumfield v. State ex rel. Wallance*, 206 Ind. 647, 190 N.E.2d 863, 868 (1934) (courts may use partial performance to determine contractual duty).

The Plaintiffs also assert the Defendants failed to fulfill their contractual representations by not observing their own rules.[6] *See Sec. Am. Compl.* ¶ 3. Rule 54(c) of the 2005 Formula One Sporting Regulations ("FOS Regs") provides that, for certain infractions, teams will be penalized ten grid positions. In order for Rule 54(c) to be applicable, it is necessary for a race to consist of at least eleven drivers. Other rules indicate a Plaintiff would reasonably expect the 2005 USPG to consist of substantially more than six cars. Rule 17 of the FOS Regs states, "[a]n event may be cancelled if fewer than 12 cars are available," and Rule 21 provides points for the top eight finishers of a given race.

The Plaintiffs finally assert the Defendants' contracts amongst themselves emphasize the importance of providing substantially more than six cars in order to comply with their representations.



---

[6] The FIA Regulations are attached hereto as exhibit D.

9



The Plaintiffs have stated a viable cause of action because the Plaintiffs' allegations speak to an objectively verifiable injury, must be treated as true, and create questions of fact. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 981 (7th Cir. 2004) ("dismissal is only appropriate when there is no possible interpretation of the complaint under which it can state a claim.").

B. *The Defendants' Analogies*

The Defendants attempt to establish the propriety of their conduct by analogizing the 2005 USGP to other scenarios. However, the failure of these analogies demonstrates that the 2005 USGP was not simply a "disappointing performance" but, rather, a deprivation of an objectively verifiable contractual right.

For instance, Michelin states, "[d]isappointment in the quality of the race is not actionable . . . any more than if the race spectators experienced 'disappointment' because they witnessed the event in pouring rain or because the vendors had run out of beer or hamburgers." *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 3. No reasonable patron would believe the Defendants' solicitations constituted a representation that the 2005 USGP would be held in ideal weather or that concessions would not run out. Moreover, unlike the contractual expectation of a twenty-car race, the Plaintiffs were not promised ample beer or hamburgers.

Michelin's analogy to a catastrophic accident reducing the racing field to six cars is similarly inapposite. *See Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 3. A reasonable patron would understand that an accident reducing the number of cars is a risk incident to the 2005 USGP. The same can be said of Michelin's notation of "disqualification resulting from an

intentional act." *Id.* at 5. A reasonable patron understands participant disqualification is a risk incident to attending a sporting event.

Michelin is, however, correct in stating, "[c]ommon sense requires we not forget what we know about sports simply because we have entered a courtroom." *Id.* at 6. "Common sense" leads one to conclude that, if the Defendants induce patrons to expend considerable resources to travel around the world to witness a race consisting of twenty world-class drivers, the Defendants are expected to use reasonable efforts to fulfill their promise.

Ferrari's analogies are similarly unconvincing. Ferrari alleges the Plaintiffs' claim is "akin to an allegation that a plaintiff's favorite player did not play." *Ferrari S.p.A. Mem. in Supp. of Mot. to Dismiss.* at 10. The Plaintiffs are not claiming they were disappointed because they did not see their favorite driver; the Plaintiffs are claiming they did not see a race.

To use an analogy of our own, the 2005 USGP is not analogous to a circumstance wherein someone attends a rendition of *Hamlet* and is disappointed when the star of the play is replaced by a less-talented understudy due to laryngitis. Rather, the 2005 USGP is analogous to a circumstance wherein someone spends considerable resources to attend a well-publicized rendition of *Hamlet* and seven tenths of the plays' cast unreasonably refuse to participate, no one plays Hamlet, and awkward silence replaces Shakespeare's epic lines.

C. *The Defendants' Cited Cases*

Ferrari—in asserting there is no way to measure the quality of the 2005 USGP—states, "diminished quality lies in the eye of the beholder." *Ferrari S.p.A. Mem. in Supp. of Mot. to Dismiss* at 9 (quoting *Bickett v. Buffalo Bills, Inc.*, 122 Misc. 2d 880, 472 N.Y.S.2d 245 (N.Y. Sup. 1983)). Although diminished "quality" may lie in the "eye of the beholder," the objectively verifiable contractual obligations which bind the Defendants lie in the mouth of the solicitor, the text of the FIA Regulations, and the Defendants' contracts.

Because the Plaintiffs assert objectively verifiable promises—i.e., whether there were more than six cars in the 2005 USGP, whether the Defendants complied with their own rules, and whether the 2005 USGP constituted a race—the Defendants' cited cases discussing subjective expectations are inapposite. *See Bickett*, 472 N.Y.S.2d at 248; *see also Charpentier v. Los Angeles Rams Football Co., Inc.*, 89 Cal.Rptr.2d 115, 188 (Cal. App. 2000); *Beder v. Cleveland Browns, Inc.*, 129 Ohio App.3d. 188, 717 N.E.2d 716, 721 (1998); *Stern v. Cleveland Browns, Inc.*, 1996 WL 761163 *6 (Ohio App. 11 Dist. 1996). The Plaintiffs' claims are objectively verifiable, and the above-cited cases discussing subjective expectations are inapplicable to the Plaintiffs' objectively verifiable claims.

The Defendants' cited case of *Castillo v. Tyson*, 268 A.D.2d 336, 701 N.Y.S.2d 423 (N.Y. App. Div. 2000), is also implausible. *Castillo* states:

> Nothing in these contracts can be understood as promising a fight that did not end in a disqualification. The rules of the governing commission provide for disqualification, and it is a possibility that a fight fan can reasonably expect.

268 A.D.2d at 237, 701 N.Y.S.2d at 423. Not only have the Defendants failed to assert a rule that renders the Plaintiffs' expectations unreasonable—as was done in *Castillo*—but the Plaintiffs assert the Defendants' own rules required more than six cars to constitute a race. This distinction completely undercuts the rationale of *Castillo*.

The Defendants' cited case of *Strauss v. Long Island Sports Inc. d/b/a New York Nets*, 60 A.D.2d 501, 511, 401 N.Y.S.2d 233 (N.Y. App. Div. 1978), is also distinguishable. *Strauss* determined that the "age of team-jumping ball players and renegotiated athletic contracts" made it unreasonable for a sporting fan to expect a player would not be traded. *Id.* It is far from apparent what aspect of Formula One racing renders unreasonable a patron's expectation that the Defendants would abide by their own rules and honor their representations.

Finally, the Defendants' cited case of *Seko Air Freight, Inc. v. Transworld Sys., Inc.,* 22 F.3d 773, 774 (7th Cir. 1994), is simply not on point with the issue at bar. *Seko* concerned a termination clause in a debt collection agreement wherein the third-party debt collector refused to refund an amount given for the right to collect certain debts. *Id.* *Seko* did not concern expectations arising from a sporting event. In dicta, *Seko* stated,

> That the Chicago Cubs turn out to be the doormat of the National League would not entitle the ticket holder to a refund for the remaining games, any more than the star tenor's laryngitis entitles the opera goer to a refund when the understudy takes over the role. *In each case, however, the ticket holder has the same right to "terminate" Seko enjoyed.*

*Id.* (emphasis added). Tellingly, Michelin's Memorandum omits the italicized portion of this quote. *Michelin Mem. in Supp. of Mot. to Dismiss* at 8. The portion of Judge Easterbrook's quote omitted by Michelin assumes mutuality, which does not exist in the case at bar. The IMS ticket specifically indicates there will be no refunds. Moreover, it is not the poor performance of the teams upon which the Plaintiffs rely; the Plaintiffs are claiming *non-performance.*

Because the Plaintiffs rely upon objectively verifiable representations, the determination of contractual duty in an informal contract constitutes a question of fact, and the Defendants have failed to demonstrate why the Plaintiffs' expectations are unreasonable, the Defendants' Motions to Dismiss must be denied.[9]

### III. The Exculpatory Clause

Michelin asks this Court to become the first court in the United States to hold that an exculpatory clause may be invoked against a party who was not presented with the clause until

---

[9] The Defendants attempt to frighten the Court with the specter that allowing the Plaintiffs to produce evidence in support of their allegations would open the floodgates of litigation to any fan seeking to sue based upon a disappointing sporting performance. The fact that the Plaintiffs are basing their recovery upon objectively verifiable contractual expectations that a reasonable person would believe were promised to them negates any such concerns.

after the underlying contract was perfected.[10]   However, Indiana law requires a party to "knowingly and willingly" assent to an exculpatory clause before the clause may be invoked against the party.  The exculpatory clause in the case at bar was printed on the back of the 2005 USGP tickets.  As such, the Plaintiffs were not presented with the exculpatory clause until after the Plaintiffs perfected their contracts by purchasing their tickets, and the Plaintiffs could not have "knowingly and willingly" assented to the exculpatory clause.

A.  *Knowingly and willingly*

"While Indiana [recognizes] exculpatory clauses, they are only enforceable so long as they are knowingly and willingly made."  *Dawson v. Hummer*, 649 N.E.2d 653, 660 (Ind. Ct. App. 1995) (citing *Gen. Bargain Ctr. v. Am. Alarm Co.*, 430 N.E.2d 407, 411 (Ind. Ct. App. 1982)); *see also Sys. Auto Parks & Garages, Inc.*, 411 N.E.2d 163, 165 (Ind. Ct. App. 1980) (defendant may not limit liability with a mere notice printed on a receipt).  Absent a party's knowledge of an exculpatory clause, there can be no "meeting of the minds" that forms the foundation of contract law.  *See Weaver v. Am. Oil Co.*, 257 Ind. 458, 464, 276 N.E.2d 144, 148 (1971) ("The party seeking to enforce [an exculpatory clause] has the burden of showing . . . *there was in fact a real and voluntary meeting of the minds*") (emphasis added); *see also Beaver v. Grand Prix Karting Ass'n, Inc.*, 246 F.3d 905, 909-10 (7th Cir. 2001) (a party must assent to an exculpatory clause before the clause may be invoked against the party).

Because one does not come into possession of a ticket—and acquire the corresponding ability to read the exculpatory clause contained thereon—until after the ticket is purchased, an exculpatory clause contained on the back of a ticket is unenforceable.[11]

---

[10] Michelin, albeit incorrectly, also asserts there is no contract between the Plaintiffs and IMS.  *Michelin Mem. in Supp. of Mot. to Dismiss* at 17-18.  One wonders how Michelin reconciles its position of "courts have long held contractual disclaimers to be binding" with its position of "Plaintiffs' tickets are not contracts."  *Id.* at 9, 17.

[11] Furthermore, the 2005 USGP tickets' notation of "NO REFUND" would prevent the few patrons who happened to turn over their ticket—after buying it—from returning the ticket as a means of rejecting the exculpatory clause.

B. *Fine Print*

The 2005 USGP exculpatory clause also may not be invoked against the Plaintiffs because the clause is written in fine print and is not likely to attract a patron's attention. *See Weaver*, 257 Ind. at 462, 276 N.E.2d at 147 ("The evidence also reveals that the clause was in fine print."); *see also Yates v. Chi. Nat'l League Ball Club*, 230 Ill. App.3d 472, 487, 595 N.E.2d 570, 581 (Ill. Ct. App. 1992) (rejecting exculpatory clause because the clause was written in fine print) (citing Restatement (Second) of Torts § 496(B), comment c. Illustration I (1977)).

C. *Tortious Interference with Contract*

Although a properly executed exculpatory clause may absolve negligent conduct, it may not absolve liability for an intentional tort. *See* Restatement (Second) Contracts § 195; *see also KK, LLC, & WR Kelso Co., Inc. v. U.S. Aviation Underwriters, Inc.*, 2005 WL 1115864 *5 (S.D. Ind.) (citing *Clark v. Donahue*, 885 F. Supp. 1159, 1163 (S.D. Ind. 1995); *Tippman v. Hensler*, 716 N.E.2d 372, 380 (Ind. 1999). Because tortious interference is an intentional tort, the Plaintiffs' tortious interference with contract claim is not subject to the exculpatory clause.

D. *Negligence*

The exculpatory clause is also ineffective against the Plaintiffs' negligence claims. In order for an exculpatory clause to waive a claim of negligence, the clause "must both specifically and explicitly refer to the negligence *of the party seeking release from liability*." *Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.*, 694 N.E.2d 757, 761 (Ind. Ct. App. 1998) (emphasis added). The 2005 USGP exculpatory clause states that "the foregoing are hereby released from any and all claims arising from the events, including claims of negligence." This clause merely denotes "claims of negligence" rather than the negligence "of the party seeking release."

E. *The Defendants' cited cases*

Michelin cites *Romeo v. Pittsburg Assoc.*, 787 A.2d 1027, 1032 (Pa. Super. Ct. 2001), *Solderholm v. Chi. Nat'l League Ball Club*, 225 Ill. App.3d 121, 125, 587 N.E.2d 517, 520 (1992), and *Honeycutt v. Tour Carriage, Inc.*, 997 F. Supp. 694, 700 (W.D.N.C. 1996), in support of its argument. *Michelin Mem. in Supp. of Mot. to Dismiss* at 9-10.

In *Romeo*, a baseball spectator was hit by an errant foul ball and sued for injuries. 787 A.2d at 1029-30. *Romeo* rejected the spectator's negligence claim because the danger of being struck by a foul ball at a baseball game is a "common, frequent, and expected risk" that is inherent to attending a game. *Id.* at 1030. After rejecting the spectator's negligence claim, *Romeo* addressed the spectator's breach of contract claim and stated, "[the contract is] subject to the limitations contained in the disclaimer printed on the back of the ticket. This warning expressly stated that appellants assumed the risk from batted balls." *Id.* at 1032-33. *Romeo* cited no cases in support of this conclusion, limited its analysis to the above-quoted sentences, and did not address the spectator's knowledge of the exculpatory clause.

Because the import of the spectator's knowledge of the exculpatory clause was not addressed in *Romeo*, *Romeo* does not conflict with Indiana's requirement that a party must be aware of an exculpatory clause before the clause may be invoked against the party. Moreover, because the above-quoted statement constitutes the entirety of *Romeo's* analysis, it is difficult to determine if *Romeo* was simply relying upon its earlier conclusion that every fan attending a baseball game assumes the risk of being struck by a foul ball.

In *Solderholm*, a Chicago Cubs season ticket holder's tickets were revoked *and his money returned to him* when it was learned that the ticket holder was "scalping" the tickets in violation of the language contained on the back of the tickets. 225 Ill. App.3d at 120-22, 587 N.E.2d at 518. In denying the ticket holder's request for an injunction, *Solderholm* stated, "[n]either an

individual ticket holder nor a season ticket holder is entitled to enter the ball park except upon the terms and conditions specified upon the individual tickets." 225 Ill. App.3d at 125, 587 N.E.2d at 521. However, as is clearly indicated by the language both preceding and following this quote, *Solderholm* merely holds that the issuer of a ticket may revoke the ticket if the terms printed on the back of the ticket are violated.[12]

In *Honeycutt*, a vacationer signed up for a tour package that provided various services while she was in Mexico. 997 F. Supp. at 696-97. During the vacationer's tour, she contracted for a horseback riding excursion in Copper Canyon from a company unaffiliated with the tour. *Id.* at 696-97. The vacationer she broke her ankle and subsequently sued the tour company. *Id. Honeycutt* entered summary judgment in favor of the defendant, based upon its holding that tour operators are not liable for the negligent acts of third parties. *Id.* at 700. In so holding, *Honeycutt* noted that the conditions printed on the defendant's brochure clearly informed the vacationer that the tour company was not liable for the acts of third parties. *Id.* at 699-700. There is no indication that the plaintiff in *Honeycutt* did not have an opportunity to read these conditions prior to accepting tour package and acquire the corresponding knowledge therefrom.

*Romeo*, *Solderholm*, and *Honeycutt*, each a non-Indiana case, do not hold that an exculpatory clause may be invoked against a party who had no knowledge of the clause, cases that address a party's knowledge of an exculpatory clause clearly require a party to have knowledge of the clause,[13] and Indiana requires a party to have knowledge of an exculpatory clause before the exculpatory clause may be invoked. Because the Plaintiffs were not presented

---

[12] As discussed infra, under every ticket may be revoked and such revocation does not negate *in personam* recovery. Tellingly, the tickets' purchase price was returned to the Plaintiff in *Solderholm*.

[13] *See Yates*, 230 Ill. App.3d at 487, 595 N.E.2d at 581. ("An express agreement to assume a risk will not be effective unless it appears that the plaintiff has given his or her assent to the terms of the agreement." *Id.* (citing Restatement (Second) of Torts § 496(B), comment c (1977))*; see also Sharon v. City of Newton*, 437 Mass. 99, 104, 769 N.E.2d 738, 743 (2002); *Lee v. Allied Sports Assoc., Inc.*, 349 Mass. 544, 550, 209 N.E.2d 329, 332 (1965) ("In the 'ticket' cases . . . the type of document which the patron receives and the circumstances under which he receives it are not such that a person of ordinary intelligence would assume that the ticket limits the proprietor's liability.").

with the language on the back of the 2005 USGP tickets until after their purchase of the tickets, the exculpatory clause may not be invoked against them.

## IV. Third-Party Beneficiary

"One not a party to an agreement may nevertheless enforce [the agreement] by demonstrating that the parties intended to protect the non-party by the imposition of a duty in the non-party's favor." *Biddle v. BAA Indianapolis, LLC*, 830 N.E.2d 76, 86 (Ind. Ct. App. 2005) (citing *Kirtley v. McCelland*, 562 N.E.2d 27, 37 (Ind. Ct. App. 1990), *trans. denied*). Third-party beneficiary recovery is permitted when: (1) the parties to a contract intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of a third party; and, (3) the performance of the contract renders a direct benefit to the third party intended by the parties to the contract. *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995-96 (Ind. Ct. App. 1998) (citing *Nat'l. Bd. of Examiners for Osteopathic Physicians & Surgeons, Inc. v. Am. Osteopathic Ass'n.*, 645 N.E.2d 608, 618 (Ind. Ct. App. 1994)).

### A.  *The terms of the Defendants' contracts*

The Defendants assert the Plaintiffs may not recover pursuant to their third-party beneficiary claim because the Complaint fails to specify terms of the Defendants' contracts that were breached.   However, the Complaint states, "the individual Defendants had among themselves and with each other contractual arrangements which impact *the duty of each of the Defendants to present the 2005 USGP as represented.*"  *Sec. Am. Compl.* ¶ 78 (emphasis added). The Complaint further states, "Defendants breached one or more of these contracts . . . *by failing to present the Race as promoted and promised and/or by failing to provide suitable tires to the Michelin Teams."  Id.* ¶ 81 (emphasis added).  This language places the Defendants on notice that the Plaintiffs' claim is premised upon the duty arising from contractual terms that required the Defendants to take acts in furtherance of the race promised to the Plaintiffs.

B. *Intent*

The Defendants also assert the Complaint fails to allege the contracts at issue intended to directly benefit the Plaintiffs.[14] However, the Complaint states, "[the contracts among the Defendants created various duties] all so that the race could have been held in the manner promoted . . . to the Plaintiffs." *Sec. Am. Compl.* ¶ 80. This statement constitutes an assertion that an intent of the Defendants' contracts was to directly benefit the Plaintiffs by taking various acts to facilitate the race.

The Defendants' assertion that this statement is insufficient to place them on notice is inconsistent with the liberal standard of review applied to a motion to dismiss. As stated by the Seventh Circuit:

> A complaint that complies with the federal rules of civil procedure *cannot be dismissed on the ground that it is conclusory or fails to allege facts*. The federal rules require . . . only that the complaint state a claim, not that it plead facts that if true would establish . . . that the claim was valid. *All that need be specified is the bare minimum facts necessary to put the defendant on notice*.

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (internal citations omitted) (emphasis added). Under this liberal standard, the Complaint's above-quoted allegation is sufficient to withstand the Defendants' Motion to Dismiss.

C. *The Purpose of the Defendants' Contracts*

FOA and FOM assert a purpose of the Defendants' contracts was to confer a benefit to the race participants rather than the patrons. *Formula One Admin. and Formula One Mgmt. Mem. in Supp. of Mot. to Dismiss* at 5. However, for an obligation running in favor of a third party to be enforceable, it need only appear that the obligation arising under the agreement was

---

[14] In a related assertion, Michelin claims the Plaintiffs fail to allege the contracts named the Plaintiffs as beneficiaries. *Michelin Mem. in Supp. of Mot. to Dismiss* at 12. However, a contract need not name the benefited party in order for a third-party beneficiary to arise. *See Garco Indus. Equip. Co. v. Mallory*, 485 N.E.2d 652, 654 (Ind. Ct. App. 1985) ("intent of the parties to benefit the third party . . . may be shown by specifically naming the third party *or* by other evidence") (emphasis added).

"a" purpose of the contract. *Biddle*, 830 N.E.2d at 86. As such, the assertion that the contracts at issue had purposes other than benefiting the Plaintiffs is of no import to the case at bar.

More importantly, "[w]hether . . . one is a third-party beneficiary *is a fact question* dealing with the intent of the contracting parties, and *a judgment on the pleadings is not the proper vehicle for making that determination.*" *Luhnow v. Horn*, 760 N.E.2d 621, 627 (Ind. Ct. App. 2001) (emphasis added). Because the determination of third-party status is a question of fact that is not entirely governed by the language of the underlying contracts, dismissal is improper as a matter of law. [15] *See Garco*, 485 N.E.2d at 654 (intent to create a third-party beneficiary may be shown by evidence outside of the contracts).

### D. Castillo and Percha

Michelin also asserts *Castillo*, 268 A.D.2d at 336, and *Percha*, 2003 WL 23018757, are on point with this case and require the Plaintiffs' third-party beneficiary claim to be dismissed. *Michelin Mem. in Supp. of Mot. to Dismiss* at 12-13.

*Castillo* rejected a third-party beneficiary claim arising from the infamous "Mike Tyson bite fight." Michelin quotes the following language, "[p]laintiffs are not in contractual privity with any of the defendants, and their claim that they are third-party beneficiaries of one or more of the contracts . . . was aptly rejected by the motion as 'contrived.'" *Michelin Mem. in Supp. of Mot. to Dismiss* at 15 (quoting *Castillo*, 268 A.D.2d at 337). However, immediately following Michelin's quoted language, *Castillo* states, "[n]othing in these contracts can be understood as promising a fight that did not end in a disqualification. The Rules governing commission

---

[15] In a related claim, the Michelin Teams assert the contracts at issue "are more likely to call for arbitration in France than to contemplate fan enforcement." *Seven Def. Racing Teams Mem. in Supp. of Mot. to Dismiss* at 9. This argument is a non-sequitor. It is far from apparent how the fact that a particular contract happens to contain an arbitration clause sheds light on the question of whether the contracting parties intended to confer a benefit on a third party. Moreover, "contemplation of third-party enforcement" is not an element of a third-party beneficiary claim; rather, the intent of the parties to confer a direct benefit on the third party is the controlling factor. *Luhnow v. Horn*, 760 N.E.2d 621, 627 (Ind. Ct. App. 2001). Finally, the Michelin Teams' use of the term "likely" constitutes an admission that they cannot establish beyond a doubt that the Plaintiffs cannot succeed on the merits.

provide for disqualification, and it is a possibility that a fight fan can reasonably expect." *Castillo*, 268 A.D.2d at 337. In other words, *Castillo's* third-party beneficiary claim was "contrived" because—as provided by the rules of professional boxing—the plaintiffs in *Castillo* could reasonably expect a pugilistic event to end in disqualification.

*Castillo* actually supports the Plaintiffs' claim because the Plaintiffs allege that—in contrast to the rules in *Castillo*—the FIA rules lead a reasonable plaintiff to expect that any Formula One Race would consist of substantially more than six cars. *Sec. Am. Compl.* ¶¶ 3, 51. Because the rules governing Formula One racing support the Plaintiffs' claim, *Castillo* does not impair the viability of the Plaintiff's third-party beneficiary claim.

Michelin is less than forthright in its quotation of *Percha*. *Percha* rejected a third-party beneficiary claim involving a user fee added to the cost of Detroit Lions football tickets. Michelin quotes the following language from *Percha*, "[the plaintiffs] got what they paid for— admission into the Silverdome to watch the football games for which they had purchased tickets." *Michelin Mem. in Supp. of Mot. to Dismiss* at 13 (citing *Percha*, 2003 WL 23018757 *2). However, immediately prior to this quoted language, *Percha* states, "[p]laintiffs have not claimed that they were denied any rights granted by their license; thus, they have asserted no cognizable right against the Lions." *Percha*, 2003 WL 23018757 *1. Because the Plaintiffs at bar assert they were denied rights conferred by their tickets, *Percha* also does not support dismissal of the Plaintiffs' claim for failure to state a cause of action.

The language of *Percha* and *Castillo* omitted in Michelin's quotations distinguishes each case from the case at bar.

E. *Breach of Warranty*

The Plaintiffs also assert they are intended beneficiaries of contracts governing the sale of Michelin's tires and these contracts were subject to warranties.[16]  *Sec. Am. Compl.* ¶ 80. Michelin asserts the Plaintiffs' warranty claims must be dismissed because the Plaintiffs fail to identify the specific warranties upon which they base their claim.  However, Michelin is attempting to take advantage of the fact that it has not provided the Plaintiffs with the contracts upon which the Plaintiffs base their claim.  Until Michelin provides the Plaintiffs with these contracts, it is impossible for the Plaintiffs to specify the details of the warranties attached to those contracts.

Even if the contracts that govern the sale of Michelin's tires do not contain express warranties, the Plaintiffs nonetheless assert there is an "implied warranty of fitness for a particular purpose" incorporated into the contracts.  An implied warranty of fitness for a particular purpose is breached when a seller, on whose skill and judgment a buyer relies and who has reason to know the particular purpose for which the goods are required, fails to provide goods that perform to the specific use contemplated by the buyer.  *Bedford Recycling, Inc. v. U.S. Granules, Corp.*, 634 N.E.2d 1361, 1365 n.8 (Ind. Ct. App. 1994).

Michelin also claims the Plaintiffs' warranty allegations must be dismissed because "[t]he Indiana Commercial Code limits third-party beneficiaries of any express or implied warranty to those who have suffered personal injuries and does not permit recovery of economic losses."  *Michelin Mem. in Supp. of Mot. to Dismiss* at 13 (citing *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 954-55 (Ind. 2005)).  Michelin's contention is perplexing in light of the

---

[16] Ferrari asserts "implied warranties only apply to goods"  *Ferrari S.p.A. Mem. in Supp. of Mot. to Dismiss* at 15. Ferrari's assertion is debatable.  *See Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 594 N.E.2d 459, 465-66 (Ind. Ct. App. 1992), *adopted in part*, 612 N.E.2d 550 (Ind. 1993) (advancing policy reasons in favor of applying implied warranties to service contracts).  Nonetheless, the Plaintiffs are only pursuing their warranty claims to the extent they apply to the sale of goods and are not seeking recovery based upon warranties associated with services.

fact that the first line of *Hyundai* states, "[w]e hold that a consumer may sue a manufacturer for economic loss based on breach of the implied warranty." *Hyundai*, 822 N.E.2d at 948. Moreover, *Hyundai* concerned the import of a seller intermediary to the requirement of "privity." *Id.* "Privity" is not an obstacle for the Plaintiffs because there is no indication Michelin's tires were sold through an intermediary.

The Plaintiffs allege it was an intent of the agreement between Michelin and the Teams to provide a direct benefit to the Plaintiffs by providing tires to facilitate the race promised to the Plaintiffs. Until the Defendants produce the contracts applicable to this issue, the Plaintiffs will not be able to specify the express warranties attached to these contracts. Accordingly, the Plaintiffs' allegation that the contracts contain warranties must be presumed true.

## V. Promissory Estoppel

The "underlying principle" of estoppel is "one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001) (citing 31 C.J.S. Estoppel and Waiver § 2 (1996)). The elements of promissory estoppel include: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance; (4) of a definite and substantial nature; and, (5) injustice can by avoided only by enforcement of the promise. *Id.* (citing *First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991)).

### A. *Remedy at law*

IMS asserts the Plaintiffs may not pursue their promissory estoppel claim because "an express agreement existed with the IMS embodied in the ticket." *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 5-6 (citing *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 870 (7th Cir. 1999)). The Plaintiffs are well aware that they may not simultaneously recover

in contract and equity. *See Town of New Ross v. Ferretti*, 815 N.E.2d 162, 168 (Ind. Ct. App. 2004) (as a remnant of the division of the courts of chancery and law, a plaintiff may not recover in equity when there is a remedy at law)). However, Michelin disputes the existence of a contract. *Michelin Mem. in Supp. of Mot. to Dismiss* at 17-18. Accordingly, the Plaintiffs are merely pursuing their equitable claims in the alternative and only rely upon such claims to the extent this court should hold there is no contractual relationship between the Defendants and the Plaintiffs. *See INS Investigations Bureau v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003), *trans. denied* ("Indiana law allows a party to plead alternative").

In a related argument, IMS claims the Plaintiffs may not recover in promissory estoppel because the tickets embody the agreement between IMS and the Plaintiffs and the tickets contain no promise indicating the race would be of a particular quality.[17] However, the tickets do not embody the promises made by the Defendants. Indeed, by the time the Plaintiffs were able to examine their tickets, the Plaintiffs had already committed resources in expectation of the Defendants fulfilling the promises that induced the Plaintiffs to buy the tickets.

B. *Specific Promise*

The Defendants assert the Plaintiffs' promissory estoppel cause of action must be dismissed because the Complaint fails to allege the Defendants made a specific promise. However, a plaintiff bringing a suit in federal court need not plead facts. *Jackson*, 66 F.3d at 153; *see also Higgs*, 286 F.3d at 439 ("A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.").

---

[17] IMS supports its argument by noting "NO REFUND" was printed on the tickets. It is difficult to understand how IMS construes "NO REFUND" to confer *carte blanche* authority to disavow its promises. Does IMS seriously argue that it could sell such tickets, have no race whatsoever, and not refund the ticket price? A reasonable person would understand "NO REFUND" to indicate a ticket holder may not change his or her mind about attending the race and, correspondingly, demand his or her money back.

Moreover, the Complaint states, "[a]ll of the Defendants conspired and acted together to provide advertising and promotion of . . . a Regulation Formula One Championship Series Race with ten (10) Formula One teams . . . with the expectation that Plaintiffs . . . would reasonably rely on these public commitments by Defendants." *Sec. Am. Compl.* ¶ 82. A "Regulation Formula One Championship Series Race with ten Formula One teams competing" is a specific promise that the Plaintiffs allege was made by "all of the Defendants."[18]

In a related argument, Michelin claims that "plaintiffs' allegation that Michelin provided advertisements and promotions is unsupported." *Michelin Mem. in Supp. of Mot. to Dismiss* at 15. Because Michelin does not specify the type of "support" the Plaintiffs fail to provide and the standard of review does not require the Plaintiffs to plead facts to support the Plaintiffs' allegations, it is difficult to respond to Michelin's argument. In any event, the Complaint alerts the Defendants that the Plaintiffs allege the Defendants promised a regulation race with ten teams participating. This allegation is more than sufficient to satisfy federal pleading requirements.

C. *After the Fact*

FOA and FOM assert the Plaintiffs' promissory estoppel claim must be dismissed because Formula One became aware of the circumstances that contributed to the "farce" after Formula One had issued its promises. *Formula One Admin. and Formula One Mgmt. Mem. in Supp. of Mot. to Dismiss* at 6. Had Formula One known about the facts that contributed to the "farce" prior to their promises, the Plaintiffs would be alleging <u>fraud</u> not promissory estoppel. A subsequent intervening fact does not negate the elements of promissory estoppel and is of no import to this motion.

---

[18] Although this quote does not explicitly use the word "promise," its use of "commitments" is sufficiently analogous to "promise" to provide the Defendants with the requisite notice of the nature of the Plaintiffs' claim.

D. *Puffing*

The Defendants finally claim the Plaintiffs' promissory estoppel cause of action must be dismissed because the promises made by the Defendants constitute mere "puffery."[19]  The Defendants' argument is inconsistent with the standard of review applied to a motion to dismiss.  Not only does the Defendants' assertion inject facts that are not contained on the face of the Complaint but the Defendants' assertion construes those facts in favor of the moving party.  For purposes of this motion, it must be assumed that the Defendants' advertising and promotion of the 2005 USGP did not constitute mere puffery.  Moreover, whether the promises at issue constitute puffery is a question of fact rather than law.  *See R.S. Bennett & Co., Inc. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182, 186 (7th Cir. 1979).  As such, a motion to dismiss is the wrong forum to debate the nature of the Defendants' promises.

Finally, if the Defendants raise this issue at a proper stage of the proceedings, the Plaintiffs will assert that, unlike the promises of a "sensational victory" or "biggest fight of all time" cited by the Defendants, the promise of a twenty-car regulation championship race is objectively verifiable, which is indicative of a genuine promise.  A reasonable person would construe the promise of the "biggest fight of all time" as puffery; that same person would construe the objectively verifiable nature of "a regulation twenty-car race" as an indication that the declarant was making an actual promise.[20]

A commitment to present a twenty-car regulation Formula One Championship Series Race is a specific promise and apprises the Defendants of the nature of the Plaintiffs' claim.

---

[19] This claim exposes the mendacious nature of the Defendants' assertion that the Complaint is insufficient to apprise them of the nature of their promises.  The Defendants cannot consistently assert the Complaint fails to specify promises while simultaneously asserting those promises constitute mere puffery.

[20] The Michelin Teams cite *Glen Holly Entertainment, Inc. v. Tekroniz, Inc.*, 100 F. Supp.2d 1086, 1095 (C.D. Cal. 1999), in support of this argument.  *Seven Def. Racing Teams Mem. in Supp. of Mot. to Dismiss* at 11.  However, *Glen Holly* found the promises alleged to be insufficient because they were "indefinite."  100 F. Supp.2d at 1102 n.5.  In contrast, the promise of a regulation twenty-car race is definite, delineable, and objectively verifiable.

Pursuant to the liberal pleading standard employed by a motion to dismiss, this allegation is sufficient to sustain the Plaintiffs' cause of action.

## VI. Negligence

Count IV of the Complaint alleges the Defendants are liable for assuming the responsibility of presenting the race as promised and of assuming the responsibility of circumventing the problems that interfered with the running of the 2005 USGP. *See Sec. Am. Compl.* ¶ 86 ("Defendants voluntarily assumed a duty to Plaintiffs to present the Race as advertised and promoted."). The tort of negligence consists of three elements: (1) duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) injury proximately caused by the breach. *Pelak v. Ind. Indus. Serv., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005) (citing *Kincaide v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002)).

### A. *The Economic Loss Doctrine*

The Defendants assert the Plaintiffs' negligence allegation must be dismissed because the Plaintiffs only allege economic injuries and the economic loss rule limits negligence recovery to allegations involving personal injuries. The Defendants' assertion is inadequately researched.

In *Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572 (Ind. Ct. App. 1993), the plaintiffs entered into a residential purchase agreement. Prior to the plaintiffs' purchase, the plaintiffs had the residence they were purchasing inspected. *Id.* at 573. However, flaws detected in this inspection were not communicated to the plaintiffs, and the plaintiffs purchased the residence and incurred the expense of correcting the defects omitted from the inspection report. *Id.*

The Plaintiffs filed a complaint asserting the details of the inspection report were negligently not provided to them. The trial court dismissed the Plaintiffs' claims, concluding the economic loss doctrine barred the plaintiffs' cause of action because only economic injuries were alleged. *Id.* However, the Court of Appeals reversed the trial court, and held:

> [T]he economic loss rule is described as a rule that prevents tort recovery when a *product defect* has resulted in the loss of the value or use of the thing sold . . . We fail to see any justification for expanding the rule to preclude the recovery of economic loss in other actions for negligence.

617 N.E.2d at 575 (citing Am. Law Prod. Liab.3d § 60:39) (emphasis original); *see also A. I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 636 (7th Cir. 2001) ("Indiana courts have specifically explained that the [economic loss] rule does not apply outside the product failure context."); *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 704-05 (Ind. Ct. App. 2004) ("the economic loss doctrine applies to a negligence action for economic loss *to a product* caused by a defect in the product, and [Indiana courts refrain] from expanding the rule to preclude the recovery of economic loss in other actions for negligence."); *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 938 (Ind. Ct. App. 1996).

The Complaint's negligence allegation is premised upon the negligent assumption of duty rather than products liability. *Sec. Am. Compl.* ¶¶ 85-88. Accordingly, the Defendants' assertion that the economic loss rule applies to this issue is ill-conceived.

In a related claim, Michelin contends the Plaintiffs may not proceed on concurrent contractual and negligence claims and the Complaint's negligence allegation must be dismissed for this reason. *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 13. However, although a plaintiff may not receive "double recovery," a plaintiff may nonetheless plead and prove contractual and negligence allegations related to the same conduct. *Simon Property Group, L.P. v. Brandt Contr.*, 830 N.E.2d 981, 992 (Ind. Ct. App. 2005). In the event a plaintiff's contractual and negligence allegations governing the same conduct are presented to the jury and are successful, any "judgment containing the same damages is reduced to the extent of the overlap" at the judgment stage of the proceedings. *Id.*

B. *Assumption of Duty*

For purposes of negligence, a defendant's duty can arise by statute, common law, or by assumption of duty. *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 740 (7th Cir. 1999) (citing *Downs v. Panhandle E. Pipeline Co.*, 694 N.E.2d 1198, 1202 (Ind. Ct. App. 1998), *trans. denied*). A duty may be created by gratuitous or voluntary assumption. *City of Muncie v. Weidner*, 831 N.E.2d 206, 212 (Ind. Ct. App. 2005) (citing *Bldg. Materials Mfg. Corp. v. T&B Structural Sys., Inc.*, 804 N.E.2d 277, 282 (Ind. Ct. App. 2004)). Whether a party assumed a duty and the extent of that duty are questions of fact. *City of Muncie*, 831 N.E.2d at 213.

The Plaintiffs have alleged the Defendants assumed the duty to present a regulation Formula One Championship Series race with twenty cars participating. This allegation satisfies the pleading standard and renders dismissal improper.

An excellent example of conduct giving rise to an assumption of a duty cause of action is the rendition of Michelin and the Michelin Teams' conduct contained in the FIA's July 5, 2005 public telefax. This telefax states in part,

> Having had time to reflect on Indianapolis, I believe the fundamental mistake was that Michelin (or a team) did not come to us with their problem in accordance with the international Sporting Code, but instead sought to impose a solution.
>
> * * *
>
> Had Michelin come to us with their problem and told us their maximum safe speed in Turn 13, I would have immediately called a meeting of the team managers, with whom I normally work. I have no doubt we would have found a solution.

Federation Internationale De L' Automobile, July 5, 2005 telefax.

The Plaintiffs will be able to use this statement and other facts to demonstrate that (1) various Defendants assumed the duty of resolving the problems associated with the 2005 USGP (2) the Michelin Defendants' attempts to "impose a solution" negligently impaired the FIA's ability to provide the Plaintiffs ███████████████████████████ and (3) the

Defendants negligently performed their assumed task of providing the Plaintiffs with a race.[21] *See Sec. Am. Compl.* ¶ 86.

### C. Sufficiency of the Complaint

The Defendants finally assert the Plaintiffs' negligence cause of action must be dismissed because it is conclusory and fails to plead sufficient facts. Moreover, the Complaint specifically notes that the Defendants "voluntarily assumed a duty to Plaintiffs to present the Race as advertised and promoted" and referenced the negotiations that Michelin, the Michelin Teams, and the other Defendants conducted prior to the race. *Sec. Am. Compl.* ¶¶ 41, 86. These allegations are sufficient to apprise the Defendants of the Plaintiffs' claim and are sufficient to satisfy the liberal pleading standards required by federal courts.

### VII. Tortious Interference with Contract

To establish a claim for tortious interference with contract, a plaintiff must prove: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and, (5) damages. *Winkler v. V.G. & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994) (citing *Daily v. Nau*, 167 Ind. App. 541, 549 n.6, 339 N.E.2d 71, 76 n.6 (1975)).

### A. The Existence of a Valid and Enforceable Contract

Michelin and the Defendants that adopt Michelin's argument assert "[t]he law is settled that plaintiffs' USGP tickets do not constitute a valid and enforceable contract." *Michelin N. Am. Mem in Supp. of Mot. to Dismiss* at 18. This assertion is in error for a number of reasons.

---

[21] The Michelin Teams mischaracterize the Plaintiffs' cause of action in their assertion that the Plaintiffs act as though the Defendants were required to race "regardless of safety." *Seven Def. Racing Teams Mem. in Supp. of Mot. to Dismiss* at 15. The Plaintiffs are not asserting the Defendants should have raced regardless of the danger to themselves or others. Rather, the Plaintiffs are asserting there were safe alternatives to not racing and Michelin and the Michelin Teams' assumption of duty in seeking "to impose a solution" impeded the adoption of a reasonable alternative to not racing.

Most importantly, the overwhelming majority of cases hold that a ticket may form the basis of a valid contract claim. As stated in *Bosewell v. Barnum & Bailey*:

> [T]he only remedy of the ticket holder is an action for breach of contract, and his damages are limited to the price of the ticket and any expenses incident to the purchase of the ticket and attending the place of amusement. The authorities are practically uniform on the foregoing proposition.

185 S.W. 692, 692-93 (Tenn. 1916) (citing *Messner v. Detroit, B.I.&W. Ferry Co.*, 154 Mich. 545, 118 N.W. 14 (1908); *Collister v. Hayman*, 183 N.Y. 250, 76 N.E.2d 20 (1905); *Horney v. Nixon*, 213 Pa. 20 (1905); *W.V. Co. v. Black*, 113 Va. 728 (1911)); *see also Fisherman's Wharf Bay Cruise Corp. v. Sup. Ct. of San Francisco*, 114 Cal. App. 4th 209, 340 (2004) ("a ticket is a tangible memorandum of a contract"); *Burns v. Odeon*, 1996 WL 501742 (N.D. Ill. 1996); *Depez v. Brewer*, 1995 WL 547094 *2 (Tex. App.) (citing *Pool v. Rodriquez*, 182 S.W.2d 824, 826 (Tex. Civ. App. 1944)); *Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So.2d 626, 630 (Fla. Ct. App. 1988) (citing *Burnham v. Flynn*, 189 N.Y. 180, 82 N.E. 169 (1907)); *Mee v. Hubbard*, 2003 WL 22571715 * 6 n.5 (D. Md); *De Riesux v. Five Smiths, Inc.*, 499 F.2d 1321, 1334 (Em. App. 1974); *Feldt v. Marriott Corp.*, 322 A.2d 913, 916 n.13 (D.C. 1974) (citing *Garifine v. Manmouth Park Jockey Club*, 29 N.J. 47 (1959)); *Kennedy Theatres Ticket Serv. v. Ticketron, Inc.*, 342 F.Supp. 922, 925 (D.C. Pa. 1972); *Griffin v. Southland Racing Corp.*, 236 Ark. 872, 370 S.W.2d 429 (1963); *Vogel v. Saenger Theatres*, 22 So.2d 189, 190 (La. 1945) (citing *Russo v. Orpeum Theatres & Realty Co.*, 136 La. 24, 66 So. 385 (1914)); *State v. Cobb*, 136 S.E.2d 674, 677 (N.C. 1964) (citing *Griffin v. Southland Racing Corp.*, 236 Ark. 872, 370 S.W.2d 429 (1963)); *Terrell Wells Swimming Pool v. Rodriquez*, 182 S.W.2d 824, 826 (Tex. Civ. App. 1944); *Jordan v. Concho Theatres*, 160 S.W.2d 275, 276 (Tex. Civ. App. 1941); *De La Ysla v. Publix Theatres Corp.*, 26 P.2d 818, 820 (Utah 1933) (citing C.J.S. 859, § 36 et. seq); *Shubert v. Nixon Amusement Co.*, 83 A. 369, 369 (N.J. 1912); Am Jur.2d Entm't & Sports Law § 48. In

light of the above-cited authority, Michelin's assertion that it is "settled law" that tickets do not create valid and enforceable contracts is clearly an incorrect statement of the law.

The only contractual prohibition associated with a ticket is the absence of the right to sue *in rem* on the ticket—i.e. for specific performance. As is noted by a case Michelin cites in support of its argument, "a ticket to an entertainment performance . . . does not create a right to sue *in rem*." *Buffalo Bill*, 472 N.Y.S.2d at 247; *see also Marrone v. Washington Jockey Club of Dist. of Columbia*, 227 U.S. 636 (1913) (a ticket gives a right to sue in contract; it does not give the holder the right to sue *in rem*); *Mee*, 2003 WL 22571715 *6 n.5; *Ziskis v. Kowalski*, 726 F.Supp. 912, 908 (D. Conn. 1989); *Washington Nat. Arena v. Comptroller of Treasury*, 1984 WL 2884 (Md. Tax. 1984); 30A *C.J.S.* Entm. & Amusement § 50 ("Tickets to theaters or other places of business do not create a right *in rem*").

While it is true that Michelin's cited case of *Stern* notes, "a ticket to a football game is a license that creates no contract or property rights," this statement was made in the context of the plaintiffs' claimed "right to renew his season tickets for future seasons." 1996 WL 761163 *5. *See also Percha v. Detroit Lions, Inc.*, 2003 WL 23018757 * 1 (revocable nature of a ticket did not require defendant to honor ticket at a specific price). Because the Plaintiffs in *Stern* and *Percha* sued for performance of rights allegedly arising under their tickets—i.e. *in rem*—, neither case contravenes the substantial authority allowing *in personam* recovery.

Michelin finally cites *Sweeney v. United Artist Theatre Circuit, Inc.*, 2005 WL 550344 *2, 3 (Col. App. 2005), for the proposition that a "movie ticket does not constitute a contract." *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 18. However, *Sweeney* (1) merely holds that a movie ticket does not create a contractual right "to provide safe facilities and to notify the ticket holder of a dangerous condition," (2) explicitly recognized the right of the ticket holder to

pursue a refund, and (3) cited with approval several of the above-listed cases that explicitly recognize the right to recover *in personam*. *Id.*

The long line of cases recognizing the right to sue *in personam* and Michelin's reliance upon cases involving *in rem* actions demonstrate that an *in personam* contract action involving a ticket is perfectly viable under established law. Moreover, IMS—as the issuer of the tickets that perfected the contract in question—insists upon the existence of a contract. *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 5. Finally, one has to doubt the sincerity of Michelin's belief that the tickets do not constitute a contract. In another section of its Memorandum, Michelin states "courts have long held contractual disclaimers to be binding" in support of its attempt to invoke the 2005 USGP ticket's exculpatory clause. *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 9. It is odd that Michelin relies upon a provision in a contract they claim does not exist.

B. *The Absence of Justification*

Michelin and the Defendants adopting Michelin's argument assert the Plaintiffs cannot establish tortious interference with contract's "absence of justification element" because the Plaintiffs fail to allege the Defendants' interference with contract was "malicious." *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 19 (citing *Winkler v. V.G. & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993), *trans. granted*). However, Michelin has neglected to apprise the Court of a very important aspect of the element of justification.

In 1994, the Indiana Supreme Court departed from the "malice standard" asserted by Michelin. *Winkler*, 638 N.E.2d at 1235. In so doing, the Indiana Supreme Court set forth the following factors used to determine the absence of justification:

> (a)  the nature of the defendant's conduct;
> (b)  the defendant's motive;
> (c)  the interests of the plaintiff;

(d)  the interests sought to be advanced by the defendant;
(e)  the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;
(f)  the proximity or remoteness of the defendant's conduct; and,
(g)  the relationship between the parties.

*Id.* (citing Restatement 2nd Torts, § 767).  The Indiana Supreme Court then emphasized that the "overriding question is whether the defendant's conduct has been fair and reasonable."  *Id.*

However, in 2000, the Indiana Court of Appeals—without acknowledging *Winkler* and citing cases issued prior to *Winkler*—held that the absence of justification element requires a showing of malice.  *Morgan Asset Holding Co. v. CoBank*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (citing *Flintridge v. Station Ass'n of Am. Fletcher Mortgage Co.*, 761 F.2d 434, 441 (7th Cir. 1985); *Economation, Inc. Automated Conveyor Sup., Inc.*, 694 F.Supp. 553, 562 (S.D. Ind. 1988)).  Several Court of Appeals cases have since cited *Morgan* for the proposition that a tortious interference with contract claim requires a showing of malice.  *See Coleman v. Vukovich*, 825 N.E.2d 397, 404 (Ind. Ct. App. 2005), *trans. pending; Bilimoria Comp. Sys. LLC. v. Am. Online, Inc.*, 829 N.E.2d 150 (Ind. Ct. App. 2005), *trans. pending; Trail v. Boys & Girls Club of Northwest Ind.*, 811 N.E.2d 830, 839 (Ind. Ct. App. 2004), *trans. granted*.

In 2004, the Indiana Court of Appeals recognized the inconsistency created by *Morgan* and held that the Indiana Supreme Court's decision in *Winkler* disposed of the malice requirement and replaced it with a "fair and reasonable" standard.  *Coca-Cola Co. v. Babyback's Int'l., Inc*, 806 N.E.2d 37, 50. (Ind. Ct. App. 2004), *trans. granted*.  The Indiana Supreme Court has since granted transfer in *Coca-Cola* and *Trail* to resolve the split of authority.

As predicted by this Court and the Seventh Circuit, the Indiana Supreme Court will reaffirm *Winkler* and reject *Morgan's* inadvertent resurrection of the malice standard.  *See Zemic Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 822 (7th Cir. 1999) (citing *Winkler*, 638 N.E.2d at 1235); *White v. Local Union No. 1111 UAW*, 2005 WL 280349 *12 (S.D. Ind.) (citing

*Winkler*, 638 N.E.2d at 1235).   Furthermore, the modern trend is to dispense with the malice requirement.   *See* Restatement 2nd Torts § 766, cmt. s.   Finally, *Morgan* failed to address *Winkler* and relied only upon cases issued prior to *Winkler.   Morgan*, 736 N.E.2d at 1272.   For all of these reasons, the Indiana Supreme Court, when it rules upon this issue, will in all probability follow its own precedent and reject the inadvertent resurrection of the malice standard.

Admittedly, if the Indiana Supreme Court should resurrect the malice standard, it would be difficult for the Plaintiffs to establish an absence of justification.   However, if the Plaintiffs demonstrate the Defendants had alternatives to not racing and their motive for failing to adopt such alternatives was to use the Michelin tire problem to their advantage in an internecine struggle over the control of Formula One revenue, it would be possible for the Plaintiffs to establish malice.   Accordingly, dismissal would even be improper under a malice standard.

Moreover, if the Indiana Supreme Court should concur with the Seventh Circuit and this Court's interpretation of *Winkler*, the Plaintiffs' allegations that the Defendants had perfectly viable and safe alternatives to not racing is more than sufficient to survive the Defendants' Motion to Dismiss.   The Michelin Teams attempt to refute this assertion by claiming the Defendants decided not to race in the interests of safety.   *Seven Def. Racing Teams Mem in Supp. of Mot. to Dismiss* at 20-22.   However, the Plaintiffs are not asserting the Michelin Teams were obligated to race regardless of safety; the Plaintiffs are asserting there were safe alternatives to not racing.   Until the Plaintiffs have an opportunity to proffer evidence indicating there were safe alternatives to not racing—and perhaps nefarious motivations—the Michelin Teams' claim of the justification must be rejected.[22]

---

[22] The Michelin Teams' argument that the Defendants undertook acts to facilitate a race and, thus, could not have intentionally interfered with the Plaintiffs' contract should be similarly rejected.   *Seven Def. Racing Teams Mem. in Supp. of Mot. to Dismiss* at 19.   Simply because the Michelin Teams did not intend to breach the Plaintiffs' contract at one point does not necessarily mean they did not intend to interfere with the Plaintiffs' contract at a later point. Factual questions abound as to the reason for these decisions.

C. *The Specificity of Plaintiffs' Complaint*

Michelin and Ferrari assert the Complaint fails to allege the specific terms of the contract that were breached. *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 18; *Ferrari S.p.A. Mem in Supp. of Mot. to Dismiss* at 20-21. However, the Complaint specifically alleges (1) the Plaintiffs were promised a regulation race consisting of substantially more than six cars in which the Defendants complied with their own rules, and (2) the Defendants intentionally interfered with these contractual expectations. *Sec. Am. Compl.* ¶¶ 1, 3, 20, 70, 90, 92.

Under the federal liberal notice pleading standard, a plaintiff is entitled to the benefit not only of its allegations but of any other facts it might assert that are consistent with its allegations. *City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.*, 2005 WL 2278123 *1 (S.D. Ind.). The Defendants' assertions concerning the lack of specificity are inconsistent with the liberal federal notice pleading standard and should be rejected.

Moreover, the Complaint is more than sufficient to place the Defendants on notice that the Plaintiffs' contract with IMS was for a regulation Championship Series race with substantially more than six cars participating. A reading of Ferrari's Memorandum leaves one with the impression that Ferrari would be surprised to learn that the Plaintiffs traveled half way around the world to watch a Championship Formula One race. *Ferrari S.p.A. Mem. in Supp. of Mot. to Dismiss* at 20. Of course, such claims are disingenuous, as Ferrari's Memorandum demonstrates it is well aware of Plaintiffs' allegations.[23]

---

[23] Michelin also claims the Plaintiffs failed to set forth the facts necessary to demonstrate why the Defendants' actions were unjustified. *Michelin N. Am. Mem. in Supp. of Mot. to Dismiss* at 19 (citing *Morgan Asset Holding Corp. v. ABC*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000)). However, the Plaintiffs' tortious interference with contract section specifically incorporates prior portions of the Complaint, and paragraph forty-four of the Complaint demonstrates the Defendants' failure to present a race was unjustified. *Second Am. Compl.* ¶¶ 44, 89.

D. *Inducement*

The Michelin Teams finally claim the Plaintiffs did not allege sufficient facts to demonstrate inducement. *Seven Def. Racing Teams Mem. in Supp. of Mot. to Dismiss* at 18. However, the Plaintiffs clearly allege the Defendants' interference was accomplished by inducing the Michelin drivers not to race as well as depriving IMS of the means of fulfilling its contract. *Sec. Am. Compl.* ¶ 92

"There is no technical requirement as to the kind of conduct that may result in interference with the third party's performance of the contract." Restatement 2nd Torts, § 766, cmt. k. Although interference in tortious interference with contract claims is often by inducement to breach, "inducement" is not a tortious interference with contract requirement. *Id.* "Interference with the third party's performance may be . . . by depriving [the third party] of the means of performance." *Id.*

Indiana courts have addressed tortious interference with contract claims in circumstances similar to those alleged in the Complaint. In *World Production, Inc. v. Capital Improvement Board of Marion County*, the defendant contracted with the plaintiff for the use of the Hoosier Dome. 514 N.E.2d 634, 634-635 (Ind. Ct. App. 1987), *trans. denied*. When the defendant breached his contract by failing to make the Hoosier Dome available, the plaintiff filed a tortious interference with contract claim, asserting the defendant denied it the means to honor the plaintiff's ancillary contracts that were contingent upon the use of the Hoosier Dome. *Id.*

The *World Production* plaintiff was denied tortious interference with contract recovery solely because a tortious interference with contract action is not available to the party in breach. *Id.* at 635. However, in so holding, *World Production* noted that, under such circumstances, the non-breaching party had an action for interference against the party that deprived the plaintiff of the use of the Hoosier Dome. *Id.*

38

Because the Plaintiffs at bar are the equivalent to *World Productions'* non-breaching parties, *World Production's* notation supports the Plaintiffs' tortious interference with contract claim. *See also Coca-Cola*, 806 N.E.2d at 41 (successful tortious interference with contract claim where *Coca-Cola* threatened to deprive means of performance by refusing to allow distributors to bottle Coke). *World Production* and *Coca-Cola* demonstrate Indiana law is consistent with Restatement (Second) of Torts and tortious interference claims may properly allege interference with the means of performance.[24] Moreover, the Complaint's notation that the Defendants "intentionally interfered with said contract by arranging for the drivers with Michelin Tires not to race" constitutes inducement. *Sec. Am. Compl.* ¶ 92.

The Plaintiffs properly claim the existence of an enforceable contract, the Plaintiffs' allegation of reasonable alternatives to not racing is sufficient to preserve the absence of justification element, and the Complaint was pled with sufficient specificity to place the Defendants on notice of their claims.

## VIII. Unjust Enrichment

IMS contends the Plaintiffs' unjust enrichment cause of action must be dismissed because the tickets constitute an express agreement between IMS and the Plaintiffs and the Plaintiffs may not claim a remedy at chancery when there exists a remedy at law. *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 8-9. However, as discussed in the promissory estoppel section of the Plaintiffs' memorandum, the Plaintiffs are merely advancing their equitable claims in the alternative.

---

[24] The Michelin Teams also claim the economic loss doctrine bars tortious interference with contract recovery because of the economic nature of the Plaintiffs' damages. *Seven Def. Racing Teams Mem. in Supp. of Mot. to Dismiss* at 22. Surely, the Michelin Teams cannot be serious. Damages arising from a breach of a contract—as in tortious interference with contract—are almost always economic.

IX.  Damages

IMS asserts contract law limits the Plaintiffs' damages to the USGP ticket purchase price and the Plaintiffs may not recover their transportation, lodging, and food expenses. IMS only asserts "contract law" limits the Plaintiffs' damages and relies solely upon cases discussing contractual remedies. *Indianapolis Motor Speedway Mem in Supp. of Mot. to Dismiss* at 9-14. As such, the issue of the Plaintiffs' right to recover damages pursuant to their tort or equitable theories is not challenged by IMS.

A. *The self-contradictory nature of IMS' assertion*

IMS asserts the Plaintiffs would have incurred travel, parking, lodging, and meal expenses even if the Defendants had provided a race as promised and, therefore, the Plaintiffs' recovery must be limited to the cost of the 2005 USGP ticket price. *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 9.  However, meaningful reflection on IMS' claim reveals it is blatantly self-contradictory.

If the Plaintiffs may not recover for their travel, lodging, and meal expenses because they would have incurred such expenses even if the Defendants had fulfilled their contract, why would the Plaintiffs be able to recover the cost of the ticket?  Like travel, lodging, and meal expenses, the price of the 2005 USGP ticket would be the same regardless if the Defendants had fulfilled their contractual obligations.  If IMS' claim that there can be no recovery for expenses incurred in furtherance of the contract's fulfillment were adopted, illogically, there could be <u>no</u> damages for the Defendants' breach.  Such a position is untenable and, as discussed in the next subsection, unsupported by law.

IMS' statements supporting this position are equally implausible.  For instance, IMS states, "Plaintiffs' claims amount to a request that this Court award each of them . . . an 'all expenses paid' trip to the Speedway of Indianapolis." *Indianapolis Motor Speedway Mem. in*

*Supp. of Mot. to Dismiss* at 10.  As beautiful as Speedway, Indiana is in late June, IMS' assertion mischaracterizes the value of a purposeless visit to Speedway sans the 2005 USGP.  IMS' claimed "benefits" of airfare, lodging, and in-town transportation are the unpleasant aspects of travel that people tolerate—and begrudgingly pay—to fulfill their reason for traveling, not an intrinsic good that confers a measurable benefit.

IMS also asserts contract law is not suited for calculating the damages alleged by the Plaintiffs.  *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 13.  To the extent the Court wishes to address this issue now, such damages may be recovered when they are substantially related to the breach and foreseeable.  *See INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003), *trans. denied* (citing *Wiese-GMC, Inc. v. Wells*, 626 N.E.2d 595, 597 (Ind. Ct. App. 1993), *trans. denied*); *Park State Bank v. Akers*, 659 N.E.2d 1031, 1034-35 (Ind. 1995).  It is premature to consider this issue, as discovery will resolve any factual issues as to whether travel and lodging are substantially related and foreseeable.  However, it is self-evident that one cannot see a race in Indianapolis without traveling there and having a place to stay.

B.  *IMS' position is contradicted by case law*

IMS asserts the Plaintiffs' claimed damages are not recoverable because such damages would place the Plaintiffs "in a better position" than they would be in if the Defendants had performed their contract.  *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 12 (citing *Irving v. Ort*, 146 N.E.2d 107, 110 (Ind. Ct. App. 1957), *trans denied*).  However, IMS' argument is based upon its demonstrably-false assertion that a trip to a non-event confers a benefit.[25]  The Plaintiffs assert their expenses must be awarded in order to avoid permitting them

---

[25] Unlike airline travel, inter-city travel, and lodging, some of the Plaintiffs' expenses confer an inherent benefit. For instance, the enjoyment of a beverage has inherent worth.  The Plaintiffs concede such expenses are not recoverable.

to remain in a worse position than they would have been in had their contract not been breached. IMS' assertion that awarding the Plaintiffs such damages would place them in a better position ignores the considerable detriment of spending money to travel great distances to see a non-event.

Moreover, contract law clearly allows a party to recover damages spent in furtherance of a contract ending in breach. *See Babson Bros. Co. v. Tipstar Corp.*, 446 N.E.2d 11, 15 (Ind. Ct. App. 1983) (contractual recovery includes damages incurred in furtherance of the contract); *see also* Restatement (Second) Contracts § 344(b).

Even if the Defendants present facts indicating the Plaintiffs' travel expenses are not related exclusively to the race, such damages are nonetheless recoverable. "Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made and are generally limited to reasonably foreseeable economic losses." *Berkel & Co. Contractors, Inc. v. Palm & Assoc., Inc.*, 814 N.E.2d 649, 659 (Ind. Ct. App. 2004).

The Plaintiffs will be able to proffer evidence that demonstrates that the expenses complained of by IMS were the natural and probable consequence of attending an international event, such as the 2005 USPG. The Defendants' acts of targeting an international audience with solicitations to attend the 2005 USGP render travel and lodging expenses related to accepting the Defendants' solicitations the natural and probable consequence of attending the race. Furthermore, the Plaintiffs will present evidence demonstrating the Defendants were well aware of the demographics of those likely to attend the 2005 USGP, rendering the expenses the Plaintiffs incurred foreseeable.[26]

---

[26] IMS also notes the Plaintiffs may not recover travel and lodging expenses because they may have been in Indianapolis for reasons in addition to the race. *Indianapolis Motor Speedway Mem. in Supp. of Mot. to Dismiss* at 14. However, any additional reasons that the Plaintiffs allegedly had for being in town will not bar their recovery as

Finally, many authorities have indicated a ticket holder may collect travel expenses in the event the contract arising under the ticket is breached. *See* Am. Jur.2d Entm't & Sports Law § 48 (damages are limited to the amount paid for the ticket and other legal or pecuniary damages suffered as a direct and proximate result of the breach); *Depez*, 1995 WL 547094 *2 (the only remedy of the ticket holder is an action for breach of the contract, and his damages are limited to the price of the ticket and any expenses incident to the purchase of the ticket and attending the place of amusement); *Rodriguez*, 182 S.W.2d at 826 (may recover price of ticket and expenses incident to purchase of the ticket and attending the place of amusement); *Jordan*, 160 S.W.2d at 276; *Cobb*, 136 S.E.2d at 677 (the measure of damages is limited to the amount paid for the ticket and the necessary expenses incurred in attending the performance); *Vogel*, 22 So.2d at 190 (the proprietor is liable for all contractual damages which the purchaser sustained); *De La Ysla*, 26 P.2d at 820 (the ticket holder's remedy is the amount paid for the ticket and other legal and pecuniary damages sustained by him as a direct and proximate result of the breach); *Boswell*, 185 S.W. at 692-93 (including any expenses incident to the purchase of the ticket and attending the place of amusement); *Shubert*, 83 A. at 369 (defendant admitting plaintiff could recover consequential damages).[27]

Although the above-cited cases clearly support the Plaintiffs' position as to damages, the most important factor for the Court to remember is that a ticket is a contract that supports *in personam* recovery. *See Ticketron*, 342 F.Supp. 922, 925 (D.C. Pa. 1972) ("It is true [that a ticket] constitutes a contract between the proprietor and the purchaser of the ticket, and whatever

---

the Plaintiffs only need prove that the 2005 USGP was a "substantial factor" leading to their expenses. *Akers*, 659 N.E.2d at 1034-35.

[27] There are some cases that fail to note that a ticket holder may recover damages other than the cost of the ticket. *See Sweeney*, 2005 WL 550344 *2. However, given that there typically are not a great deal of foreseeable ancillary costs associated with attending the local movie theatre—and fewer still worth the expenditure of litigation resources—it is hardly surprising that such cases fail to mention a Plaintiffs' right to recover ancillary expenses. *See Finnesey v. Seatle Baseball Club*, 122 Wash. 276, 281, 210 P.679, 681 (1922) (the purchase price of the ticket was "the only recoverable item of damage *shown by proof here*) (emphasis added).

contractual duties grew out of such relation the proprietor is bound to respond in damages for breach of contract.").  An action in contract allows for contractual damages.  As such, the issue of the Plaintiffs' recovery of their travel and other expenses is one of fact not law and is not a proper subject of a motion to dismiss.

## Conclusion

The Defendants make much ado about their contention that the Plaintiffs may not base their recovery on failed subjective expectations associated with a sporting event.  However, the Plaintiffs are not basing their recovery upon subjective expectations.  Rather, the Plaintiffs base their recovery upon specific and objectively verifiable expectations conveyed by the Defendants.

The Defendants have presented this Court with no rule of law indicating the Plaintiffs and the Defendants are not free to contract.  In the absence of such a rule of law, an allegation of specific and objectively verifiable promises in exchange for consideration is sufficient to create a contractual or quasi-contractual relationship upon which the Plaintiffs may base their recovery. For this reason and all of the other reasons asserted in this Memorandum, the Plaintiffs have stated viable causes of action.  The Defendants' Motion to Dismiss must be denied, and this case must be set for trial to resolve the many factual questions inherent in the Defendants' Motion to Dismiss.

Respectfully submitted:

 s/ Henry J. Price
Henry J. Price (#5822-49)
William N. Riley (#14941-49)
Gabriel A. Hawkins (#23449-53)
**PRICE WAICUKAUSKI RILEY & DEBROTA, LLC**
301 Massachusetts Avenue
Indianapolis, IN  46204
Telephone: (317) 633-8787
FAX: (317) 633-8797
Email: hprice@price-law.com
Email: wriley@price-law.com
Email: ghawkins@price-law.com
epavlack@cohenandmalad.com

Irwin B. Levin (#8786-49)
Richard E. Shevitz (#12007-49)
Scott Gilchrist (#16729-53)
Jeff S. Gibson (#22362-49)
Eric S. Pavlack (#21773-49)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
sgilchrist@cohenandmalad.com
jgibson@cohenandmalad.com

William Bock, III (#14777-49)
James A. Knauer (#5436-49)
Reynolds B. Brissenden (#19989-49)
Kurtis Allen Marshall (#23667-45)
**KROGER, GARDIS & REGAS, LLP**
111 Monument Circle, Suite 900
Indianapolis, IN  46204
Telephone: (317) 692-9000
Facsimile: (317) 264-6824
wb@kgrlaw.com
jak@kgrlaw.com
rbb@kgrlaw.com
kam@kgrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on November 1, 2005, a copy of the foregoing *Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Other Plaintiffs Counsel:**

Peter E. Borkon
pborkon@schubert-reed.com

Deborah J. Caruso
dcaruso@daleeke.com

KC Cohen
kc@esoft-legal.com

Larry D. Drury
ldrurylaw@aol.com

Michael B. Hyman
mbhyman@muchshelist.com

Robert C. Schubert
rschubert@schubert-reed.com

Robert J. Schuckit
rschuckit@schuckitlaw.com

Keith S. Shindler
keith@shindlerlaw.com

David G. Symons
dgsymons@earthlink.net

Dylan A. Vigh
dvighlaw@gmail.com

**Defendants Counsel:**

Matthew Gordon Allison
matthew.g.allison@bakernet.com

Stephen E. Arthur
sarthur@h-mlaw.com

Raymond A. Basile
basile@h-mlaw.com

James McGinnis Boyers
jboyers@woodmaclaw.com

Lawrence F. Carnevale
carnevale@clm.com

Thomas Anthony Doyle
thomas.a.doyle@bakernet.com

James J. Dries
james.j.dries@bakernet.com

Robert L. Gauss
gauss@icemiller.com

Steven Handler
shandler@mwe.com

Peter W. Herzog , III
pwherzog@bryancave.com

Offer Korin
okorin@katzkorin.com

David M. Mattingly
david.mattingly@icemiller.com

Curtis W. McCauley
mccauley@icemiller.com

**Defendants Counsel: (cont.)**

John K. McDavid
jmcdavid@locke.com

Derek J. Meyer
dmeyer@mwe.com

Shon Morgan
shonmorgan@quinnemanuel.com

Stephanie A. Petersmarck
spetersmarck@mwe.com

Bernard Lowell Pylitt
bpylitt@katzkorin.com

Hugh E. Reynolds, Jr.
hreynolds@locke.com

Mark James Richards
mark.richards@icemiller.com

James W. Riley, Jr.
jriley@rbelaw.com

Bettina J. Strauss
bjstrauss@bryancave.com

A. William Urquhart
billurquhart@quinnemanuel.com

Scott Watson
scottwatson@quinnemanuel.com

William P. Wooden
wwooden@woodmaclaw.com

Sally F. Zweig
szweig@katzkorin.com

s/Henry J. Price