UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: 2005 UNITED STATES GRAND PRIX ) Master Docket No. 1:05-cv-00914-SEB-VSS
                                     )

**SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
IMS'S MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT**

**PRELIMINARY STATEMENT**

IMS joins with the other Defendants in the Joint Reply Brief and submits this Supplemental Reply Brief to address issues specific to IMS.

**ARGUMENT**

I. PAROL EVIDENCE CANNOT BE USED IN EFFECT TO WRITE ADDITIONAL CONTRACT TERMS ON THE TICKET THAT ARE INCONSISTENT WITH THE EXPRESS TERM STATING THAT THERE WILL BE "NO REFUND."

    A. THE TERMS OF THE TICKET PRECLUDE THE REFUND SOUGHT BY PLAINTIFFS.

Plaintiffs devote the initial section of their Response to citing cases generally holding that notice pleading does not require them to plead facts that would establish every element of each of their claims. (*See* Plaintiffs' Response at 5-6.) Plaintiffs have missed the thrust of IMS's Motion to Dismiss. IMS is not arguing that Plaintiffs' twenty-page Complaint fails to state a claim for lack of necessary verbiage. To the contrary, what IMS is arguing, as indicated in its Opening Memorandum, is that the facts alleged in Plaintiffs' Complaint conclusively demonstrate that Plaintiffs have no viable claims against IMS.

In particular, Plaintiffs allege that a contract existed between them and IMS. The existence and the terms of that contract are evidenced by the ticket each Plaintiff purchased and used to gain entry to the track on the day of the race. The written terms printed on the

ticket are not in dispute. Because those terms are inconsistent with Plaintiffs' demand for a refund based upon their disappointed expectations, Plaintiffs' claim for breach of contract fails as a matter of law.[1]

This lawsuit boils down to a demand for one very large "refund" on behalf of the thousands of spectators who attended the race, because -- for some fans -- the race was not all that they expected it to be. Plaintiffs want their money back for their tickets, they want their money back for their travel costs, they want their money back for the food they consumed, and they want their money back apparently for everything else they spent in connection with visiting Indianapolis and attending the race. However, on the face of the ticket issued to each and every person who attended the race the words "NO REFUND" appear prominently in bold type on a background that contrasts with the rest of the ticket. The ticket unambiguously states that there will be "NO REFUND." The term "NO REFUND" cannot be reconciled with Plaintiffs' demand for their money back from IMS or from the other Defendants because the race did not live up to their expectations.

Because the terms expressed on the ticket itself reveals that Plaintiffs are not entitled to any sort of refund, the Complaint should be dismissed. On a motion to dismiss, the terms of a contract control, not the pleader's characterization of the contract:

> And while we accept well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir.1999), to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls. See *Rosenblum*, 299 F.3d at 661 ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.") (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)). "[A]

---

[1] IMS attached a copy of the 2005 USGP ticket to its Opening Brief, noting that the Court can consider documents, such as the ticket, that are central to Plaintiffs' claims without converting the motion to dismiss into one for summary judgment. *See* IMS's Opening Brief at 3 n. 1.

plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Ogden Martin*, 179 F.3d at 529 (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir.1992)).

*Centers v. Centennial Mortg., Inc.,* 398 F.3d 930, 933 (7th Cir. 2005). The terms of contract as expressed on the ticket control here, and those terms trump the wishful characterizations found in Plaintiffs' Complaint.

Plaintiffs cannot create a question of fact as to purported "oral" terms of the alleged contract. In their Response, Plaintiffs argue that the alleged contract is part written and part oral. "The Plaintiffs assert the terms of their contract... were partially derived from oral representations." (Response at 8.) However, it is hornbook law that parol evidence cannot be used to contradict the written terms of a contract.

> The principle that parol evidence may add terms to an incomplete agreement applies logically where the written agreement constitutes only a "partial integration" of the parties' whole agreement—that is, where an incomplete writing is adopted by the parties as the expression of that portion of their larger parol agreement to which it relates. But if a contract is even partially reduced to writing, the written portion is no more subject to contradiction by parol than the entire contract would be had it been wholly reduced to writing. Thus, if a contract is not fully integrated, parol evidence of additional contract terms may be admitted to complete the agreement, but only to the extent that the additional terms do not contradict the written terms of the agreement.

11 WILLISTON ON CONTRACTS § 33:20 (4th ed.) (citations omitted).

Likewise, Plaintiffs cannot create a question of fact as to purported terms of the alleged contract by referencing "past performance." Indeed, the case cited by Plaintiffs in support of looking to parol evidence "past performance" to ascertain the terms of a contract, *Bain v. Board of Trustees of Starke Memorial Hosp.*, 550 N.E.2d 106 (Ind. Ct. App. 1990), specifically holds that such parol evidence is trumped by the written terms of a contract.

> When interpreting a contract, the "cardinal rule" is to determine the parties' intent from their present and past business dealings. However, although the surrounding circumstances at the time of contracting are considered when

determining the intent of the parties, "[t]he court does not examine hidden intentions secreted in the heart of a person, but rather examines the final expression" of their intent. *Id.* In an express contract, such as that before the court, the intent of the parties is evidenced by spoken words or by a writing.

*Id.* at 110 (citations omitted).

In their Response, Plaintiffs essentially ask the Court to write additional terms on the ticket based on their selective and self-serving citation in the Complaint to parol evidence. However, because parol evidence cannot be used to contradict or override the express terms of a contract, the Court should decline Plaintiffs' request. The Court should not, as Plaintiffs would have it, write an additional term on the ticket specifying that Plaintiffs get their money back if the race does not have twenty (20) cars that either start, compete, or finish the race, or if the race does not otherwise meet some other alleged criteria. Any such additional term would be plainly inconsistent with the statement "NO REFUND" that appears prominently on the face of the ticket, as well as the exculpatory language on the back of the ticket[2], and as a matter of law, such an additional term cannot be implied as part of the contract with IMS.

> B. THE TICKET PROVIDES FOR NO MORE THAN A REVOCABLE LICENSE TO ENTER THE TRACK ON THE DAY OF THE RACE AND TO WITNESS THE EVENTS THAT TRANSPIRE, AND NO ADDITIONAL TERMS SHOULD BE IMPLIED THAT ARE INCONSISTENT WITH THE EXPRESS STATEMENT THAT THERE WILL BE "NO REFUND."

The courts uniformly hold, based on case law extending back well over one hundred years, that a ticket to a sporting event or other performance creates no more than a revocable license to enter the facility and witness the event.[3] "The purchase of a ticket to a sports or entertainment event typically creates nothing more than a revocable license." *Yarde Metals, Inc. v. New England Patriots Limited Partnership*, 843 N.E.2d 1233, (Mass. App. Ct. 2005). "It is generally recognized that an admission ticket is a revocable license to witness a

---

[2] The exculpatory language on the back of the ticket is discussed in greater depth in Defendants' Joint Brief.

performance or attraction. If the license is revoked, the license holder's recovery is limited to the purchase price." *Sweeney v. United Artists Theater Circuit, Inc.*, 119 P.3d 538, 540 (Colo. Ct. App. 2005). "The sale of a ticket of admission to a concert is only a revocable license to the purchaser to enter the building in which it is given, and to attend the performance." *Burton v. Scherpf*, 83 Mass. 133 at 133, 1861 WL 4405 at *1 (Mass. 1861).

Because the purchase of a ticket typically confers only the right to enter the premises and witness a performance, the courts will decline to read additional contractual rights into the parties' bargain. For example, in *Yarde*, the plaintiff, Yarde, held season tickets to the New England Patriots for twenty years. After a person using the plaintiff's season tickets was expelled from Gillette Stadium for throwing bottles in the seating section, the Patriots terminated Yarde's season ticket privileges, and offered a refund of their value. *Yarde*, 834 N.E.2d at 1234-35. Yarde disputed the Patriots' version of the facts surrounding the ejection, and after the Patriots refused to change their position on termination of the plaintiffs' season tickets, he filed a lawsuit. *Id.*

The plaintiff's claims in *Yarde* resembled those asserted by Plaintiffs in this case. Yarde claimed that his season tickets included an implied "contractual right to renew its season tickets annually" and that the Patriots were equitably estopped "from contradicting the expectation of the plaintiff Yarde which the Patriots have created." *Yarde*, 834 N.E.2d at 657.

The trial court dismissed Yarde's lawsuit for failure to state a claim, and Yarde appealed. On appeal, the Appeals Court of Massachusetts affirmed dismissal of the complaint. The court held that the express language on the ticket contradicted any implied right to renewal of the season tickets. "Despite the fact that the parties themselves are not precluded

---

[3] Each USGP here ticket states on its back: "IMS reserves the right to revoke this ticket by refunding the printed purchase price." (IMS's Opening Brief, Ex. A.)

- 5 -

from contracting for renewal rights, Yarde's allegations (which, for purposes of the motion, we assume it would be able to prove) would not justify implying a contractual right that goes beyond any previously recognized in other jurisdictions and that would contradict the explicit language on the ticket." *Yarde*, 834 N.E.2d at 660. Likewise, in this case, Plaintiffs' claims for an implied contractual right to a refund if the race did not satisfy their own subjective preferences goes beyond any right previously recognized by the courts and would contradict the explicit language on the ticket stating that there would be "NO REFUND."

The Appeals Court of Massachusetts also rejected Yarde's estoppel argument. A party who asserts an estoppel must show that its reliance on the other party's representations was reasonable. The court held, as a matter of law, that because the express terms of the ticket contradicted the alleged representations, Yarde's alleged reliance was <u>not</u> reasonable. "Given the explicit language printed on the back of the ticket and included in the promotional materials, Yarde's reliance on any purported conflicting representation was unwarranted." *Yarde*, 834 N.E.2d at 661-62. Here, Plaintiffs' purported reliance on alleged promises that Plaintiffs would enjoy the race that took place was likewise unwarranted, in light of the ticket's express disclaimer of "NO REFUND."

Other courts have been equally reluctant to read additional contractual rights into the relationship between the seller and the buyer of tickets to sporting or other events. "When plaintiffs voluntarily purchased tickets to the football games for the price printed on the ticket, they purchased a revocable license to attend the event. This is well-established law in Michigan and any assertion of a contractual right arising merely from the purchase of a ticket to attend such an event is disingenuous." *Percha v. Detroit Lions, Inc.*, 2003 WL 23018757 at *1 (Mich. Ct. App. 2003) (citations omitted). "Just because a team has played for years in a

particular location and has always done something in a particular way does not mean that it must always do so." *Charpentier v. Los Angeles Rams Football Co.*, 89 Cal. Rptr. 2d 115 (Cal. Ct. App. 1999) (holding that there was no implied contract between the team and a season ticket holder not to move the franchise to another city). "[A] ticket is mere evidence of payment of an admission fee, and carries with it no obligation of the owner to do anything." *Sells v. Six Flags Over Texas, Inc.*, 1997 WL 527320 at * 5 (N.D. Tex. 1997) (citing *Jordan v. Concho Theatres, Inc.*, 160 S.W.2d 275 (Tex. Civ. App. 1941)) (dismissing on summary judgment claims for breach of express or implied contract). "[T]o the extent that appellant sought a refund for his 1995 [Cleveland Browns] tickets based on the poor performance by the team after the November 6, 1996 announcement [of the franchise's planned relocation to Baltimore], we refuse to recognize such a cause of action. *Stern v. Cleveland Browns Football Club, Inc.*, 1996 WL 761163 at *6 (Ohio Ct. App. 1996) (holding that "each Browns' ticket is a revocable license which does not, by itself, grant the ticket holder any property or contractual rights").[4]

Plaintiffs make a half-hearted challenge to the "NO REFUND" provision of the ticket in a footnote. (*See* Response at 25 n. 17.) In the footnote, Plaintiffs mischaracterize IMS's position. IMS does not suggest that it has "*carte blanche* authority to disavow its promises." (*Id.*) As noted by all defendants in their initial briefs, and as discussed in more detail above, under the tickets IMS granted a revocable license to the ticket holders to enter the track and witness the event. If IMS revoked that license, then by the express terms of the ticket, IMS

---

[4] It bears noting that, in *Stern*, the Browns' Director of Operations testified "that all Browns' tickets state that they are a 'REVOCABLE LICENSE' and that the Browns have never honored demands for refunds from disgruntled fans concerning the performance of the team." Given that all the USGP tickets state that IMS will provide "NO REFUND," this Court should not create, contrary to all of applicable case law, a new right for disgruntled racing fans, such as Plaintiffs here, to obtain a refund if they are not happy with the performance of the race teams.

would refund the purchase price: "IMS reserves the right to revoke this ticket by refunding the printed purchase price." (*See* Back of Ticket, IMS's Opening Brief, Ex. A.) Thus, the ticket comports with the well-established case law cited by IMS and the other Defendants. Other than admission to the track, under a revocable license, on the day of the event to witness the event that takes place, IMS made no other promises to ticket holders as to the character or quality of the race, as indicated by its statement in bold on the face of the ticket that it would give "NO REFUND."

The written portion of the contract evidenced by the ticket cannot be contradicted by any alleged "oral representations" or by any other parol evidence such as the terms of other agreements to which Plaintiffs were not parties, or by any past performance. Plaintiffs cannot use such parol evidence to contradict the written terms of the contract evidenced by the ticket, including the language providing "NO REFUND." Therefore, Count I of Plaintiffs' Complaint, demanding a refund, is without merit, as a matter of law, and it should be dismissed.

II.  PLAINTIFFS HAVE CONCEDED THAT IMS HAS NOT BREACHED ANY CONTRACT FOR WHICH PLAINTIFF WOULD HAVE ANY CLAIM IN THIS ACTION AS A THIRD-PARTY BENEFICIARY.

In its Opening Brief, IMS noted that the only contract between it and any of the other defendants is the contract ("IMS-FOA Agreement") between IMS and Formula One Administration, Ltd. ("FOA"), and the Complaint makes no factual allegations showing a breach of that contract. IMS has produced a copy of the IMS-FOA Agreement to Plaintiffs' counsel. The only terms of the IMS-FOA Agreement that could even arguably have application to Plaintiffs' claim for third-party beneficiary status involve IMS's providing a venue for the event.

However, IMS's duties with respect to providing a venue are unrelated to Count II of Plaintiffs' Complaint, which is premised on the following allegation:

> Plaintiffs are third-party beneficiaries to such contracts and to all warranties associated with such contracts to the extent that such contracts are meant to control and determine: (i) the proper operation of the Race; (ii) application of the rules of Defendants and the International Sporting Code; and (iii) the obligations of Michelin to provide safe and suitable tires for the Formula One automobiles entered in this Race, all so that the race could have been held in the manner promoted and represented by Defendants to the Plaintiffs and members of the class.

(Complaint ¶ 81.) Now that Plaintiffs have had an opportunity to review the IMS-FOA Agreement, Plaintiffs' silence in their Response amounts to a concession that the IMS-FOA Agreement has nothing to do with the operation of the race, with the rules governing the race, with the provision of tires or other equipment, or with any other aspect of Plaintiffs' claims for their alleged disappointment with the race.

A copy of the IMS-FOA Agreement is submitted as Exhibit 1 to this Brief under seal. As noted in IMS's Opening Brief, the Court may properly consider the terms of the IMS-FOA Agreement in ruling on the Motion to Dismiss. Because the Complaint does not allege a

breach of, or otherwise relate to, the terms of the IMS-FOA Agreement, Count II should be dismissed against IMS as a matter of law.

III. COUNT III OF PLAINTIFFS' COMPLAINT (PROMISSORY ESTOPPEL) AND COUNT VI OF PLAINTIFFS' COMPLAINT (UNJUST ENRICHMENT) SHOULD BE DISMISSED BECAUSE PLAINTIFFS' HAVE ENTERED INTO EXPRESS OR IMPLIED AGREEMENTS WITH IMS.

As IMS demonstrated in its Opening Brief, and as Plaintiffs all but concede in their Response, Plaintiffs have no claim against IMS for promissory estoppel or for unjust enrichment because express agreements existed between Plaintiffs and IMS, and neither theory applies when an express or implied agreement exists between the parties. "Promissory estoppel is not a doctrine designed to give a party ... a second bite at the apple in the event it fails to prove a breach of contract." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 870 (7th Cir. 1999) (quoting *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir.1984)). Likewise, where there is an express or implied agreement, there is no claim for unjust enrichment. *DiMizio v. Romo*, 756 N.E.2d 1018, (Ind. Ct. App. 2001).

Plaintiffs make only one argument in response. They assert that they are entitled to plead claims in the alternative, but nothing in Plaintiffs' Complaint suggests that these are actually intended to be claims in the alternative to their primary claim for breach of contract. Indeed, Plaintiff's claim for unjust enrichment (Count VI) cannot possibly have been pleaded in the alternative because there is no other claim in the Complaint seeking recovery of money paid for "parking and other associated costs, including concessions." (Complaint ¶ 96.) As noted in IMS's Opening Brief, Count VI fails as a matter of law because the transactions to which it applies, such as parking and concessions, are all transactions that involve express or implied agreements. Plaintiffs have not argued in response to the contrary, and so have effectively conceded that Count VI should be dismissed.

In any case, the theory of pleading in the alternative does not save Counts III and VI from dismissal. Where the facts alleged by the plaintiff clearly demonstrate the existence of an express or implied agreement, claims for unjust enrichment are promissory estoppel are subject to dismissal, even if pleaded in the alternative. In *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F.Supp.2d 829 (S.D. Ind. 2005), the Court dismissed as "unwanted surplusage" and "superfluous" claims for promissory estoppel and for unjust enrichment where express contracts were alleged. *Id.* at 848-49. In *Strojmaterialintorg v. Russian American Commercial Corp.*, 815 F. Supp. 103 (E.D.N.Y. 1993), the court dismissed an alternative claim for unjust enrichment where "plaintiff's unjust enrichment claim is based directly on the legal duties governed by the written contract." *Id.* at 106. Because the complaint clearly demonstrates that an express contract exists, Plaintiffs' claims for promissory estoppel or unjust enrichment, even if they have been pleaded in the alternative, should be dismissed.

An express agreement is clearly alleged between IMS and the ticket holders covering the subject matter of Plaintiffs' promissory estoppel claim. Likewise, express or implied agreements existed as to the subject matter of Plaintiffs' unjust enrichment claims. Therefore, Counts III and VI fail as a matter of law and should be dismissed.

IV. PLAINTIFFS' CLAIM FOR DAMAGES SHOULD BE DISMISSED TO THE EXTENT THAT PLAINTIFFS SEEK TO RECOVER EXPENSES THAT THEY WOULD HAVE INCURRED ABSENT ANY ALLEGED BREACH OF CONTRACT.

Plaintiffs' Response on the issue of damages misses the mark entirely. Plaintiffs do not respond to IMS's demonstration that refunding the ticket price and refunding the travel costs and other expenses would put Plaintiffs in a better position than if the alleged breach had not occurred. Even if one assumes for the sake of argument that Plaintiffs are right and the value

of witnessing the race that transpired was zero and they received no other value from being admitted to the track and witnessing the other events that took place on the day of the race, then the most they could recover would be a refund for the full price they paid for their tickets. *See*, *e.g.*, *Pierce v. Drees*, 607 N.E.2d 726, 729 (Ind. Ct. App. 1993) (holding that damages where defendant contractor did not construct a garage in conformance to agreed specifications are equal to the difference between fair market value of work as performed and fair market value of work if it had met specifications). Plaintiffs would have had to pay for their own travel costs even if the race had met their subjective expectations. Thus, the full price of the ticket would be the most that Plaintiffs could recover in this case.

Plaintiffs suggest that they ought to be entitled to recover their expenses because such expenses where "incurred in furtherance of the contract's fulfillment." (Response at 40.) However, the contractual exchange between IMS and the Plaintiffs was admission to the track in exchange for the ticket price. Plaintiffs did not have to come to Indianapolis to "fulfill" the contract. They had no obligation to attend at all, and IMS would have no claim against any ticket holder who failed to attend the race.

Plaintiffs inexplicably cite *Babson Bros. Co. v. Tipstar Corp.*, 446 N.E.2d 11 (Ind. Ct. App. 1983) for the proposition that "contract law clearly allows a party to recover damages spent in furtherance of a contract ending in breach." (Plaintiffs' Brief at 42.) *Babson* contains no such holding. For one thing, *Babson* was not a case for breach of contract. It was a case in which the plaintiff sought "loss of profits due to [the defendant's] negligent installation of a milking parlor." *Babson*, 446 N.E.2d at 15. In fact, the Court in *Babson* noted that the plaintiff's claim for breach of contract had been dismissed and was not an issue on appeal. *Id.* at n. 2.

The cases cited by Plaintiffs in their Response actually reinforce the conclusion that Plaintiffs cannot recover expenses that they would have incurred even if the race had met their subjective expectations. For example, Plaintiffs cite *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003) supposedly for the proposition that "damages may be recovered when they are substantially related to the breach and foreseeable." (Response at 41.) Actually, what the Court in *Lee* said was this: "A party injured by a breach of contract may recover the benefit of the bargain. The damages claimed for such a breach must be the natural, foreseeable and *proximate consequence* of the breach. While an aggrieved party must be compensated, he or she should not be placed in any better position." *Lee*, 784 N.E.2d at 577 (emphasis added) (citations omitted).

Proximate cause requires, at a minimum, that the expenses would not have been incurred "but for" IMS's alleged breach. *R.R. Donnelley & Sons Co. v. N. Texas Steel Co., Inc.*, 752 N.E.2d 112, 140 (Ind. Ct. App. 2001). There can be no dispute but that Plaintiffs would have incurred the expenses they seek to recover even if the race had been of the quality and character that Plaintiffs desired.[5]

Plaintiffs also cite the holding in *Berkel & Co. Contractors, Inc. v. Palm & Assoc., Inc.*, 814 N.E.2d 649 (Ind. Ct. App. 2005) that consequential damages are available where "the non-breaching party's loss flows naturally and probably from the breach." *Id.* at 658. The alleged loss at issue here, *i.e.*, the travel and other associated costs of attending the race, does not flow "naturally and probably" from the alleged breach, because it does not flow at all from

---

[5] In its Opening Brief, IMS noted that all sorts of difficult issues would arise in this case if Plaintiffs could recover damages based on expenses that had no causal relationship with the alleged breach. Plaintiffs' answer is to propose a new standard for deciding what expenses can be recovered as damages in this case: "inherent worth." Plaintiffs concede that consuming a beverage "has inherent worth" and is therefore "not recoverable." (Response at 41 n. 25.) The same would be true of food, so Plaintiffs ought to amend the damage estimates in their initial disclosures to eliminate this line item for dining from their claims. Plaintiffs' proposal of this new

the alleged breach. Many of these expenses, such as plane tickets, would have been incurred well before the race even took place, and all of these expenses would have been incurred regardless of what happened at the race. Plaintiffs would have incurred the same costs even if the race had unfolded as Plaintiffs allegedly hoped it would. In fact, Plaintiffs admit in their Response that the costs they hope to recover are just the costs associated with attending "an international event, such as the 2005 USGP," regardless of any breach. (Response at 42.) Because Plaintiffs admit that these costs have no causal relationship with the breach, they cannot be recovered as consequential damages or any other kind of contract damages in this case.

The cases cited by Plaintiffs at page 43 of their Response as to the possibility of recovering damages beyond the ticket price do not support Plaintiffs' claim for the recovery of alleged "consequential damages" that were not proximately caused by the breach. Furthermore, they are all distinguishable because the alleged wrongdoing was not a breach of contract based on the failure of the performance witnessed by the plaintiffs to live up to expectations, but was instead the proprietor's refusal (usually for race-related or other discriminatory reasons) to admit the plaintiffs at all or to seat the plaintiffs in a particular section, the proprietor's uncivil treatment of the plaintiffs, or the proprietor's expulsion of the plaintiffs from the premises. *See Deprez v. Brewer*, 1995 WL 547094 (Tex. Ct. App. 1995) (where plaintiff was removed from a concert); *Terrell Wells Swimming Pool v. Rodriguez*, 182 S.W.2d 824 (Tex. Civ. App. 1944) (where defendant refused to admit Hispanic patrons to a swimming pool); *Jordan v. Concho Theatres, Inc.*, 160 S.W.2d 275 (Tex. Civ. App. 1941) (where defendant refused to admit plaintiff's wife to a theater); *State v. Cobb*, 136 S.E.2d 674

---

standard begs the question what other expenses have "inherent worth." The Court should reject Plaintiffs' newly invented "inherited worth" and stick with the standard applied in the case law: "proximate causation."

(N.C. 1964) (where African-American patrons were expelled from a theater when they refused to move to the balcony); *Vogel v. Saenger Theaters, Inc.*, 207 So.2d 189 (La. 1945) (where defendant ejected a handicapped patron from a theater); *De La Ysla v. Publix Theaters Corp.*, 26 P.2d 818 (Utah 1993) (where defendant denied lower floor seating to Filipino theater ticket holders); *Boswell v. Barnum & Bailey*, 185 S.W. 692 (Tenn. 1916) (where defendant circus refused to seat patrons in the seats for which they had paid and acted abusively towards them); *Shubert v. Nixon Amusement Co.*, 83 A. 369 (N.J. 1912) (where defendant ejected plaintiff and friends from the theater after they had been seated and subjected them to "disdain and contempt").

In all of the cited cases any mention of the type of damages available for breach of contract was mere dicta, most often because contract damages were not at issue. To the extent that contract damages were ever at issue, the award was for a refund of the purchase price, consistent with the case law uniformly holding that a ticket is a revocable license.

- In *Deprez*, the court upheld the dismissal of the claim for breach of contract on a directed verdict. No damages were awarded. *Deprez*, 1995 WL 547094 at *1.

- In *Rodriguez*, only injunctive relief was sought, and on appeal the court reversed and denied the injunction. *Rodriguez*, 182 S.W.2d at 825.

- In *Jordan*, the court upheld the dismissal of the lawsuit as barred by the statute of limitations. *Jordan*, 160 S.W.2d at 277.

- In *Cobb*, damages were not at issue because it was a criminal case. The question was whether the defendant African-Americans had committed criminal trespass when they obtained tickets to seats and sat in the white-only orchestra section of the theater. *Cobb*, 136 S.E.2d 677-78.

- In *Vogel*, the court reversed a judgment in favor of the defendant proprietor and entered a judgment in favor of the handicapped plaintiff who had been ejected in the amount of $250 for "mental suffering." *Vogel*, 22 So.2d at 192-93.

- In *De La Ysla*, the court reversed a dismissal of the claim for wrongful ejection where the only actual damage claimed was "the purchase price of four tickets." *De La Ysla*, 26 P.2d at 819, 822.

- In *Boswell*, the plaintiffs sought and obtained "damages for indignities suffered" when they were treated in an uncivil manner by the employees of the defendant circus. *Boswell*, 185 S.W. at 692-93.

- In *Shubert*, the court concluded that the defendant was justified in ejecting the plaintiff from the theater and dismissed the action by overruling the plaintiff's demurrer to the defendant's plea. *Shubert*, 83 A. at 369, 371.

In short, none of the cases cited by Plaintiffs awarded contract damages for expenses that would have been incurred even if there had been no alleged breach of contract. None of the cases speak to the issue at all.

On other hand, several courts have held that even in cases of refusing to admit or expelling ticket holders, the proprietor has no liability beyond a refund of the ticket price, absent tort-like mistreatment of the patron. For example, in *Capital Theater Co. v. Compton*, 54 S.W.2d 620, (Ky. 1932), the court held:

> The ticket does not confer the right to enter or remain in the theater if the holder be not disorderly or otherwise objectionable. It is a mere license revocable at the will of the proprietor, or his agent, who may decline to permit the holder to enter, or remove him after he has taken his seat, and, unless the denial of admittance or the expulsion of the holder is accompanied by insult or the use of more force than is reasonably necessary to accomplish the purpose, the proprietor incurs no liability beyond the price of admission.

*Id.* at 621-22 (citations omitted).

Likewise, in *Miller v. The Pittsburgh Athletic Co.*, 1927 WL 4674 (Pa. Super. 1927), the court stated: "The doctrine is well established that a ticket to a theatre or other private place of entertainment is revocable and that the only remedy to one denied the use of the ticket by the management of the entertainment is an action to recover the money [paid for the ticket] if there be no circumstances of assault or indignity apart from the mere use of the ticket." *Id.* at *2.

Finally, in *Sweeney v. United Artists Theater Circuit, Inc.*, 119 P.3d 538 (Colo. Ct. App. 2005), the court held: "It is generally recognized that an admission ticket is a revocable license to witness a performance or attraction. If a license is revoked, the license holder's recovery is limited to the purchase price." *Id.* at 540.

For the reasons discussed above and in IMS's Opening Brief, Plaintiffs have failed to state a claim for the recovery of expenses for travel, lodging, and dining as "consequential damages," and therefore the Court should dismiss this claim. Contrary to Plaintiffs (*see* Response at 43-44), the Court can determine on a motion to dismiss what types of damages are recoverable as consequential damages under Plaintiffs' Complaint. For example, in *Heller Intern. Corp. v. Sharp*, 839 F. Supp. 1297, 1305 (N.D. Ill. 1993), on a motion to dismiss, the Court considered whether "whether [the plaintiff] has stated or could state a claim that includes recovery of the alleged interest costs as consequential damages." *Id.* at 1305.

Because Plaintiffs are not entitled to a refund of expenses that they would have incurred even if the alleged breach had not occurred, the Plaintiffs' claim for "consequential damages" fails as a matter of law, and the Court should dismiss it.

## CONCLUSION

For all of the above reasons, IMS respectfully requests the Court to dismiss Counts I, II, III, IV, and VI against IMS with prejudice, and to enter judgment in favor of IMS on those Counts. In the alternative, IMS respectfully requests the Court to dismiss Plaintiffs' claims against IMS to the extent that Plaintiffs seek to recover expenses that would have been incurred even if there had been no breach of contract, or third-party contract, or promise.

Respectfully submitted,

_____
David M. Mattingly (#10630-49)

_____
Curtis W. McCauley (#16456-49)

Attorneys for Defendant Indianapolis Motor Speedway, LLC

ICE MILLER
One American Square Box 82001
Indianapolis, IN 46282-0002
317.236.2100

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of November 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| **Plaintiffs' Counsel** | **Defendants' Counsel** |
|---|---|
| William Bock, III<br>KROGER GARDIS & REGAS<br>wb@kgrlaw.com | A. William Urquhart<br>QUINN EMANUEL URQUHART OLIVER & HEDGES<br>billurquhart@quinnemanuel.com |
| Gabriel Adam Hawkins<br>PRICE WAICUKAUSKI RILEY & DEBROTA<br>ghawkins@price-law.com | Bernard Lowell Pylitt<br>KATZ & KORIN<br>bpylitt@katzkorin.com |
| James A. Knauer<br>KROGER GARDIS & REGAS, LLP<br>jak@kgrlaw.com | Offer Korin<br>KATZ & KORIN<br>okorin@katzkorin.com |
| Kurtis Allen Marshall<br>KROGER, GARDIS & REGAS LLP<br>kam@kgrlaw.com | Sally F. Zweig<br>KATZ & KORIN<br>szweig@katzkorin.com |
| Reynolds B. Brissenden<br>KROGER GARDIS & REGAS<br>rbb@kgrlaw.com | Scott Watson<br>QUINN EMANUEL URQUHART OLIVER & HEDGES<br>scottwatson@quinnemanuel.com |
| KC Cohen<br>KC COHEN LAWYER, PC<br>kc@esoft-legal.com | Shon Morgan<br>QUINN EMANUEL URQUHART OLIVER & HEDGES<br>shonmorgan@quinnemanuel.com |
| Irwin B. Levin<br>COHEN & MALAD LLP<br>ilevin@cohenandmalad.com | Hugh E. Reynolds, Jr.<br>LOCKE REYNOLDS LLP<br>hreynolds@locke.com |
| Michael B. Hyman<br>MUCH SHELIST<br>mbhyman@muchshelist.com | John K. McDavid<br>LOCKE REYNOLDS LLP<br>jmcdavid@locke.com |
| Eric S. Pavlack<br>COHEN & MALAD LLP<br>epavlack@cohenandmalad.com | Stephanie A. Petersmarck<br>MCDERMOTT WILL & EMERY LLP<br>spetersmarck@mwe.com |
| Jeff S. Gibson<br>COHEN & MALAD LLP<br>jgibson@cohenandmalad.com | Steven P. Handler<br>MCDERMOTT WILL & EMERY LLP<br>shandler@mwe.com |
| Richard E. Shevitz<br>COHEN & MALAD LLP<br>rshevitz@cohenandmalad.com | Bettina J. Strauss<br>BRYAN CAVE LLP<br>bjstrauss@bryancave.com |
| Scott D. Gilchrist<br>COHEN & MALAD LLP<br>sgilchrist@cohenandmalad.com | James W. Riley, Jr.<br>RILEY BENNETT & EGLOFF LLP<br>jriley@rbelaw.com |
| Henry J. Price<br>PRICE WAICUKAUSKI RILEY & DEBROTA<br>hprice@price-law.com | Peter W. Herzog, III<br>BRYAN CAVE LLP<br>pwherzog@bryancave.com |

| | |
|---|---|
| William N. Riley<br>PRICE WAICUKAUSKI RILEY & DEBROTA<br>wriley@price-law.com | James McGinnis Boyers<br>WOODEN & MCLAUGHLIN LLP<br>jboyers@woodmaclaw.com |
| Peter E. Borkon<br>SCHUBERT & REED LLP<br>pborkon@schubert-reed.com | James J. Dries<br>BAKER & MCKENZIE<br>james.j.dries@bakernet.com |
| Robert C. Schubert<br>SCHUBERT & REED LLP<br>rschubert@schubert-reed.com | Matthew Gordon Allison<br>BAKER & MCKENZIE LLP<br>matthew.g.allison@bakernet.com |
| Robert J. Schuckit<br>SCHUCKIT & ASSOCIATES, P.C.<br>rschuckit@schuckitlaw.com | Thomas Anthony Doyle<br>BAKER & MCKENZIE LLP<br>thomas.a.doyle@bakernet.com |
| Larry D. Drury<br>ldrurylaw@aol.com | William P. Wooden<br>WOODEN & MCLAUGHLIN LLP<br>wwooden@woodmaclaw.com |
| | Stephen E. Arthur<br>HARRISON & MOBERLY<br>sarthur@h-mlaw.com |
| | Lawrence F. Carnevale<br>CARTER LEDYARD & MILBURN LLP<br>carnevale@clm.com |
| | Raymond A. Basile<br>HARRISON & MOBERLY<br>basile@h-mlaw.com |

                                                           Curtis W. McCauley

ICE MILLER
One American Square Box 82001
Indianapolis, IN 46282-0002
317.236.2100